4:02-cr-00992-JFA   Date Filed 01/08/04   Entry Number 248-1   Page 1 of 14

**FILED**

JAN 8 2004

LARRY W. PROPES, CLERK
COLUMBIA, SC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:02-992-17 |
| | ) | |
| v. | ) | |
| | ) | **ORDER** ENTERED 1-8-04 |
| BRANDEN LEON BASHAM, | ) | |
| CHADRICK EVAN FULKS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Both defendants in this case have been charged with capital offenses. The government has moved for an opportunity to have both defendants examined by medical personnel, selected by the government, so as to be able to present rebuttal testimony on the issue of mental health should this case proceed to a penalty phase and should one or both defendants offer mental health evidence in mitigation. The matter has been extensively briefed by both sides, and the court heard oral argument from all parties at a hearing conducted on January 6, 2004.

From the briefs submitted prior to the hearing, it became apparent to the court that there were various issues regarding mental health examinations of the defendants upon which the government and the defendants agreed. The court heard argument on the matters to which agreement could not be reached, and took the motion under advisement. This order serves to memorialize the issues about which there was agreement and resolve those disputed issues that the court took under advisement.

1

AO 72A
(Rev.8/82)

4:02-cr-00992-JFA    Date Filed 01/08/04    Entry Number 248    Page 2 of 14

## FACTUAL SUMMARY

On September 12, 2003, the government filed a Notice of Intent to Seek the Death Penalty against defendants Chadrick Evan Fulks ("Fulks") and Branden Leon Basham ("Basham"). If the defendants are convicted of the crimes charged, this court must conduct a penalty phase hearing during which the defendants are entitled to produce mitigating factors both as evidence and in rebuttal to the government's evidence of aggravating factors. The defendants have generally notified the government that they intend to rely on mental health evidence during the capital sentencing proceeding if one is required. In response, the government filed a motion pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure asking this court to order the defendants to submit to mental health examinations at the Federal Bureau of Prisons facility designated as FCI Butner ("Butner"), located in Butner, North Carolina (roughly four hours away from Columbia).

The court heard extensive argument on the following four areas of disagreement regarding the government's motion: (1) whether this court has the authority to order the defendants transferred to Butner to allow the government to conduct Rule 12.2 mental health examinations; (2) assuming the court has that authority, when would the transfer take place, how long would the defendants remain at Butner, and what procedures and conditions would govern the examinations; (3) whether the defendant waived their Fifth Amendment privilege against self-incrimination by raising a mental health defense during the penalty phase; and (4) the scope of the notice the defendants must provide to the government regarding the mental health mitigation evidence they intend to produce and when that notice must be provided.

AO 72A
(Rev.8/82)

4:02-cr-00992-JFA    Date Filed 01/08/04    Entry Number 248-1    Page 3 of 14

## DISCUSSION

### I.    Court-ordered Mental Health Examination of the Defendants

A.    The Court's Power to Order the Mental Health Examinations.

Rule 12.2(c) of the Federal Rules of Criminal Procedure authorizes this court, upon motion by the government, to order the defendants in this case to be examined under procedures established by this court.[1]  The Advisory Committee Notes for Rule 12.2 indicate that the purpose of requiring the defendant in a capital case to notify the government of his intention to produce mental health evidence during the penalty phase is to provide the government with "time to prepare to meet the issue, which usually will require reliance upon expert testimony." *Advisory Comm. Notes,* FED. R. CRIM. P. 12.2; *see also Advisory Comm. Notes,* FED. R. CRIM. P. 12.2 (2002 Amend.) (pretrial notice required so "mental examinations can be conducted without unnecessarily delaying capital sentencing proceedings").

The government argues that to meet adequately the issue of the defendants' mental condition during the penalty phase, it must conduct its own examination of the defendants using its own mental

---

[1]  "If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." FED. R. CRIM. P. 12.2(c)(1)(B).  Rule 12.2(b) provides:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must — within the time provided for filing a pretrial motion or at any later time the court sets — notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. . . .

AO 72A
(Rev.8/82)

4:02-cr-00992-JFA    Date Filed 01/08/04    Entry Number 248-1    Page 4 of 14

health experts. The government agrees with the defendants that the sole purpose of its examination is to rebut mental health evidence presented by the defense in mitigation. While the defendants acknowledge that this court has the power to order the examinations, they argue the Rule does not require them. FED. R. CRIM. P. 12(c)(1)(B) ("the court *may*, upon the government's motion, order the defendant to be examined . . . .") (emphasis added). The court finds that the defendants have put forward no substantive reason why the government should be denied its general request to conduct its own mental health examination of the defendants. Accordingly, the court orders the defendants examined by the government's mental health experts solely for the purpose of rebutting the defendants' mental health evidence presented during the penalty phase should one occur.

> B.      The Court's Power to Order the Defendants Evaluated at Butner for a Limited Duration.

While the court's authority to order a Rule 12.2 examination of the defendants is not disputed, the parties disagree about whether this court is authorized to order the defendants transferred to a federal facility four hours away for in-patient examination. Rule 12.2 does not specifically address whether the court-ordered examination may be conducted out-of-town. In addition, nowhere does the rule address how long the government may have to conduct its own examination.

The defendants argue that because the government is entitled to limited notice as to the expert evidence the defendants intend to present during the penalty phase, the government is entitled to a similarly limited examination — merely one sufficient to rebut the defendants' evidence.[2] A sufficient examination, the defendants contend, can be accomplished locally and, at most, in thirty days. The

---

[2] The court granted the defendants' motions to join all motions filed by a co-defendant, so this order does not specify which defendant originally made which argument.

4

government argues that the defendants have already squandered their opportunity to have the examination conducted locally.  In November 2003, the government offered to have the examinations conducted locally, and the defendants rejected the offer.  Now, the government maintains that local examinations are no longer an option and the examinations must take place at Butner.  In light of the fact that the defendants opted not to be examined locally when such examination was possible, it is not unreasonable to order the defendants transferred to Butner.

The defendants next argue that, should the court "commit" the defendants to Butner for an extended time, the government's experts will then have greater access to the defendants than the defense experts have had.[3]  This, they argue, will unfairly prejudice them because the conditions and extent of the expert's examination affect both the reliability of the expert's result and the weight accorded it.  The defendants contend that if the government is permitted to evaluate the defendants on an in-patient basis, perform a wider array of tests, or otherwise test the defendants under more favorable conditions, the jury will give greater weight to the government's experts than their own. *See Albright v. United States,* 388 F.2d 719, 725 (4th Cir. 1968); *see also Rollerson v. United States,* 343 F.2d 269 (D.C. Cir. 1964).

The government maintains it is seeking no advantage.  It argues, rather, that it seeks only to "level the playing field."  Defense counsel has had several months (13 months with Fulks; 9 months with Basham) to obtain mental health experts, make evaluations, and prepare for their defense, while the government has had no access to the defendants to prepare to meet the mental health issue.

---

[3]  The defendants refer to the court's  order that the defendants be examined at Butner as "committing" the defendants for psychiatric evaluation. The court finds this argument unpersuasive. With the defendants already in federal custody, this court is not committing them to a federal facility, it is transferring them from one facility to another.

5

AO 72A
(Rev.8/82)

4:02-cr-00992-JFA   Date Filed 01/08/04   Entry Number 248-1   Page 6 of 14

Specifically, defense experts had access to evaluate Basham during his stay at a local in-patient facility for a period of time, and because Fulks has been represented by counsel for more than one year, defense experts have had substantial access to him to prepare for his mitigation defense. The government agrees with the defendants that the weight accorded any expert opinion will be determined in large part by the nature, condition, and extent of the expert's examination. The government is therefore similarly concerned that because the defendants have had such an extensive amount of time to prepare (especially since this trial has been postponed already) while the government has had none, the jury will give the defendants' experts more weight. The government says it needs the in-patient evaluations to meet the substantial advantage the defense experts have had through their lengthy access to the defendants.

The court finds that because the government is entitled only to a limited examination of the defendants (regardless of where it occurs), in-patient examination of the defendants at Butner, in and of itself, does not prejudice the defendants or give the government an unfair advantage. This is especially true because the parties have agreed that the nature, condition, extent, and duration of any medical examination is not a proper subject of argument during the penalty phase.

The defendants next argue that allowing their transfer to an out-of-town facility deprives them of ready access to their lawyers during the critical ninety (90) day period before trial. The government counters that it offered to test the defendants locally earlier in these proceedings, at a time when the examinations could have been conducted without sending the defendants to Butner, but the defendants refused. Consequently, the reduced access to lawyers now complained of is a dilemma created by the defendants themselves.

6

4:02-cr-00992-JFA   Date Filed 01/08/04   Entry Number 248-1   Page 9 of 14

While the court sympathizes with the defendants' position, Butner is still reasonably accessible to the lawyers. A four hour drive between a defendant and his lawyer is not a deprivation of access to counsel, particularly in this case where the defense's own investigation spans six states.

## II.     Procedures, Timing, and Duration of Mental Health Examination of Defendants

Rule 12.2 supplies basic procedures that must be followed with respect to the government's mental health examination of the defendants. The Rule does not specifically address the timing or duration required for court-ordered mental health exams. The Rule does, however, give the court some discretion to establish procedures governing the examination. FED. R. CRIM. P. 12.2(c)(1)(B).

### A.     Procedures Governing the Examinations of the Defendants.

The parties agree to and the court orders the following procedures to govern the government's mental health examinations of Basham and Fulks pursuant to Rule 12.2:

(1)     *Type of Testing.* Government experts must conduct comparable testing on the defendants; therefore, the government will not subject the defendants to testing of a different nature than the testing performed by defense experts. The government's experts shall not identify more than one test for the purpose of measuring the same mental function.

(2)     *Presence of Counsel.* Defense counsel is entitled to be present during the Rule 12.2(c) mental examination. However, the examiners have no duty to accommodate defense counsel's schedule. The government is required to provide defense counsel three (3) days notice prior to conducting any Rule 12.2 examination.

(3)     *List of Tests.* The government must provide defense counsel with a list of tests to be conducted on the defendants. The defendants will have an opportunity to be heard prior to any mental health test being conducted, and the parties will attempt to reach agreement to avoid test overlap and the so-called "practice effect."

(4)     *Test Results.* The results and reports of any Rule 12.2 examination will be sealed and shall not be disclosed to any attorney (government or defense) unless and until a defendant is found guilty of one or more capital crimes. If and only if a defendant, after his conviction, confirms his intent to rely on mental health evidence during the penalty phase will the results and reports of any Rule 12.2 examination be disclosed. First, the results and reports of the

AO 72A
(Rev.8/82)

4:02-cr-00992-JFA    Date Filed 01/08/04    Entry Number 248-1    Page 8 of 14

government's examination will be disclosed to the defense. Shortly thereafter, if the defendant re-affirms his intent to rely on mental health evidence during the penalty phase, the results and reports of the defendant's examination about which he intends to introduce expert evidence and the results and reports of the government's examination will be disclosed to the government. FED. R. CRIM. P. 12.2(c)(2); FED. R. CRIM. P. 12.2(c)(3).

(5)    *Use of Test Results.* No result or report of the government's examination of the defendants made in the course of such examination shall be introduced or used by the government for any purpose except to rebut expert testimony offered by the defense during the sentencing phase of the trial on the issue of the defendant's mental condition.

(6)    *Electronic Monitoring.* The government will not electronically record any examination of the defendant, whether by audiotape or videotape, except with the express written consent of defense counsel.

(7)    *Withdrawal of Mental Health Defense.* The defendants may elect, at any time prior to presenting mental health evidence, to withdraw their intent to rely on mental health evidence at which point the government has no right to use its rebuttal evidence. Failure of a defendant to provide notice or to participate in a court-ordered examination or to confirm his first notice shall result in forfeiture of the right to present mental health testimony at the penalty phase of the trial.

(8)    *Medical Records.* The government is entitled to the defendants' medical records. However, the defendants are not required to provide the government with any material supplied to defense experts other than defendants' medical records, unless and until the defendants are required to disclose the results and reports from their own experts' Rule 12.2 examination about which the defendant intends to introduce expert evidence. No more than ten (10) days after the government's examination has been completed, the defendants' mental health experts shall provide the government's experts with all of the defendants' medical records which the defendants' experts relied upon for their report. These records shall be treated by the government's mental health experts in the same fashion as provided in paragraphs four (4) and five (5) of this order. Additionally, the government shall not use in its case-in-chief during the penalty phase of this prosecution any document described herein that the government received from the defendant or the defendants' mental health experts.

(9)    *Other Mental Health Examinations.* The government shall provide each defendant, within ten (10) days of this order, with all documents in its possession pertaining to any mental health examinations performed on the defendant prior to the date of this order. The government shall provide the defendant with any such records that it obtains during the course of the prosecution of the case, up to and including, the penalty phase, not later than five (5) days after the government receives such records. The government's mental health experts shall treat these records in the same fashion as provided in paragraphs four (4) and five (5) of this order.

8

Additionally, the government shall not use in its case-in-chief during the penalty phase of this prosecution any document described herein that the government received from any defendant or his mental health expert.

B.       Timing of Transfer to and Duration of Defendants' Stay at Butner.

The parties appear to agree that the government should be afforded no more than thirty (30) days to conduct its Rule 12.2 examinations. Given this court's prior experience with sending criminal defendants to Butner, the court finds that thirty (30) days is a reasonable amount of time for federal mental health experts to complete their examinations without unreasonably delaying the defendants' return to Columbia. The government indicated at the hearing that Butner can accommodate the defendants as soon as January 16, 2004 (possibly January 19, 2004) and that the tests would be completed by February 16, 2004. The court therefore orders the defendants transferred to Butner by January 19, 2004 to return by February 16, 2004. **In no event may the government keep the defendants at Butner for more than thirty (30) days.**

III.    **Defendants' Waiver of Fifth Amendment Challenge Under *Savino*.**

Under the Fifth Amendment to the United States Constitution, a criminal defendant ordinarily enjoys a privilege against self incrimination. U.S. CONST. amend. v. However, when a defendant elects to present expert psychological evidence during the penalty phase of a capital case, that privilege is waived for purposes of rebuttal. *Savino v. Murray,* 82 F.3d 593, 604 (4th Cir. 1996). In *Savino v. Murray,* the Fourth Circuit stated that:

> When a defendant asserts a mental status defense and introduces psychiatric testimony in support of that defense, he may face rebuttal evidence from the prosecution taken from his own examination or he may be required to submit to an evaluation conducted by the prosecution's own expert. That defendant has no Fifth Amendment protection against the introduction of mental health evidence in

9

4:02-cr-00992-JFA    Date Filed 01/08/04    Entry Number 248-1    Page 10 of 14

> rebuttal.  In essence, the defendant waives his right to remain silent .
> . . by indicating that he intends to introduce psychiatric testimony.

82 F.3d at 604 (citing *Buchanan v. Kentucky,* 483 U.S. 402, 422-23 (1987); *Estelle v. Smith,* 451 U.S. 454, 465 (1987); *Powell v. Texas,* 492 U.S. 680, 684-85 (1989)).  *Savino* involved a habeas petition filed by a defendant after he was convicted in state court of robbery and murder.  Even though the Fourth Circuit analyzed the constitutional question of waiver in light of Virginia statutes governing mental health evidence presented during the penalty phase of a state court proceeding, the state statutes provided the same notice as Rule 12.2 that a defendant's decision to present mental health evidence waives his privilege.  Moreover, under Virginia law and the federal rule, the waiver is predicated upon the defendant's own election to introduce psychiatric evidence.  The privilege is not waived where a defendant elects not to present mental health evidence in mitigation.

This court finds that if the defendants elect to present mental health evidence during the penalty phase of this trial, they have no Fifth Amendment protection against the government's introduction of mental health evidence in rebuttal.

As a corollary, the defendants argue that, during any Rule 12.2 examination, the government must limit its inquiry to the crimes charged.  The defendants reason that the election to present mental health evidence during the penalty phase does not waive their Fifth Amendment privilege with respect to uncharged misconduct — particularly if the government intends to use that conduct to establish aggravating factors.  Admissions of these specific acts of misconduct, the defendants argue, would be extremely damaging.  Moreover, the government should not be allowed to use the mental health examination for anything other than to rebut the defendants' mitigation evidence.  If the government

10

uses the examination to build its own case for aggravating factors, it has gone beyond the use of the examination permitted by Rule 12.2.

The resolution of this matter will hinge on what types of testing the defendants undergo. If the tests are purely diagnostic, no concern about any statement or uncharged offense should arise. Importantly, however, the government has agreed to allow defense counsel to be present during any Rule 12.2 examination of the defendants. The presence of defense counsel should be sufficient to protect against government intrusion into areas beyond those necessary to rebut the defense's mental health evidence. Rule 12.2 addresses the admissibility of statements made by the defendant during the course of an examination. It provides:

> No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding *except on an issue regarding mental condition on which the defendant:*
>> (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(b)(1), or
>> (B) *has introduced expert evidence in a capital sentencing proceedings requiring notice under Rule 12.2(b)(2).*

FED. R. CRIM. P. 12.2(c)(4) (emphasis added).

## IV.    Scope and Timing of Notice Provided by the Defendants to the Government

The defendants have given the government general notice that they intend to rely on mental health evidence pursuant to Rule 12.2(b). The parties agree as to the type of notice the defendants must ultimately provide — "the name and professional qualifications of any mental health professional who will testify and a brief, general summary of the topics to be addressed that is sufficient to permit the government to determine the area in which its experts must be versed." *United*

AO 72A
(Rev.8/82)

*States v. Beckford,* 962 F. Supp. 748, 736-64 (E.D. Va. 1997). The parties do not agree as to when the defendants must disclose this information to the government.

The defendants argue that requiring them to supply the government with notice ninety (90) days before trial is unprecedented. *See United States v. Minerd,* 197 F. Supp. 2d 272 (W.D. Pa. 2002) (notice given 17 days prior to trial); *United States v. Edelin,* 134 F. Supp. 2d 45 (D.D.C. 2001) (notice given 30 days prior to trial); *United States v. Beckford,* 962 F. Supp. 748 (E.D. Va. 1997) (government's Rule 12.2 examination to be concluded within 15 days of notice). However, in light of the defendants' prior position on losing access with their lawyers in the critical period leading up to trial (now 90 days), sending the defendants off to Butner fifteen or fewer days before trial is bound to raise even graver concerns. Moreover, Butner is a busy federal facility and arranging mental health examinations is not easily done. Most importantly, however, transporting and securing these defendants requires extensive security planning. Basham and Fulks have a history of escaping, and constitute an even greater flight risk than before because they now face the death penalty.

For these reasons and because the scope of the notice the defendants must provide is so general in nature, the court orders the defendants to disclose: (1) the names and qualifications of any mental health expert who will testify at trial; and (2) a brief, general summary of the topics to be addressed sufficient to permit the government to determine the area in which its expert must be versed **no later than January 16, 2004.** The government must have this information so it can know what kinds of testing may be conducted on the defendants during their thirty (30) day stay at Butner which is to begin as early as January 16, 2003. Moreover, this notice will help insure that the government

12

complies with its duty not to conduct tests different in nature from those conducted by defense experts.

**CONCLUSION**

The court grants the government's motion for a court-ordered mental health examination of defendants Fulks and Basham pursuant to Rule 12.2.  The defendants are to be transported to FCI Butner where the examinations will be conducted strictly in accordance with the guidelines and conditions set forth herein.

Furthermore, the schedule governing this case through the date of the pretrial conferences is as follow:

(1)  By January 16, 2004, the defendants must provide the Government with the names and qualifications of the mental health experts who will testify or whose opinions will be relied upon (including expert testimony that is based on a review of records rather than a personal examination of the defendant), and a brief general summary of the information the experts will provide.  The summary should be sufficiently explicit to allow the Government to find potential mental health expert witnesses in the same field.

(2)  The defendants shall be transported to the Federal Bureau of Prisons facility designated as FCI Butner, located in Butner, North Carolina to arrive no later than January 19, 2004, and shall return to Columbia no later than February 16, 2004.  In no event may the Government keep the defendants at Butner for more than thirty days.

13

AO 72A
(Rev.8/82)

(3)     The court will hear the defendants' motions for severance and for a continuance on

Wednesday, January 21, 2004 at 2:00 p.m.[4]

(4)     The court will hear all other pending motions and conduct the pre-trial conference on

Tuesday, February 24, 2004 and Wednesday, February 25, 2004 at 10:00 a.m.

(5)     The new trial date is Monday, April 19, 2004.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.
United States District Judge

January 8, 2004
Columbia, South Carolina

---

[4] This is a different date than the one discussed at the hearing; however, the earlier date is necessary to accommodate the clerk's office as they prepare the juror questionnaires.

AO 72A
(Rev.8/82)