UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

OPINION AND ORDER
September 24, 2014

O'TOOLE, D.J.

This Opinion and Order resolves several pending motions.

## I.  Defendant's Motion for Change of Venue

The defendant has moved, pursuant to Federal Rule of Criminal Procedure 21 and the Fifth, Sixth, and Eighth Amendments to the United States Constitution, to transfer his trial to a place outside of the District of Massachusetts. He asserts that pretrial publicity and public sentiment require the Court to presume that the pool of prospective jurors in this District is so prejudiced against him that an impartial trial jury is virtually impossible.

In two provisions, the Constitution of the United States addresses where criminal trials are to be held. Article III provides that the trial of a criminal case "shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment to the Constitution guarantees a criminal defendant the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed." Id. amend. VI.  Due process requires, however, that the Constitution's "place-of-trial prescriptions . . . do not impede

transfer . . . to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial." Skilling v. United States, 561 U.S. 358, 378 (2010).[1]

In Skilling v. United States, the Supreme Court recently analyzed in depth the circumstances under which a presumption of prejudice would arise and warrant or command a change of venue, making clear that prejudice is only to be presumed in the most extreme cases. In that case, the defendant was a former Chief Executive Officer of Enron Corporation, a large Houston-headquartered corporation that "crashed into bankruptcy" as the result of the fraudulent conduct of the company's executives. Id. at 367. After the defendant was charged in federal court in Houston, he sought to move his case to another district based on widespread pretrial publicity and what was characterized as a general attitude of hostility toward him in the Houston area. The district court found that the defendant had not satisfied his burden of showing that prejudice should be presumed and declined to change the trial venue.

The Supreme Court agreed with the district court's conclusion. It addressed four factors it regarded as pertinent to whether the defendant had demonstrated a presumption of prejudice that required a venue transfer: 1) the size and characteristics of the community in which the crime occurred and from which the jury would be drawn; 2) the quantity and nature of media coverage about the defendant and whether it contained "blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight"; (3) the passage of time

---

[1] The Federal Rules of Criminal Procedure mirror these principles. Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed."); Fed. R. Crim. P. 21(a) (requiring transfer if the court is satisfied that "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there").

2

between the underlying events and the trial and whether prejudicial media attention had decreased in that time; and (4) in hindsight, an evaluation of the trial outcome to consider whether the jury's conduct ultimately undermined any possible pretrial presumption of prejudice. Id. at 381-85.

The Court found that the potential jury pool—4.5 million people living in the Houston area—was a "large, diverse pool," making "the suggestion that 12 impartial individuals could not be empaneled . . . hard to sustain." Id. at 382. With respect to media coverage, "although news stories about [the defendant] were not kind, they contained no confession or other blatantly prejudicial information" of the type that readers or viewers could not reasonably be expected to ignore. Id. at 382-83. The Court also noted that the "decibel level of media attention diminished somewhat" in the time between Enron's bankruptcy and the defendant's trial. Id. at 383. Finally, after trial the jury acquitted the defendant of nine counts, indicating careful consideration of the evidence and undermining any presumption of juror bias.[2] Id. at 383-84. The Court, finding that no presumption of prejudice arose, went on to conclude that the district court had not erred in declining to order a venue change. Id. at 385 ("Persuaded that no presumption arose, we conclude that the District Court, in declining to order a venue change, did not exceed constitutional limitations.") (footnotes omitted).

There is much about this case that is similar to Skilling. First, the Eastern Division of the District of Massachusetts includes about five million people. The division includes Boston, one of the largest cities in the country, but it also contains smaller cities as well as suburban, rural, and coastal communities. As the Court observed in Skilling, it stretches the imagination to suggest that an impartial jury cannot be successfully selected from this large pool of potential

---

[2] Similarly, previous Enron-related prosecutions in Houston "yielded no overwhelming victory for the Government." Id. at 361.

3

jurors. See also United States v. Salameh, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486, at *1 (S.D.N.Y. Sept. 15, 1993) (declining to transfer trial of defendant accused of the 1993 World Trade Center bombing out of the district due in part to the district's size and diversity).

Media coverage of this case, as both sides acknowledge, has been extensive. But "prominence does not necessarily produce prejudice, and juror impartiality does not require ignorance." Skilling, 51 U.S. at 360-61 (emphasis in original). Indeed, the underlying events and the case itself have received national media attention. It is doubtful whether a jury could be selected anywhere in the country whose members were wholly unaware of the Marathon bombings. The Constitution does not oblige them to be. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723 (1961).

The defendant relies almost exclusively on a telephonic poll and an analysis of newspaper articles to support his argument that venue must be transferred due to the impact of pretrial publicity. I have reviewed the materials submitted. For substantially the same reasons articulated in the government's sur-reply, those results do not persuasively show that the media coverage has contained blatantly prejudicial information that prospective jurors could not reasonably be expected to cabin or ignore. For instance, regarding the newspaper analysis, I agree with the government that many of the search terms are overinclusive (e.g., "Boston Marathon" or "Marathon" or "Boylston Street"), hitting on news articles that are completely or generally unrelated to the Marathon bombings. Regarding the poll, the response rate was very low (3%), and that small sample is not representative of the demographic distribution of people in the Eastern Division. Additionally, some of the results appear at odds with the defendant's position. For example, almost all individuals who answered the poll questions were familiar with

4

the bombing and the majority of them answered that they believed the defendant is "probably" or "definitely" guilty in all four jurisdictions surveyed. In any event, "[s]carcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits" of a widely-publicized criminal case such as this one. See Irvin, 366 U.S. at 722-73.

As to the passage of time, unlike cases where trial swiftly followed a widely reported crime, e.g., Rideau v. Louisiana, 373 U.S. 723, 724 (1963) (two months after videotaped confession was broadcasted), more than eighteen months have already passed since the bombings. In that time, media coverage has continued but the "decibel level of media attention [has] diminished somewhat." See Skilling, 561 U.S. at 361. The defendant's submissions do not prove otherwise.

Finally, although it is not possible to evaluate the jury's verdict for impartiality in hindsight at this stage, this Court's recent experience with high profile criminal cases in this District suggests a fair and impartial jury can be empaneled. In each of those cases, the jurors returned mixed verdicts, indicating a careful evaluation of the trial evidence despite widespread media coverage. See, e.g., Jury Verdict, United States v. O'Brien, Cr. No. 12-40026-WGY (July 24, 2014) (ECF No. 579); Jury Verdict, United States v. Tazhayakov, Cr. No. 13-10238-DPW (July 21, 2014) (ECF No. 334); Jury Verdict, United States v. Bulger, Cr. No. 99-10371-DJC (Aug. 12, 2013) (ECF No. 1304); Jury Verdict, United States v. DiMasi, Cr. No. 09-10166-MLW (June 15, 2011) (ECF No. 597).

In support of his argument, the defendant cites in passing only a few cases in which the Supreme Court has presumed prejudice for the purposes of transferring a case, Rideau v. Louisiana, 373 U.S. 723 (1963), Sheppard v. Maxwell, 384 U.S. 333 (1966), and Estes v. Texas,

381 U.S. 532 (1965).[3] First, all three cases are about fifty years old, and both the judicial and media environments have changed substantially during that time. Second, important differences separate those cases from the defendant's. Rideau involved a defendant whose detailed, twenty-minute videotaped confession during a police interrogation was broadcast on television multiple times in a small community parish of only 150,000 people two months before trial. 373 U.S. at 724-28. In both Estes and Sheppard, the actual courtrooms were so overrun by media that the trial atmosphere was "utterly corrupted by press coverage." See Skilling, 561 U.S. at 380; Sheppard, 384 U.S. at 353, 355, 358 ("[B]edlam reigned at the courthouse during the trial and newsman took over practically the entire courtroom," thrusting jurors "into the role of celebrities" and creating a "carnival atmosphere"); Estes, 381 U.S. at 536 (describing reporters and television crews who overran the courtroom with "considerable disruption" so as to deny the defendant the "judicial serenity and calm to which [he] was entitled"). None of those circumstances are present here.

The defendant has not proven that this is one of the rare and extreme cases for which a presumption of prejudice is warranted. See Skilling, 561 U.S. at 381; United States v. Quiles-Olivo, 684 F.3d 177, 182 (1st Cir. 2012). Although the media coverage in this case has been extensive, at this stage the defendant has failed to show that it has so inflamed and pervasively prejudiced the pool that a fair and impartial jury cannot be empaneled in this District. A thorough evaluation of potential jurors in the pool will be made through questionnaires and voir dire sufficient to identify prejudice during jury selection. See Skilling, 561 U.S. at 384 ("the

---

[3] The defendant attempts to rely more heavily on United States v. McVeigh, 917 F. Supp. 1467 (D. Colorado 1996), a pre-Skilling out-of-circuit district court case. Though there may be some similarities, that case is not pertinent. There, the main federal courthouse itself had suffered physical damage in the explosion at issue, and both parties agreed the case should not be tried in the district where the crime occurred. The issue was to which other district the trial should be moved.

6

extensive screening questionnaire and follow-up <u>voir</u> <u>dire</u> were well suited" to screening jurors for possible prejudice).

The defendant's motion is denied.

## II. **Defendant's Motion for Continuance**

The defendant has also filed a Motion for Continuance requesting the trial date be rescheduled from November 3, 2014 until September 1, 2015. The defendant's previous request for that same trial date was rejected.

Upon a review of the parties' submissions and oral argument, I find that a short continuance is warranted in this case, primarily on the basis of the amount of discovery involved. Although it appears that the defendant may have overstated his perceived predicament related to the volume and timing of discovery, particularly in light of (a) the government's representation that the defendant has been in possession of the relevant computers for over a year and (b) the level of detail of the government's September disclosures, there is likely utility in allowing the defendant some additional, though limited, time to prepare. See <u>United States v. Maldonado</u>, 708 F.3d 38, 42-44 (1st Cir. 2013); <u>United States v. Saccoccia</u>, 58 F.3d 754, 770-71 (1st Cir. 1995). An additional delay of ten months as requested by the defendant does not appear necessary, however, given the size and experience of the defense team; the availability of assistance from outside sources; the time period the defense already has spent in trial preparation; the relative impact on the other interests, including the Court, the government, and the public, if such a long postponement were granted; and the nature of the defendant's other concerns and the uncertainty that more time would actually be helpful in those respects. See <u>Maldonado</u>, 708 F.3d at 42-44; <u>Saccoccia</u>, 58 F.3d at 770-71.

7

Accordingly, the trial will commence on January 5, 2015. The final pretrial conference will be on December 18, 2014. The current pre-trial conference scheduled for October 20, 2014 is converted to a status conference.

## III.   Government's Discovery Motions

The government has filed a Renewed Motion to Compel Reciprocal Discovery (dkt. no. 530), requesting an order compelling the defendant to produce discovery and precluding him from using in his case-in-chief any Rule 16(b)(1)(A)—(C) information in his possession that he has failed to produce. The government adopts by reference the arguments it advanced in its motion on the same topic (dkt. no. 245) which is still pending.

Although the Court previously ordered the defendant to produce reciprocal discovery under Rule 16(b)(1)(A)—(C) by September 2, 2014, the government says (and the defendant does not dispute) that the defendant has not made any disclosures under Rule 16(b)(1)(A) or (B), and only one brief disclosure under Rule 16(b)(1)(C). The defendant, in response, argues that he has not yet "identified" which "'documents, data, photographs' or other exhibits might corroborate or illustrate the defense case."

The defendant has stated that it would be considerably easier to respond to the government's Rule 16 requests in staggered stages based on whether the discovery relates to the guilt or penalty phase. A staggered schedule will not unduly prejudice the government as the defendant's Rule 16 discovery for both phases will be due well in advance of jury selection and the deadline for the submission of witness and exhibit lists.

In light of the change of trial date and the defendant's representations, the Court adopts a bifurcated reciprocal discovery schedule to be issued in a separate Scheduling Order. The

8

government's motions are otherwise denied subject to renewal if the defendant fails to provide the required discovery by the now-extended deadlines.

The government has also filed a Renewed Motion for List of Mitigating Factors (dkt. no. 529), which the defendant has opposed, primarily on Fifth Amendment self-incrimination grounds. It is within the Court's statutory discretion to require the disclosure. See, e.g., United States v. Wilson, 493 F. Supp. 2d 464, 466-67 (E.D.N.Y. 2006); United States v. Taveras, No. 04-CR-156 (JBW), 2006 WL 1875339, at *8-9 (E.D.N.Y. July 5, 2006); see also Catalan Roman, 376 F. Supp. 2d. 108, 115-17 (D.P.R. 2005). The Federal Death Penalty Act provides both parties a fair right of rebuttal, see 18 U.S.C. § 3593(c), a right which would be meaningless if information is not provided sufficiently early to rebut. See Catalan Roman, 376 F. Supp. 2d. at 116-17; Wilson, 493 F. Supp. 2d at 466; see also Williams v. Florida, 399 U.S. 78, 82 (1970) (A criminal trial is not "a poker game in which players enjoy an absolute right always to conceal their cards until played."). Further, to the extent there are mitigating factors the defendant presently intends to pursue at a sentencing phase which it has not already disclosed, the disclosure of that information may be necessary to select a fair and impartial jury, and ultimately will "contribute to the truth-seeking process, resulting in a more reliable sentencing determination." See Catalan Roman, 376 F. Supp. 2d. at 114. The government does not seek to use the list of mitigation factors as a statement against him at trial, and if the defendant is found guilty, he would ultimately have to disclose to the jury the mitigating factors he pursues. See id. at 117 ("[T]here is no constitutional violation by requiring a defendant to disclose mitigating information he intended to offer the jury anyway.").

9

Consequently, the defendant shall provide the government a list of all mitigating factors he currently intends to prove in the penalty phase of the case, if any, on or before December 15, 2014. The submission shall be made under seal.

## IV. Conclusion

The defendant's Motion for Change of Venue (dkt. no. 376) is DENIED. The defendant's Motion for Continuance (dkt. no. 518) is GRANTED in part and DENIED in part. The government's Motion to Compel Defendant's Compliance with Automatic Discovery Obligations (dkt. no. 245), Renewed Motion to Compel Reciprocal Discovery (dkt. no. 530), and Renewed Motion for List of Mitigating Factors (dkt. no. 529) are GRANTED in part and DENIED in part.

A separate scheduling order shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

10