IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:11-cr-20044-JPM-1 |
| | ) |
| CHASTAIN MONTGOMERY, SR., | ) |
| Defendant. | ) |

---

ORDER GRANTING IN PART AND DENYING IN PART MOTION
FOR PRETRIAL NOTICE OF INTENT TO INTRODUCE PENALTY PHASE
MENTAL HEALTH EVIDENCE
AND
ORDER REGARDING MENTAL HEALTH EVIDENCE

---

Before the Court is the United States of America's (the "Government") Motion for Pretrial Notice of Intent to Introduce Penalty Phase Mental Health Evidence, filed February 28, 2014.[1] (ECF No. 345.) Defendant Chastain Montgomery, Sr. ("Defendant") responded in opposition on March 17, 2014.[2] (ECF No. 361.) The Government filed a Reply on March 20, 2014. (ECF No. 363.) The Court heard arguments from the parties regarding the instant Motion on March 21, 2014. (ECF No. 364.) For the reasons stated below, the instant Motion is GRANTED IN PART and DENIED IN PART.

---

[1] The Government submitted a proposed order along with its Motion. (See Ex. A, ECF No. 345-1.)

[2] Defendant likewise submitted a proposed order along with his Response. (See ECF No. 361-1.)

## I.  THE MOTION FOR PRETRIAL NOTICE OF INTENT TO INTRODUCE PENALTY PHASE MENTAL HEALTH EVIDENCE

In the instant Motion, the Government states its belief that "Defendant will offer some form of mental health evidence during a potential penalty phase of this case." (ECF No. 345 at 2.)  The Government argues that Defendant "has not provided any notice of his intent to introduce expert evidence relating to his mental health at either the guilt phase or penalty phase of trial. . . .  [T]he Government respectfully requests that this Court . . . set clear deadlines for the defendant to file such notice." (Id. at 4-5.)

The Government's proposed order would impose the following requirements on Defendant.  First, if Defendant intends to present expert testimony regarding mental disease or defect at either the guilt or penalty phase of his trial, he must file a written notice to that effect by a date certain set by the Court. (Id. at 7; ECF No. 345-1 at 1.)  The Notice "shall include the name and professional qualifications of any mental health professional who will testify as an expert and a brief, general summary of the topics to be addressed that is sufficient to permit the Government to determine the area in which its expert(s) must be versed." (ECF No. 345-1 at 1.)  Moreover, the notice must "include experts who are basing their opinions on a

review of records and not a personal examination of Defendant." (Id.)

Second, the proposed order would require Defendant, if he gives notice of intent to introduce mental health evidence, to submit to an examination by a mental health professional selected by the Government. (Id. at 1-2.) The results of such examination will be placed under seal, pursuant to Federal Rule of Criminal Procedure 12.2(c)(2). (See id. at 2.)

Third, the proposed order would require the Government to designate an Assistant United States Attorney ("AUSA") as a "fire-walled AUSA to arrange for any evaluation by an expert . . . ." (Id.) Under the terms of the order, the firewalled AUSA would be permitted to consult with the Government's trial team regarding the selection of experts,[3] but would be prohibited from communicating "with the prosecution team regarding case matters and may not join the prosecution team unless and until the Defendant is found guilty of a capital offense at trial and gives notice confirming his intent to introduce expert mental health evidence during the penalty phase of the trial." (Id.) The firewalled AUSA, and any individuals assisting him, would be prohibited from communicating with the

---

[3] The Court's Order does not allow for this level of communication with the firewalled AUSA. See infra Part IV, p. 28. If the Government's prosecution team wishes to communicate with the firewalled AUSA, they must obtain either a stipulation from defense counsel or approval of the Court.

prosecution team absent a stipulation from defense counsel or a Court Order. (Id.)

Finally, in the event of a guilty verdict on a death-eligible offense at the guilt phase, the proposed order would require Defendant to confirm or disavow his intent to introduce mental health evidence at the penalty phase within twenty-four (24) hours after the issuance of such verdict. (Id.) If Defendant withdraws his intent to introduce mental health evidence, the Government's mental health examinations will remain sealed from the prosecution team and the firewalled AUSA will be prohibited from joining the team. (Id.) If Defendant confirms his intent to introduce mental health evidence, however, the reports of the Government's experts shall immediately be released to Defendant, and any reports of the Defendant's experts must be released to the Government's prosecution team within twenty-four (24) hours after the release of the Government's expert reports to Defendant. (Id. at 3.)

The proposed order also provides that Defendant can withdraw his intent to present mental health evidence at any time before it is presented at trial without it being admissible against him. (Id.) Defendant's failure to provide notice, confirm his intent to provide mental health evidence at trial, or to participate in an examination by the Government's expert

4

"may result in forfeiture of the right to present mental health testimony at trial." (Id.)

In his Response, Defendant contests the assertion that he has not provided adequate notice under Rule 12.2(b). (ECF No. 361 at 1.) Defendant points to a document he filed on August 13, 2012, entitled "Notice to Use Expert for Proof of Mental Disease or Defect" (ECF No. 59). (See id.) In that filing, Defendant's counsel gave notice "that they intend to introduce expert evidence relating to a mental disease or defect and other mental conditions of the Defendant which bears on both the issue of guilt and the issue of punishment in his case." (ECF No. 59 at 1.) The filing references the neuropsychological evaluation report of Dr. James S. Walker, Ph.D., ABPP.[4] (Id.)

Defendant also argues that, by virtue of the lengthy Atkins proceedings in this case, the Government has already obtained "extraordinary information and time not generally permitted under 12.2(b) and (c)." (ECF No. 361 at 2.) He further "requests that the Court enter a date to file an amended notice if one is necessary," suggesting May 15, 2014. (Id. at 3; ECF No. 361-1 at 1.) Defendant argues that the amended notice need only include "the type of experts who may examine and opine on matters relating to mental health and what, if any, field of

---

[4] Dr. Walker's report and conclusions are inadmissible at trial for the reasons articulated in Defendant's Statement Regarding Dr. James Walker, filed February 27, 2013. (ECF No. 128 (sealed).)

teaching experts there may be. The amended notice should also contain the nature of test performed or expected to be performed." (ECF No. 361 at 3-4.) Defendant rejects the Government's assertion that it is entitled to the names and qualifications of Defendant's potential mental health experts. (Id. at 4.)

Furthermore, Defendant objects to submitting to an additional examination by Government experts unless his amended notice "exceeds the scope of the original notice filed with this Court and the subject of the Court's previous order."[5] (Id.) Defendant "objects to and does not consent to the designation of a fire-walled attorney." (Id. at 4-5.) Defendant asserts that he will confirm his intent to introduce expert mental health evidence during the penalty phase of his trial, if it occurs, within twenty-four (24) hours of a guilty verdict, excluding weekends and holidays. (Id. at 5.) Finally, Defendant requests that the Court require the Government to certify that no information from expert reports already in the possession of the Government has been used in a derivative fashion for the Government's case in chief. (Id. (citing Fed. R. Crim. P. 12.2

---

[5] Defendant is referring to the Court's September 13, 2012, Order, which required Defendant to submit to an examination by Government experts regarding "(1) the issue of mental retardation; and (2) the effect of Defendant's intellectual disability and his psychotic disorder not otherwise specified, if such conditions are found to have existed, on the voluntariness and reliability of Defendant's confession." (ECF No. 74 at 2.)

advisory committee notes (2002 Amendments) ("Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence.")).)

In its Reply, the Government asserts that Defendant's notice filed on August 13, 2012, is inadequate, especially given that Defendant has withdrawn Dr. James Walker as an expert witness.  (ECF No. 363 at 2.)  The Government "requests that the Court order the defendant to file an adequate Rule 12.2 notice including the name of any expert and whether their testimony will be offered at [the] guilt or penalty phase . . . , their qualifications, and a summary of the general subject of the evaluation."  (Id. at 3.)  The Government argues that Federal Rule of Criminal Procedure 16(b)(1)(C) explicitly requires a Defendant to provide a summary of expert witness testimony, along with any expert witness's qualifications.  (Id. at 4-6.)

The Government also argues that it is entitled to a further mental examination of Defendant if he intends to advance any claim of mental disease or defect other than mental retardation/intellectual disability ("MR/ID"), as the Government's previous examinations and the Atkins and suppression hearings were limited to that question.  (Id. at 8.)  The Government further asserts that the designation of a

7

firewalled AUSA is a practice endorsed by the federal courts and
suggests AUSA Stuart Canale for that role.  (<u>Id.</u> at 9-10.)
Finally, the Government objects to any requirement that it
certify that no information from mental health reports already
in its possession has been used in a derivative fashion, arguing
that Rule 12.2(c)(4) provides an adequate safeguard.  (<u>Id.</u> at
10-11.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12.2(b) states:

> If a defendant intends to introduce expert evidence
> relating to a mental disease or defect or any other
> mental condition of the defendant bearing on either
> (1) the issue of guilt or (2) the issue of punishment
> in a capital case, the defendant must – within the
> time provided for filing a pretrial motion or at any
> later time the court sets – notify an attorney for the
> government in writing of this intention and file a
> copy of the notice with the clerk.  The court may, for
> good cause, allow the defendant to file the notice
> late, grant the parties additional trial-preparation
> time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

"[I]n all circumstances in which the defendant plans to
offer expert testimony concerning his mental condition at the
time of the crime charged, advance disclosure to the government
will serve to permit adequate pretrial preparation, to prevent
surprise at trial, and to avoid the necessity of delays during
trial."  <u>United States v. Davis</u>, 93 F.3d 1286, 1294 (6th Cir.
1996) (quoting Fed. R. Crim. P. 12.2 advisory committee notes,

(1983 Amendment to Rule 12.2(b))) (internal quotation marks
omitted).  Notice under Rule 12.2(b) must be "meaningful
notice," i.e., it must allow the Government to prepare to rebut
mental health claims "without unnecessarily delaying capital
sentencing proceedings."  United States v. Johnson,
362 F. Supp. 2d 1043, 1079 (N.D. Iowa 2005) (internal quotation
marks omitted); accord United States v. Sampson, 335 F. Supp. 2d
166, 242-43 (D. Mass. 2004).

> The limited caselaw suggests that to provide
> meaningful notice the defense should disclose the
> kinds of mental health experts that will be evaluating
> defendant, as well as the nature of the tests that the
> defendant's experts will perform.  Defendant is not,
> however, required to disclose the type of mental
> disease or defect for which the defendant will be
> examined, interviewed, or tested . . . .

1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and
Procedure § 207, at 496 (4th ed. 2008).

"If the defendant provides notice under Rule 12.2(b) the
court may, upon the government's motion, order the defendant to
be examined under procedures ordered by the court."  Fed. R.
Crim. P. 12.2(c)(1)(B).  "The Court must determine whether a
psychiatric examination of a defendant will be necessary for the
government fairly to rebut the defendant's expert evidence.
This is a decision within the Court's discretion."  United
States v. Taylor, No. 1:04-CR-160, 2008 WL 471686, at *3
(E.D. Tenn. Feb. 15, 2008) (internal quotation marks omitted).

Rule 12.2(c)(2) states:

> The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

Fed. R. Crim. P. 12.2(c)(2). Neither a defendant's statements during a mental examination conducted under Rule 12.2 nor any fruits of such statements may be admitted into evidence against the defendant except on an issue regarding mental condition on which the defendant "has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2)." Fed. R. Crim. P. 12.2(c)(4)(B). Moreover, if a defendant fails to give Rule 12.2(b) notice, to submit to an examination by a Government expert when ordered to do so by the Court under Rule 12.2(c), or to comply with Rule 12.2(c)(3) disclosure requirements, the Court may exclude any expert evidence from the defendant on the issue of the defendant's mental condition as it relates to the issue of guilt or punishment in a capital case. Fed. R. Crim. P. 12.2(d).

Rule 16(b)(1)(C) provides that:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if –

10

. . .

> (ii) the defendant has given notice under
> Rule 12.2(b) of an intent to present expert
> testimony on the defendant's mental condition.

This summary must describe the witness's opinions, the
bases and reasons for those opinions, and the
witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). Federal courts have held that

Rule 16(b) applies to both the guilt phase and penalty phase of

a death penalty trial. See, e.g., United States v. Wilson,

493 F. Supp. 2d 348, 354-56 (E.D.N.Y. 2006); United States v.

Catalan Roman, 376 F. Supp. 2d 108, 113-14 (D.P.R. 2005).

## III. ANALYSIS

The Court addresses each of the parties' arguments in turn

below.

## A. Sufficiency and Content of Defendant's Notice

The Court finds that Defendant's Notice, filed on

August 13, 2012, is inadequate under Rule 12.2(b).

The purpose of Rule 12.2(b) notice "is to prevent the need

for a continuance when [mental health] evidence is offered

without prior notice." Fed. R. Crim. P. 12.2 advisory committee

notes; see also Wilson, 493 F. Supp. 2d at 356 (describing the

purpose of Rule 12.2 as "eliminating unnecessary delay in

allowing the Government to adequately prepare its rebuttal

case."). Defendant's Notice is now more than a year old and

references only the report of an expert witness who is no longer

11

participating in this case. (See ECF No. 59 at 1.) Moreover, the Notice merely states that Defendant "intend[s] to introduce expert evidence relating to a mental disease or defect and other mental conditions of the Defendant which bears on both the issue of guilt and the issue of punishment in his case." (Id.)

Adequate notice under Rule 12.2(b) must include at least "the kinds of mental health professionals who have evaluated the defendant and the specific nature of any testing that the defense experts would perform or have performed." United States v. Lujan, 530 F. Supp. 2d 1224, 1238-39 (D.N.M. 2008) (citing Wilson, 493 F. Supp. 2d at 351-53; Johnson, 362 F. Supp. 2d at 1080). "[T]his information is sufficient 'meaningful notice' to enable the government to choose the type of expert it needs without forcing the defendant to disclose the specific nature of his proffered mental condition before the time contemplated by Rule 12.2." Id. at 1239 (citing Wilson, 493 F. Supp. 2d at 352-53; Sampson, 335 F. Supp. 2d at 243).

Therefore, Defendant must file an amended notice that includes the type of mental health experts Defendant will call at trial, as well as the specific nature of any testing that said experts have performed or will perform. Moreover, the amended notice "should include experts who are basing their opinion on a review of records, rather than a personal examination, so long as the expert will be providing evidence of

a mental condition bearing on guilt or punishment." <u>Id.</u> (citing

<u>United States v. Edelin</u>, 134 F. Supp. 2d 45, 51-52 (D.D.C.

2001)).

At the hearing on March 21, 2014 (<u>see</u> ECF No. 364), counsel

for Defendant argued that, by virtue of the <u>Atkins</u> proceeding in

this case, the Government already has notice of Defendant's

experts, the type of mental testing conducted by said experts,

and the mental conditions they alleged. Defendant cited the

reports of both defense and Government experts as examples of

the Government having adequate notice of both the experts and

the underlying mental conditions asserted. (<u>See</u> ECF No. 177-1

at PageID 1672 (sealed); ECF No. 94-1 at 37, PageID 306

(sealed); ECF No. 95-1 at 40, PageID 361 (sealed).)

Defendant's argument fails. Rule 12.2(b) requires explicit

notice to the Government; it is not enough for Defendant to

state that the Government can infer the mental health evidence

he will potentially present at trial and therefore has adequate

notice.

Defendant also argues that that the Government's Motion and

proposed order would require notice of more than what is

required by Rule 12.2. Specifically, Defendant argues that

"Rule 12.2 does not require the release of the names and

curriculum vitaes of the Defendant's experts and most courts

have denied the government this information." (ECF No. 361 at 3

13

(citing Lujan, 530 F. Supp. 2d at 1239; Wilson, 493 F. Supp.
at 352-53).)  The Government responds that "the names and
professional qualifications of defense experts have actually
been provided to the government in numerous cases.  (ECF No. 363
at 4 (citing United States v. McCluskey, No. 1:10-cr-02734-JCH,
ECF No. 219 (D.N.M. Sept. 9, 2011); Catalan Roman,
376 F. Supp. 2d 108; Johnson, 362 F. Supp. 2d at 1074-80;
Sampson, 335 F. Supp. 2d at 243; United States v. Hardy,
No. 2:94-cr-00381-HGB-ALC, ECF No. 1810 (E.D. La. Apr. 14,
2008).)  The Government also notes that Defendant provided
Dr. James Walker's name in his 2012 notice.  (Id.)

    The Court has reviewed Rule 12.2(b) and federal cases
applying the rule, and finds that it is sufficient for
Defendant's amended notice to disclose only "the kinds of mental
health professionals and the nature of the tests that the
defendant's experts would perform . . . ."  Wilson,
493 F. Supp. 2d at 352; see also Wright & Leipold, Federal
Practice and Procedure § 207, at 496.  This will provide the
Government with the "meaningful notice" that is required under
Rule 12.2(b) in order to allow proper rebuttal preparation and
avoid trial delays.  The Court will also require Defendant's
amended notice to disclose whether Defendant intends to present
non-mental health expert testimony in mitigation at the penalty
phase of his trial, if it occurs.  See Catalan Roman,

14

376 F. Supp. 2d at 115 ("The Court accordingly finds . . . a
statutory basis to assert its inherent authority to require
notice of any expert mitigation that defendant plans to offer
during the penalty phase, regardless of whether it concerns a
mental condition under Rule 12.2.").

Defendant's notice is not required to provide the
Government with a "brief, general summary of the topics to be
addressed" (see ECF No. 345-1 at 1); following the 2002
Amendments to Rule 12.2, "requiring the defendant to provide
such information is no longer permissible because 'the nature of
the proffered mental condition(s)' is essentially the same as
the 'results and reports' for which early disclosure is barred."[6]
Sampson, 335 F. Supp. 2d at 243 (citing Fed. R. Crim.
P. 12.2(c)(2)).  Moreover, although Defendant has previously
named the mental health professionals on whom he intends to rely

---

[6] The 2002 Amendments to Rule 12.2(c)(2) were intended to "insulate the
results of the [mental] examination until it is clear that the defendant will
introduce expert evidence about his or her mental condition at a capital
sentencing hearing . . . and a reaffirmation by the defendant of an intent to
introduce expert mental-condition evidence in the sentencing phase."  Fed. R.
Crim. P. 12.2 advisory committee notes (2002 Amendments to Rule 12.2(c)(2)).
The Court in Sampson explained that the sealing of expert reports until the
defendant confirms an intent to present mental health evidence at sentencing
addresses the following concerns:

> To allow the government to use the results of a defendant's
> mental examination, or any information derived from it, for a
> purpose other than rebuttal at sentencing would violate the
> defendant's Fifth Amendment right against self-incrimination.
> Moreover, the defendant's Sixth Amendment right to the effective
> assistance of counsel could be compromised if defense counsel was
> required to reveal his strategy or to disclose materials he
> provided to his experts.

335 F. Supp. 2d at 243 (citations omitted).

15

(see ECF No. 59 at 1), and the Government is aware of the mental health professionals Defendant presented at the Atkins hearing, the Court will not require Defendant's amended notice to include the names and professional qualifications of his potential mental health experts at trial.

Accordingly, the instant Motion (ECF No. 345) is GRANTED IN PART and DENIED IN PART as to the Government's request for an amended notice of intent to present mental health evidence at trial. The Motion is GRANTED insofar as Defendant must amend his notice to disclose the kinds of mental health professionals and the nature of the tests that the defendant's experts would perform. The Motion is DENIED insofar as the Government requests notice of the specific mental conditions Defendant will allege at trial, and as to the Government's request that the notice include the names and qualifications of Defendant's potential experts. As the Court stated at the March 21, 2014, hearing, Defendant shall comply with the procedures listed infra at Part IV, pp. 26-30, by 4:30 p.m. on Friday, April 4, 2014.

**B.    Submission by Defendant to Government Examination**

As stated above, "[i]f the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B). "[C]ourts have consistently held that a defendant's Fifth Amendment rights are

not violated by a court ordered mental health examination when
the defendant has provided notice of intent to produce mental
health expert testimony in support of a mitigating factor at
sentencing." United States v. Fell, 372 F. Supp. 2d 753, 760
(D. Vt. 2005) (citing Edelin, 134 F. Supp. 2d at 49; United
States v. Webster, 162 F.3d 308, 340 (5th Cir. 1998); United
States v. Beckford, 962 F. Supp. 748, 760 (E.D. Va. 1997);
United States v. Vest, 905 F. Supp. 651, 653 (W.D. Mo. 1995));
see also Fed. R. Crim. P. 12.2 advisory committee notes (2002
Amendments to Rule 12.2(c)(1)(B)) ("Rule 12.2(c)(1)(B) extends
to those cases when the defendant has provided notice, under
Rule 12.2(b), of an intent to present expert testimony on the
defendant's mental condition, either on the merits or at capital
sentencing.").

Defendant argues that he "should only be required to submit
to an additional examination if the amended notice exceeds the
scope of the original notice filed with this Court and the
subject of the Court's previous order." (ECF No. 361 at 4.)
The Government argues that it should be permitted to conduct a
further examination of Defendant because its previous
examinations were limited to the issue of MR/ID, pursuant to
Court Order (see ECF No. 74 at 2). (ECF No. 363 at 8.) The
Government asserts that it "should be entitled to a further
examination of [Defendant] under Rule 12.2(c) if the defense is

advancing any claim that [Defendant] has any mental condition, disease, or defect other than [MR/ID]."  (Id.)

The Court finds the Government's argument more compelling. Although the reports submitted by mental health professionals for both parties briefly referenced mental conditions other than MR/ID (see ECF No. 177-1 at PageID 1672 (sealed); ECF No. 94-1 at 37, PageID 306 (sealed); ECF No. 95-1 at 40, PageID 361 (sealed)), the vast majority of time and effort expended during the Atkins and suppression hearings was focused on MR/ID.  Based on the representations of Defendant's counsel at the hearing on March 21, 2014 (see ECF No. 364), defense counsel has unequivocally stated that the Defendant does not intend to present expert testimony at the guilt phase.  It is, however, unclear what mental health testimony, if any, Defendant may present at the penalty phase.  Therefore, the Government cannot be certain that it is adequately prepared to rebut the mental health expert testimony Defendant may present at the penalty phase based on Defendant's inadequate 2012 notice and the information it has already obtained during the Atkins and suppression proceedings.

Rule 12.2(c)(1)(B) explicitly allows the Court to order Defendant to undergo an examination by an expert of the Government's choosing.  "If the defendant gives notice under 12.2(b), the court may order the defendant to undergo a mental

18

examination." Wright & Leipold, <u>Federal Practice and Procedure</u> § 207, at 496; <u>see also</u> <u>United States v. Lewis</u>, 53 F.3d 29, 35 n.9 (5th Cir. 1995) (finding no error in the district court's order that the defendant "undergo a psychological examination before trial pursuant to [Rule 12.2(c)], in light of [the defendant's] notice to the government . . . that . . . he intended to rely on expert testimony to show he had a sub-normal level of intelligence.").

Accordingly, the instant Motion (ECF No. 345) is GRANTED as to the Government's request to have Defendant submit to a mental examination by a Government expert prior to the commencement of trial. <u>See, e.g.</u>, <u>United States v. Umana</u>, No. 3:08CR134-RJC, 2009 WL 2489309, at *3 (W.D.N.C. Aug. 12, 2009). If Defendant submits an amended notice of his intent to present mental health expert testimony at trial by 4:30 p.m. on Friday, April 4, 2014, he will be required to submit to a mental examination by an expert of the Government's choosing prior to the commencement of trial.

## C. Appointment of Firewalled AUSA and Disclosures to the Firewalled AUSA

The Government's proposed order would require the Government to designate a firewalled AUSA – in this case, Stuart Canale – "to arrange for any evaluation by an expert designated by the Government, to handle any issues arising during the

evaluation process, and to arrange for filing of the expert's
report under seal." (ECF No. 345 at 8; accord ECF No. 363 at
10.) The firewalled AUSA would be prohibited from communicating
with or joining the prosecution team until Defendant confirms
his intent to introduce expert mental health evidence at the
punishment phase of his trial. (ECF No. 345 at 8.) The
Government further argues that Rule 16(b)(1)(C) disclosures –
i.e., a summary of the expert witness's opinions, the bases and
reasons for those opinions, and the witness's qualifications –
should "be turned over to the designated 'firewalled' counsel
prior to trial." (ECF No. 363 at 7 (citing Wilson,
493 F. Supp. 2d at 363).)

Defendant objects to and does not consent to the
appointment of firewalled counsel (ECF No. 361 at 4-5), arguing
that Rule 12.2(c)(2) prohibits the disclosure of the results and
reports of any mental health expert to "any attorney for the
government . . . unless the defendant is found guilty of one or
more capital crimes and the defendant confirms an intent to
offer during sentencing proceedings expert evidence on mental
condition." Fed. R. Crim. P. 12.2(c)(2) (emphasis added by
Defendant). At the hearing on March 21, 2014 (see ECF No. 364),
Defendant's counsel objected to the appointment of firewalled
counsel, especially counsel within the Western District of
Tennessee, arguing that the use of firewalled counsel

20

circumvents Rule 12.2(c)(2) and would raise the specter of the firewall being breached.

The Court finds the Government's arguments more availing and, therefore, will order the appointment of a firewalled AUSA in this case. As a threshold matter, the language "any attorney for the government" in Rule 12.2(c)(2) has been reasonably interpreted to exclude "those attorneys representing the government's interests solely in connection with its experts' testing." Sampson, 335 F. Supp. 2d at 245; see also Johnson, 362 F. Supp. 2d at 1083 (finding that Rule 12.2(c)(2)'s language "reasonably means 'any attorney prosecuting the case.'").

> To ensure that the government is not provided access to the results of defendant's mental exam before the defendant elects to put his mental condition in issue, the district court may order that the government's examining experts work only with a 'taint team,' consisting of government attorneys who are walled-off from the prosecutor who is trying the case.

Wright & Leipold, Federal Practice and Procedure § 207, at 500.

Federal courts have routinely approved the use of firewalled AUSAs in Rule 12.2(b) contexts. See, e.g., Wilson, 493 F. Supp. 2d at 353-56; Sampson, 335 F. Supp. 2d at 243-45; Johnson, 362 F. Supp. 2d at 1082-84; United States v. Northington, No. 07-550-05, 2012 WL 2873360, at *7 (E.D. Pa. July 12, 2012). The Court in Sampson succinctly described the virtues of firewalled counsel in these circumstances:

Rule 12.2's goal of avoiding delays in capital sentencing proceedings would not be served if any problems with the government testing were not revealed until after the guilt phase. The defendant could suffer no prejudice from the fire-wall procedure. Indeed, the procedure might provide the defendant with an even greater sense of security that his defense strategy . . . would remain hidden from the prosecution team.

Sampson, 335 F. Supp. 2d at 245; see also Northington, 2012 WL 2873360, at *7 ("[T]he use of this firewalled attorney will sufficiently safeguard Defendant's constitutional rights."). Accordingly, the Court will approve the use of a firewalled AUSA in this case.

To the extent Defendant argues that the firewalled AUSA should not be from the Western District of Tennessee, the Court rejects the argument. The Court recognizes that, in Wilson, the United States District Court for the Eastern District of New York denied the government's motion to appoint a firewalled AUSA from within the same district in light of the E.D.N.Y.'s "geographic proximity to several other districts, including the Southern District of New York's U.S. Attorney's Office, located less than two miles away in lower Manhattan, and the District of New Jersey's office." 493 F. Supp. 2d at 358. There is no similar geographically expedient solution in the Western District of Tennessee. Moreover, the court in Wilson recognized that appointing a firewalled AUSA from outside of the E.D.N.Y. was merely "the more cautious route." Id. Similarly, in

Johnson, the United States District Court for the Northern District of Iowa, "although not convinced that use of an 'outside taint team' or 'outside taint attorney' is either always necessary or necessary in this case, . . . [erred] on the side of caution by appointing such an 'outsider' . . . ." 362 F. Supp. 2d at 1084.[7]

In this case, the Court has no misgivings about either the Government's or Mr. Canale's ability to comport themselves within the bounds of Rule 12.2 and the Constitution. Accordingly, the Court will not require the firewalled AUSA in this case to come from a district other than the Western District of Tennessee.  The instant Motion (ECF No. 345) is GRANTED as to the Government's request to appoint firewalled counsel.

As for the Government's request that the firewalled AUSA be provided with further disclosure of mental health expert evidence under Rule 16(b)(1)(C), the Government's argument is well-taken.  As an initial matter, the Court rejects Defendant's assertion at the hearing on March 21, 2014 (see ECF No. 364), that Rule 16(b)(1)(C) does not apply to the penalty phase of a

---

[7] The court in Johnson stated that there were "two 'taint teams' in . . . the Northern District of Iowa working on issues in this case and that these 'taint teams' have worked efficiently and effectively.  Thus, there is no reason to believe that any 'breakdown' of a 'firewall' would be likely within that office."  362 F. Supp. 2d at 1084.  Similarly here, the Court has no reason to believe the Government in this case will not maintain the integrity of the firewall and the procedures mandated by Rule 12.2 and the Constitution.

capital trial. Federal courts have persuasively held that
Rule 16(b)'s disclosure requirements are not limited to the
guilt phase of a capital trial. For example, in <u>Wilson</u>, the
court rejected the argument that Rule 16(b)(1)'s reference to
the Federal Rules of Evidence ("FRE") is an indication that
Rule 16 does not apply to the sentencing phase of a capital
trial since the Rules of Evidence do not apply in the sentencing
phase. <u>See</u> 493 F. Supp. 2d at 355 (citing <u>United States v.
Fell</u>, 360 F.3d 135, 144 (2d Cir. 2004)). The court stated:

> First, the penalty phase of a capital trial is but the
> final phase of a single bifurcated (or trifurcated)
> trial. Moreover, although the [FRE] are not utilized
> during the death penalty phase to preclude hearsay and
> other inadmissible evidence, the mitigation evidence
> presented concerning Defendant's mental condition will
> nonetheless comport with the expert evidence
> requirements of Rules 702, 703, and 705. Thus, the
> language of Rule 16 is still reconcilable with penalty
> phase disclosure and is certainly not prohibited by
> the rule.

<u>Id.</u> (citations omitted) (internal quotation marks omitted); <u>see
also</u> <u>Catalan Roman</u>, 376 F. Supp. 2d at 113 ("It is not clear
that the terms of Rule 16 cannot extend to the sentencing phase.
While the Rule is drafted in terms of the admissibility of
certain evidence for use during 'trial,' that language is still
reconcilable with penalty phase disclosure because sentencing is
part of one 'bifurcated' trial.").

Having found Rule 16 applicable to the sentencing phase,
the Court will require Defendant to disclose <u>only</u> to the

firewalled AUSA, not the prosecution team, a written summary of expert testimony on Defendant's mental condition that Defendant intends to admit during the penalty phase. This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C)(ii). See Wilson, 493 F. Supp. 2d at 356. As stated above, Defendant must make this disclosure by 4:30 p.m. on Friday, April 4, 2014.

**D.    Defendant's Request for a Certification That Defendant's Statements to Mental Health Professionals Were Not Used Derivatively in the Government's Case in Chief**

Defendant argues that the Government should be required to file a certification that it has not used any mental health report already in its possession derivatively in support of its case in chief. (ECF No. 361 at 5.) In support of his request, Defendant cites the following portion of the 2002 advisory committee notes to Rule 12.2: "Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence." Fed. R. Crim. P. 12.2 advisory committee notes (2002 Amendments to Rule 12.2(c)(2)). The Government asserts that Rule 12.2(c)(4) provides adequate safeguards without an additional certification from the Government, which is unsupported by legal authority. (See ECF No. 363 at 11.) Rule 12.2(c)(4) provides:

25

(4) _Inadmissibility of a Defendant's Statements_.  No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:

> (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or

> (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2(c)(4).

The Court reemphasizes its statement at the hearing on March 21, 2014 (see ECF No. 364):  the Court has no doubt regarding the Government's ability to conform to the requirements of Rule 12.2(c)(4) and the Constitution.  Accordingly, the Court will not require the Government to submit a separate certification that it has not improperly used the expert mental health reports currently in its possession in an unconstitutional derivative fashion in support of its case in chief.

## IV.  CONCLUSION AND ORDER REGARDING MENTAL HEALTH EVIDENCE

For the reasons stated above, the Government's Motion for Pretrial Notice of Intent to Introduce Penalty Phase Mental Health Evidence (ECF No. 345) is GRANTED IN PART and DENIED IN

PART.  Pursuant to Federal Rule of Criminal Procedure 12.2 and the inherent authority of this Court, it is hereby ORDERED that:

A.   If Defendant intends to introduce expert evidence during the guilt phase of his trial relating to mental disease or defect, or during the penalty phase of his trial relating to any other mental condition of Defendant bearing on the issue of punishment, Defendant must file written notice thereof no later than 4:30 p.m. on Friday, April 4, 2014.

Defendant's notice shall include the kinds of mental health experts he anticipates calling at trial and the specific nature of the tests those experts have performed or may be expected to perform.  The notice shall include experts who are basing their opinions on a review of records and not a personal examination of Defendant.  Defendant's notice need not include the names of his anticipated experts or any indication of the specific mental condition Defendant intends to allege at trial.

B.   If Defendant files notice of plans to introduce expert mental health evidence at the penalty phase of trial, Defendant shall be examined by one or more mental health professionals selected by the Government.  The Government's examination shall take place no later than sixty (60) days after Defendant files his notice, and prior to the commencement of the trial on Monday, June 9, 2014.  The

27

report of any examination conducted by a Government expert and the expert report of any examination initiated by Defendant shall be filed under seal with the Court before commencement of the guilt phase of trial, or as soon thereafter as possible if the trial schedule does not permit pre-trial filing.

C.   In anticipation of such notice from Defendant, the Government shall designate an AUSA as a firewalled AUSA to arrange for any evaluation by an expert designated by the Government, handle any issues arising out of the evaluation process, and arrange for filing of expert reports under seal.  The firewalled AUSA may not communicate with the prosecution team regarding case matters and may not join the prosecution team unless and until the Defendant is found guilty of a capital offense at trial and gives notice confirming his intent to introduce expert mental health evidence during the penalty phase of the trial.  Should the firewalled AUSA or the prosecution team need to communicate regarding a case-specific matter, the individual seeking to make such communication must first obtain a stipulation from defense counsel or approval of the Court.  Any individuals assisting the firewalled AUSA shall be subject to the same requirements and restrictions as the firewalled AUSA.

D.   Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C),

Defendant shall submit to the firewalled AUSA a written

summary of expert testimony on Defendant's mental condition

that he intends to admit during the penalty phase of trial,

if it occurs.  This summary must describe the witness's

opinions, the bases and reasons for those opinions, and the

witness's qualifications.  Defendant shall complete this

disclosure by 4:30 p.m. on Friday, April 4, 2014.

E.   If there is a guilty verdict on a death-eligible count in

the trial of this case, Defendant shall, no later than

twenty-four (24) hours after issuance of such a verdict,

file a pleading confirming or disavowing his intent to

introduce mental health evidence at the penalty phase.  If

Defendant withdraws his previously tendered notice, the

results of any mental health examinations concerning

Defendant will not be released to the Government's trial

team and the firewalled AUSA may not join the Government's

trial team.

     If Defendant confirms his intent to introduce mental

health evidence at the penalty phase, the reports of any

examination by a Government expert shall be released to

Defendant immediately after Defendant files his pleading

confirming the earlier notice.  No later than twenty-four

(24) hours after release of the Government's expert

report(s), the report(s) of any defense expert(s) shall be released to the Government's trial team, or Defendant shall file a notice of withdrawal of his intent to introduce expert mental health evidence.

F.   Even if Defendant confirms his intent to offer mental health evidence, Defendant may withdraw a notice of intent to introduce such evidence at any time before such evidence is presented at trial.  In that event, none of the fact of notice, results, or reports of any mental examination, or any facts disclosed only therein shall be admissible against Defendant.

G.   Failure of Defendant to provide notice, or to participate in a Court-ordered examination, or to confirm his intent to introduce mental health evidence at the penalty phase, may result in forfeiture of the right to present mental health testimony at trial.

**IT IS SO ORDERED,** this 27th day of March, 2014.


/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE