IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal No. 2:15-472-RMG |
| vs. | ) | |
| | ) | |
| Dylann Storm Roof, | ) | **ORDER** |
| | ) | |
| | ) | |

The Court has entered a separate order establishing jury selection procedures in this case. This order explains the Court's decisions regarding specific areas of dispute between the parties.

### A. State-wide versus Area C Jury Pool

Under this district's Amended Jury Selection Plan, the jury in this case would normally be drawn from Area C of the plan. *See* Amended Jury Selection Plan for the Untied States District Court for the District of South Carolina (hereinafter "Jury Plan"), available at http://www.scd.uscourts.gov/Forms/Jury/Jury_Selection_Plan.pdf. The Jury Plan states that "[a] district-wide petit jury may be used when ordered by the Chief Judge for good cause shown." *Id.* at 6. The Government is concerned that Defendant may "attempt to challenge venue" if the jury is drawn only from Area C and, thus, requests that the Court use a district-wide venire "absent a waiver of any venue challenge by [Defendant]." (Dkt. No. 194 at 2). Defense counsel has advised the Court that the Defendant believes an impartial jury can be selected from Area C, that he does not intend to move for a change of venue, and that he requests that the Court draw jurors from Area C of the Jury Plan. (Dkt. Nos. 190, 196, 249).

-1-

While the Government notes the statewide impact of the acts allegedly committed by Defendant in its briefing, its only stated goal in moving for a state-wide venire is "to insulate this case from a later venue challenge." (Dkt. No. 231 at 3; *see id.* at 1 ("The Government continues to encourage the Court to use a Charleston-area (*i.e.*, Area C) jury venire but only if Roof affirmatively waives any venue challenge to having the trial in Charleston with a venire from Area C.")). The Court does not find this "good cause" to recommend to the Chief Judge that the Court deviate from the Jury Plan's default procedure. The Government does not argue that a fair jury cannot be drawn from Area C. (*See id.* at 4 n.3 ("[T]he government does not believe a venue challenge would prevail at any time.")). Instead, the Government wants to ensure Defendant cannot file "an eleventh-hour challenge to venue." (*Id.* at 4).

The Court is mindful of potential venue challenges, which caused the Court to the raise the issue in the first instance. However, Defendant has stated that he believes an impartial jury can be drawn from Area C and has no present intent to challenge venue based on a jury venire from Area C. Defense counsel has a duty of candor to this Court, and the Court takes him at his word that Defendant has no present intent to challenge venue. The Court will not attempt to force Defendant to waive his rights to challenge venue, regardless of changed circumstances, by threatening a statewide venire without an unequivocal and comprehensive waiver. Neither party has made any argument that a fair and impartial jury cannot be drawn from Area C. Thus, the Court does not find "good cause" to recommend to the Chief Judge that the Court deviate from the Jury Plan's default procedure, and the jury will be drawn from Area C in accordance with the Jury Plan.

## B. Court-directed versus Attorney-directed Voir Dire

Federal Rule of Criminal Procedure 24(a) "provides that the trial court may decide to conduct the voir dire itself or may allow the parties to conduct it." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). Under the rule, "the court may limit participation to the submission of additional questions, which the court must ask only as it deems proper." *Id.*; *see also, e.g., United States v. Duncan*, 598 F.2d 839, 865 (4th Cir. 1979) ("The trial court has broad discretion over the manner in which voir dire is conducted. . . . The refusal to allow counsel to conduct that voir dire cannot be described as an abuse of that discretion."); *United States v. Torres*, 191 F.3d 799, 809 (7th Cir. 1999) ("Federal Rule of Criminal Procedure 24(a) provides that a trial court may conduct the voir dire itself and supplement the examination with additional inquiries as it chooses."); *United States v. Rojas*, 537 F.2d 216, 219 (5th Cir. 1976) ("The district court may, of course, choose to ask counsel to submit proposed questions and conduct the voir dire itself."). Even in cases whether the Government seeks death, the Court, in its discretion, may conduct the voir dire itself. *See Trujillo v. Sullivan*, 815 F.2d 597, 607 (10th Cir. 1987) ("We find no constitutional violation in the trial court's choice to exclusively conduct the death-qualifying portion of the voir dire. . . . We are satisfied that the means employed by the trial court to test the impartiality of the potential jurors created a reasonable assurance that prejudice would have been discovered if present.").

It is the normal procedure of this Court, and of this District, for the Court to conduct voir dire itself, with counsel submitting proposed voir dire questions to the Court. In its normal procedure, the Court allows counsel to submit follow-up questions should a juror's response raise any additional concerns or areas of inquiry. The Court does this, in part, because while

advocates may have multiple agendas in voir dire, (*see, e.g.*, Dkt. No. 210, 211), the Court's only agenda is selecting a fair and impartial jury.

Defendant requests that the Court allow counsel to conduct follow-up questioning of jurors. (Dkt. No. 214 at 3). In support of his request, Defendant argues that "jurors are more likely to be honest about their views when questioned by attorneys rather than judges." (*See id.* at 5). This concern is mitigated in this case,[1] however, because questions to identify bias will be asked on the Case Supplemental Questionnaire in the first instance, and voir dire will be used to follow-up on the questionnaire responses. This concern must also be balanced against the concern that advocates are interested in bending jurors to their theory of the case from the very first interaction. Advocates may also intentionally ask jurors leading questions for the purpose of affecting their responses. (*See* Dkt. Nos. 210, 211). In balancing these concerns in this case, the Court finds that court-directed voir dire is the best method for obtaining a fair and impartial jury.

The Court agrees that the trial attorneys are in the best position to know the evidence to be presented at trial and, thus, to develop areas of inquiry during jury selection. The trial attorneys here have every opportunity to propose areas of inquiry, specific questions and follow-up questions during the jury selection process. The parties will submit proposed questions for the Case Specific Questionnaire. They will propose questions for voir dire, and they will have an opportunity to propose follow-up questions during voir dire. They will have every opportunity to propose any question that they think should be asked and to argue that a question should be framed in a particular manner. However, the Court will ask the questions at voir dire itself.

---

[1] The Court makes no finding about whether jurors or more likely to be honest in one situation or the other.

## C. Method of Exercising Peremptory Strikes

Under the Court's normal procedures, parties exercise their peremptory strikes under a "struck jury" procedure. Under this procedure, the Court qualifies a panel of prospective jurors in a number equal to the jurors to be seated plus the alternate jurors to be seated plus the number of peremptory strikes that the parties are allowed. The parties may then exercise their peremptory strikes against any prospective jurors in the panel, and a jury is then empaneled from the unstruck jurors. The Government proposes using this method for exercising peremptory strikes, with the alteration that the Court include an additional six jurors in the qualified panel in case some prospective jurors need to be excused for last-minute issues.

Defendant proposes using a "strike-as-you-go" or "jury box" system. Under this system, as soon as a juror is qualified, the parties must decide at that moment whether to exercise a peremptory strike against that juror. As soon as the requisite number of jurors and alternates are qualified and not struck, they are empaneled as the jury. The "jury box" system tends to "focus the parties' attention on one member of the venire at a time," whereas the "struck jury" system "emphasizes the overall complexion of the panel." *United States v. Blouin*, 666 F.2d 796, 798 (2d Cir. 1981).

The Court sees no reason to deviate from its normal procedures in this case. The Court's staff is trained and familiar with the "struck jury" system. Defendant's only objection to the struck jury system is that it may take longer to empanel a jury.[2] Although the potential to shorten voir dire is a consideration, the Court finds that it does not justify deviating from the Court's

---

[2] While it is true that less jurors may need to be qualified under the "jury box" system, it is also true that the Court must allow the parties time to consider the use of their peremptory strikes after each and every juror is qualified.

normal procedures. Therefore, the Court will use its normal procedures for exercising peremptory strikes.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

July 18, 2016
Charleston, South Carolina