IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S
MEMORANDUM RESPECTING DEATH PENALTY SCREENING**

The defendant, through counsel, replies to the government's Response to Defendant's Memorandum Respecting Death Penalty Screening.[1]

The government addresses neither the abundant evidence cited by the defense that jurors do not understand boilerplate "life-qualifying" questions, Defendant's Memorandum Respecting Death Penalty Screening at 6-13, nor the practical experience described by Judge Bennett in the course of his exhaustive and illuminating treatment of this issue in *United States v. Johnson*, 366 F.Supp.2d 822, 847-48 (N.D. Iowa 2005). Instead, the government cites two Fourth Circuit cases holding that trial judges did not abuse their very broad discretion by refusing to pose more probing and understandable *Morgan* questions. *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), *United States v. Tipton*,

---

[1] This reply is filed under seal pursuant to the Court's order sealing pleadings regarding the contents of the jury questionnaire in this case. Dkt. No. 305 (Aug. 16, 2016).

90 F.3d 861, 878 (4th Cir. 1996).[2]   The government does not explain, however, why the Court should not include the questions proposed by the defense in the questionnaire, in light of the social science research and the lack of any authority to preclude such questions.  Nor does it offer any reason to accept its opaque, ambiguous, and overly general questions.

As the Court is well aware, reported appellate decisions regarding discretionary calls in criminal trials naturally tilt to the government's position, since discretionary decisions in favor of criminal defendants are not subject to post-trial review, and thus generally don't appear in the case law.  That is why especially well-reasoned memorandum opinions by trial judges, such as Judge Bennett's in *Johnson* and Judge Sessions' in *United States v. Fell,* 372 F. Supp. 2d 766 (D. Vt. 2005), are a useful corrective to the handful of no-abuse-of-discretion appellate cases upon which the government relies.  Even if *Tipton* and *Caro* are viewed as setting the minimum requirement for what the Court *must* do to identify jurors whose pro-death penalty views impair their ability to consider imposing life sentences on defendants convicted of the crimes charged in this case, they are very poor guides to what the Court *should* do to

---

[2] Though the government does not say one way or the other, its argument also implies that defense counsel in *United States v. Beckford* should not have been allowed to ask the handful of follow-up questions that eventually uncovered the juror's disqualifying bias in favor of capital punishment.  Defendant's Memorandum at 9-10.

identify such jurors.[3]  Neither *Caro* nor *Tipton* (nor *Morgan*) may be read to say that the Court would be wrong to include the questions the defense proposes here.

The questions requested are designed to ensure that, when assessing their own ability to consider the full range of available punishments, prospective jurors understand what the defendant is to be punished *for*.  Other federal courts have included such questions in capital-case jury questionnaires.  *See e.g. United States v. Eric Robert Rudolph,* Case No. CR-00-S-422 (N.D. AL) (e.g., Questions 129-131); *United States v. Theodore Kaczynski*, No. CR S–96–259 GEB GGH (C.D. CA) (e.g., Question 107).  The defense questions are different from those requested and refused in *Tipton*, or in the cases cited in footnote one of the government's Response.  They do not seek to uncover jurors' attitudes about specific mitigating factors, *cf. Tipton,* 90 F.3d at 878, *United States v. McCullah*, 76 F.3d 1087, 1114 (10th Cir. 1996), nor ask the jurors to promise that they "could . . . impose a life sentence" given only a particular aggravating factor. *Hodges v. Colson*, 727 F.3d 517, 527-29 (6th Cir. 2013).

The defense-requested questions (6 of them – 43, 46, and 49-52) are simple, succinct, and consistent with *Morgan*.  They are designed to apply the experience articulated by Judge Bennett and corroborated by the findings of the Capital Jury Project regarding "the ineffectiveness of purely "abstract" questions to probe . . .  whether or not a juror would be able to fulfill his or her duty to give fair consideration to both life and death sentences no matter what the facts are."  *Johnson,* 366 F.Supp.2d at 847-48.  We

---

[3] Notably, neither *Caro* nor *Tipton* addresses the social science research presented to this Court.

note that, based on the CJP research and the experience of federal court judges in cases like *Johnson* and *Beckford*, using these questions in the questionnaire can both save time in voir dire and reduce the risk that disqualifying juror bias will go undetected. We request that the Court include them in the questionnaire.

Respectfully submitted,

s/ *David I. Bruck*
David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender, District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
(336) 788-3779
kim_stevens@fd.org

Attorneys for Dylann S. Roof