IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S SUPPLEMENTAL PLEADING
SUPPORTING 6TH AMENDMENT MOTION TO SUPPRESS**

In preparation for the second, sealed hearing, scheduled for Tuesday, September 20, 2016, the defendant, through counsel, submits this supplemental pleading supporting our Sixth Amendment motion to suppress, Dkt. No. 268. The defendant's proof at the hearing will focus on why the writing seized from the jail, Dkt. No. 268-1, is a privileged attorney-client document despite features which mirror prior non-privileged statements that the defendant made. Although the form and some of the content of the document may at first suggest that it is not privileged, *see* Govt. Response, Dkt. No. 299, at 1-4, a closer look reveals that it is – on its face – a product of the iterative process by which the defendant and his attorneys had begun to prepare for both the trial and penalty phases of his anticipated trial. Indeed, the ways in which it mirrors the prior statements are actually evidence that the document *is* protected under the attorney-client privilege.

The document includes:

- a more detailed description of the defendant's beliefs;
- discussion of aspects of the offense;

1

- notes about his views on penalty-phase investigation and presentation; and
- information about his personal preferences, which bears on his background and characteristics.

Any superficial resemblance to prior writings reflects only the defense team's insistence that their client explain to them – in detail – his motivation to commit the offense and how that is reflected in the evidence, including the Last Rhodesian posting.[1]

To be sure, it is not possible to dispel all doubt as to whether the jail document was actually created as a non-privileged "manifesto," as the government contends. But defendant's burden of proof is only to establish his Sixth Amendment claim by a preponderance of the evidence. Once the document is properly understood in the context of the frequent attorney-client discussions that caused it to be written, the evidence showing its privileged status will outweigh the inferences urged by the government, and will require that the Court grant the motion to suppress.

## LEGAL STANDARD

The parties agree on the governing legal standards. On a motion to suppress evidence based on a Sixth Amendment violation, the defendant must prove trespass on the attorney-client privilege by a preponderance of the evidence. *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996). Attorney-client privilege is established when a defendant writes on issues relating to his case, intending that writing to be communicated to his attorneys in some fashion for the purpose of obtaining legal advice.

---

[1] The journal seized from the defendant's car was not disclosed to the defense until some months later.

2

*See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976).  A preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring) (internal quotation marks and citation omitted).

## ARGUMENT

The government is correct that the document mirrors prior writings, at least in part.  It is also true that at least one of the prior writings, the Last Rhodesian posting, was intended for dissemination, and was disseminated, to the public.  That the document seized from the jail mirrors the Last Rhodesian posting, however, does not reflect that defendant intended to disseminate the jail writing, as well.  Rather, it reflects the fact that the Last Rhodesian post was a central feature of this case from the very beginning, and one which was therefore the basis of frequent discussion between the defendant and his legal team.

Importantly, the document seized from the jail more than mirrors, it expands on and explains the earlier writings.  As reflected in the chart below,[2] the defendant "finish[ed]" writing his opinions for his attorneys and "ma[de] some clarifications" in response to their questioning.  Dkt. 268-1 at 2.

| Last Rhodesian Post | Dkt. 268-1 (document seized from jail) |
|---|---|
| **Jews:** | **Jews**: |
| Majority are white | They are an enigma |
| It is an identity | Not understood by themselves or anyone |

---

[2] The chart is not comprehensive.  It is intended only to give the Court some orientation as to how the document develops the defendant's ideas.

3

| | |
|---|---|
| **Jews, cont.:**<br>They network<br>Awareness from turning them blue for 24h<br>They are an enigma<br>Dkt. No. 299-1 at 5. | **Jews, cont.:**<br>Responsible for everything destructive<br>Also made some positive contributions<br>Bad outweighs the good<br>Control the film industry with their money<br>Some good films get made<br>Some good films will never get made<br>Likewise, composers, writers<br>Jewish publishers promote Jews not whites<br>Dkt. No. 268-1 at 2-4 |
| **Hispanics:**<br>Huge problem for Americans<br>Good and bad ones<br>Respect white beauty; some are white<br>White Hispanics are the elite<br>Good white blood in some countries<br>Still our enemies<br>Dkt. No. 299-1 at 6 | **Hispanics:**<br>Hasn't had much contact<br>Witnessed recent population spike<br>Must do something before overrun<br>Vast majority do not have white blood<br>Unclear if they would align against culture<br>Some might join blacks in race war<br>Hard to write about – lack experience<br>Introduce crime, violence<br>Like the Muslims in Europe<br>Dkt. No. 268-1 at 4-5 |
| **East Asians:**<br>Respects East Asians<br>They could carry on after whites<br>Could be racist allies with whites<br>Dkt. No. 299-1 at 6 | **East Asians:**<br>Endure the most discrimination in America<br>What white countries could be like<br>Admires East Asians<br>Not better than whites, but living better<br>Don't face the problems we do<br>Feels a small amount of jealousy about that<br>Dkt. No. 268-1 at 8 |

As the government pointed out in its Response, the document seized from the jail not only expands on race-related topics as compared to the Last Rhodesian post, but introduces new ones. *See* Dkt. No. 299 at 4. That is, the document contains "Clarifications" and "Explanations," but it also discusses topics on which the defendant had not previously written, including "Muslims," "Homosexuality," "Christianity," and

"Slavs." *Id.* These clarifications, explanations, and development of the defendant's ideas were related to his conversations with counsel and were intended to facilitate the representation.

Equally importantly, the document seized from the jail also addresses topics having little or nothing to do with the defendant's beliefs as expressed in the Last Rhodesian posting. These reflect instead his thoughts on, and preparation for, other discussions with counsel. They include trial-related and mitigation-related themes, which are interspersed throughout the document, and which are clearly of the sort one would expect to find in attorney-client communications:

- The defendant's feelings about his commission of the charged offenses, Dkt. 268-1 at 11;

- The defendant's favorite movies, and an explanation why these are his favorite movies, *id.* at 13-15;

- The defendant's views on various potential mitigation themes, including drug use and mental health, *id.* at 16;

- The defendant's response to certain charges in the indictment, *id.* at 16;

- The defendant's response to the jail's suicide investigation, *id.* at 18;

- The defendant's comments about certain evidence in the case (the "manifesto," the College of Charleston, his relationships with people of color), *id.* at 18-20;

- The defendant's views about Christianity, *id.* at 23-24;

- The defendant's views about psychology as a discipline, *id.* at 29;

- Some of the defendant's favorite music, *id.* at 31.

The Last Rhodesian post, of course, did not contain any material of this sort.

5

At the hearing on Tuesday, September 20, 2016, lead state counsel for the defendant, D. Ashley Pennington, Ninth Circuit Public Defender,[3] will explain the process by which the defendant produced the document at issue and the purpose for which he did so. This testimony will establish, by a preponderance of the evidence, that the document should be read not as a "manifesto," but as attorney-client privileged material which government authorities had no right to seize and inspect.[4]

---

[3] Federal Rule of Evidence 502(d) protects the defendant, given this Court's ruling regarding Mr. Pennington's potential testimony, should a state prosecution proceed following the federal trial. The rule provides that: "A federal court may order that the [attorney-client] privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding."

[4] We do not abandon, and in fact intend to present additional evidence in support of, our Fourth Amendment motion to suppress the writing.

## CONCLUSION

For these reasons, and those expressed in our motion and at the prior hearing in this matter, the Court should suppress the writing seized from the defendant's cell at the Charleston County Detention Center on August 3, 2016.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC  29201
(803) 765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof

7