IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA :
:
vs. :
:
DYLANN STORM ROOF : 2:15 - CR - 472

Phone Conference in the above matter held on Friday, October 21, 2016, commencing at 1:00 p.m., before the Hon. Richard M. Gergel, in the United States Courthouse, Courtroom VI, 85 Broad St., Charleston, South Carolina, 29401.

APPEARED VIA TELEPHONE ON BEHALF OF THE UNITED STATES:

JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.

NATHAN WILLIAMS, ESQ., P.O. Box 978, Charleston, SC.

APPEARED VIA TELEPHONE ON BEHALF OF THE DEFENSE:

DAVID I. BRUCK, ESQ., Washington & Lee School of Law, Lexington, VA.

REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
Official Court Reporter for the U.S. District Court
P.O. Box 835
Charleston, SC 29402
843/723-2208

1:00:26PM THE COURT: Let me, for the record, this is in the matter of United States of America versus Dylann Storm Roof, 2:15-472.

1:00:33PM Could counsel identify themselves for the record who will be speaking during this argument?

1:00:38PM MR. RICHARDSON: Jay Richardson from the Government, Your Honor.

1:00:41PM MR. BRUCK: David Bruck for the defendant.

1:00:44PM THE COURT: Counsel, let me just sort of go through, I've received these dueling memoranda, it's a little hard for me to keep up with them all, but let me just sort of walk through the issues as I've listed them, and let's just see -- and if there are others, you can bring them to my attention.

1:01:06PM First of all regarding the location of examination. Mr. Richardson, is there any reason we can not do it at the jail?

1:01:14PM MR. RICHARDSON: There's no reason it can not be done there, Your Honor.

1:01:17PM THE COURT: I order it to be done at the detention center.

1:01:20PM MR. RICHARDSON: Thank you.

1:01:22PM THE COURT: Secondly, there seemed to have been some confusion about the duty of disclosure, and I'm going to put a little bit on myself. I thought I had done it, that I expected that the defendant and the Government would have

reciprocal disclosure, that is, both the kinds of mental health experts that the party -- the Government intends to call, as well as the tests and examinations to be performed.

1:01:50PM The Government apparently couldn't find anything in an order, because I just thought it was there and it wasn't, to make clear that the standard imposed on the defendant regarding disclosure on June 30 was intended also to be imposed on the Government.

1:02:05PM So I'm going to issue an order today clarifying that so there's no confusion. So, Mr. Richardson, you need to supplement your disclosure to disclose the kinds of mental health experts the Government intends to call.

1:02:20PM MR. RICHARDSON: Okay.

1:02:21PM THE COURT: Okay. Third issue. Mr. Bruck has expressed concern about whether it's understood that the Government has a duty, its expert's duty to maintain confidentiality. I am not sure there really is confusion, but let me see if I can set forth, and, Mr. Bruck, if this satisfies your concern.

1:02:46PM I have no problem, I don't think there's any problem with the Government experts sharing information among themselves. But basically, other than to deliver the sealed -- the things to the Court under Docket 260, they should not be disclosing it to anyone else. Do we have any dispute about that until the provisions of Rule 12.2(c)(2) are met? Do we have any

dispute about that?

1:03:18PM MR. RICHARDSON: Not from the Government, Your Honor. It's our understanding that -- That is exactly our understanding.

1:03:23PM THE COURT: Mr. Bruck, does that satisfy your concerns? I'm going to put that in an order to make it clear.

1:03:29PM MR. BRUCK: Well, it does, except for the somewhat open-ended -- until now, what has been the somewhat open-ended description of who the Government's experts are. We don't know how many, we don't know --

1:03:44PM THE COURT: Right. What you're going to get is a disclosure of the kinds of experts. Their disclosure should look very similar to your disclosure.

1:03:53PM MR. BRUCK: Okay.

1:03:55PM THE COURT: Fourth. Video recording. Mr. Richardson, could you explain to me what the Government wants to use the video recording for? Because we obviously originally had intended it as a way to validate the examination.

1:04:10PM MR. RICHARDSON: That's correct, Your Honor, it's to validate examination, but it's also so that our examining expert need not be trying to furiously take notes at the same time he's trying to have the discussion.

1:04:24PM THE COURT: Let me stop you on that, first of all. Mr. Bruck, do you have any problem with the examining expert

to be able to go back over the videotape as he's preparing his evaluation and report?

1:04:34PM MR. BRUCK: Well, you know, our position was that the sole purpose of the videotape was to keep -- was to ensure that our client wouldn't be misquoted.

1:04:46PM THE COURT: That's okay, but there's also -- and you and I both know there's case law out there that allows this -- what's the problem with the expert himself going back over it, so that he doesn't have to sit and write down verbatim what's said?

1:05:02PM MR. BRUCK: Well, I mean, we've stated our position. I don't --

1:05:05PM THE COURT: Okay. I'm going to allow that.

1:05:06PM Now, how about there was this discussion about distributing it to other experts, and I understood the government counsel to say that it would withhold distribution to anyone until after the Rule 12.2(c)(2) requirements have been met.

1:05:28PM Is that right, Mr. Richardson?

1:05:30PM MR. RICHARDSON: That's certainly fine with the Government, Your Honor, we will limit it to the evaluating expert, until the defense makes its disclosure.

1:05:40PM THE COURT: And then once you disclose it to the defense experts, if those requirements are satisfied, you have no authority, you understand you have no authority to disclose

it to anyone else, correct?

1:05:54PM MR. RICHARDSON: Well, the only person -- that's why I was trying to make clear -- the only person we would ask to be able to disclose it to at that point would be our other experts.

1:06:03PM THE COURT: That's not a problem. Anybody else?

1:06:05PM MR. BRUCK: Well, if I may, Your Honor?

1:06:06PM THE COURT: Yes.

1:06:07PM MR. BRUCK: You know, I think at that point the -- we're -- the purpose of the videotape has sort of lost, you know, become unmoored from the original purpose. It now is going to be used to strengthen or consolidate or reinforce the opinions of experts who have never met the defendant, never laid eyes on him. It's hard to see how that --

1:06:39PM THE COURT: Mr. Bruck, speak a little louder; we're having trouble picking you up.

1:06:41PM MR. BRUCK: I'm sorry, excuse me. You know, the Court had identified two purposes for the videotape, one is as a protection for the defendant and the other is to make sure that the examining expert doesn't have to take notes and can have an accurate record for his own evaluation.

1:07:00PM THE COURT: Okay.

1:07:01PM MR. BRUCK: To then share the videotape with the other government examiners, seems to go beyond that, even though it's after the point when it then allows them to, in

effect, reinforce or, you know, sort of build upon and strengthen their own opinions after their work has been completed, for a reason that doesn't really -- that goes beyond any of the original reasons for the videotaping. And really turns it from, you know, a tool of convenience and a protection for the defendant, into more of an aggressive or an adversarial tool for the Government. And it, you know, that's the whole problem with this balance that has to be struck.

1:07:51PM THE COURT: Let me hear from Mr. Richardson. Why do your other experts need to see it, to -- presumably they're going to get your examining expert's report; what other reason do they need it?

1:08:03PM MR. RICHARDSON: Your Honor, I think in order -- I mean, it's a little hard to know, right, because we don't know what these opinions are going to be. But the concern I've got is that we've got experts who are going to be potentially offering opinions, and they should be able to see the results and reports, both from the defense, but also the results and reports, which includes the video from the Government, in ensuring that their opinions take into account all the necessary information.

1:08:32PM THE COURT: Let's do this. I'm not going to -- I'm going to -- if you have a specific reason to show it to one of your experts, if your examining expert's report for some reason is a problem, has a problem, they need to see the

video, you can move before me, and I will consider it under the facts that exist and the particular expert and the reason justification. But I'm not going to allow it at this point, but I'm going to hold it in abeyance pending a need for it. Okay?

1:09:01PM MR. RICHARDSON: And so I'm sure the Court's going to write all this out.

1:09:05PM THE COURT: Yes.

1:09:06PM MR. RICHARDSON: Just so I'm clear, the video is not to be provided, absent court order, to any expert outside the examining expert.

1:09:15PM THE COURT: Correct. But I'm not ruling that you're not allowed to do that, I'm going to leave it. I want to hear, you know, your expert will have been given the examining expert's report. And one thing I would want to know is, well, why do they need additional information. You know, we are starting to ship around this video, and for more purposes than we intended, and I just want to make sure there's adequate justification before we do that.

1:09:40PM MR. RICHARDSON: That's certainly fine by the Government, Your Honor.

1:09:42PM THE COURT: Okay. Mr. Bruck, does that relieve your concerns at this point?

1:09:46PM MR. BRUCK: Yes, it does.

1:09:47PM THE COURT: Folks, the idea of these -- of telling

the experts what tests to perform, I'm not willing to do that, Mr. Bruck. I've looked at this issue, I'm very familiar with these tests, and, you know, it's easy to envision how they are relevant to rebuttal. I am going to hold the Government to using only -- they only can have rebuttal evidence, okay, it's got to be rebuttal evidence. But I'm not going to second guess these experts and their expertise about what tests they need, but I'm not preventing you, at a later point, once you receive these reports, if you believe that there is something improper about that testimony, and you wish to challenge their expert opinion or the use of those reports, I will give you an opportunity to do that.

1:10:40PM MR. BRUCK: Very well.

1:10:40PM THE COURT: Okay?

1:10:41PM MR. BRUCK: Yes, sir.

1:10:42PM THE COURT: Now, I've gone through my list. Are there additional issues to address?

1:10:49PM MR. BRUCK: I think that has covered everything that we had. I think Sarah Gannett may have joined the call, and if so, and if I have missed something.

1:10:58PM THE COURT: It's always good to have your lawyer on the phone, Mr. Bruck.

1:11:02PM MR. BRUCK: Absolutely. You got that right.

1:11:04PM MS. GANNETT: I think that covers our -- as well.

1:11:12PM MR. BRUCK: That's my back-up.

1:11:13PM THE COURT: Anything else we need to address today?

1:11:16PM MR. RICHARDSON: Your Honor, I have one issue, if you don't mind taking this up. We've discussed this with defense counsel. And one of the plans that we are discussing here is running a criminal background check on the prospective jurors. We would, of course, provide that information as soon as it was run, to defense counsel, so that they would have the same information that we do. But we have some concern that if someone failed, inadvertently or intentionally, to disclose that information, that that might become a problem down the road. And so we wanted to at least advise the Court of that, and mainly just make sure that the Court doesn't have some objection to us doing that, that we did not anticipate.

1:12:06PM THE COURT: Mr. Bruck, what's your view of that?

1:12:09PM MR. BRUCK: I'm not entirely sure I understand the problem. Mr. Richardson tells us that they're going to run criminal background checks and provide us with the entire run, the entire result.

1:12:22PM THE COURT: Correct.

1:12:23PM MR. BRUCK: So both sides have the same information. What is -- Maybe I'm just dense, but what is the Government's concern? It does often happen that jurors fail to provide their criminal background.

1:12:35PM THE COURT: Yeah, I just can't imagine how having that information harms anybody.

1:12:39PM MR. BRUCK: Right.

1:12:40PM MR. RICHARDSON: I agree, I just -- I didn't want to go do it without making the Court aware, that's all.

1:12:46PM THE COURT: And I know -- I say this, it's obvious -- obviously the prospective jurors will not know you did it, because there's no disclosure of that, right?

1:12:55PM MR. RICHARDSON: That is correct. The only exception to that potentially being if the criminal history revealed a conviction that had not been disclosed, then we would potentially ask the Court to inquire of those facts in voir dire.

1:13:10PM THE COURT: How quickly are you able to do this?

1:13:13PM MR. RICHARDSON: Well, that's -- I don't know the answer to that question. We are attempting to start that process. I wanted to at least notify the Court that we were doing it. But I think it will probably take us a week or better to run, you know, this, you know, now I think after strikes, 600 jurors that are left.

1:13:35PM THE COURT: Well, let me suggest this. Start with Juror No. 1, because we're never going to get to Juror 785, okay?

1:13:45PM MR. RICHARDSON: That was our plan, Your Honor.

1:13:46PM THE COURT: You hear what I'm saying? I thought you might. And as you get it, you know, start providing it to Mr. Bruck, so that, you know, the first week or so they could

go ahead and process that. Obviously someone who misrepresented their criminal history, we ought to all be a little skeptical about, you know, but I'm not going to make a final decision based -- we have to determine what exactly it was and the circumstances of it.

1:14:13PM MR. RICHARDSON: That is exactly our plan. We will -- I may not start this afternoon, just given Government employees' schedules, but we will certainly get them started first thing Monday morning.

1:14:48PM THE COURT: Okay. Folks, I'm fine with that. Mr. Bruck, anything you need to raise?

1:14:52PM MR. BRUCK: Yes, sir, just one additional issue that has occurred to me since we've been on the phone. And that is that normally when the -- you know, we have not disclosed the names of our experts, and the Government apparently -- or not apparently -- the Government does not intend to disclose the names of their experts.

1:15:15PM THE COURT: Correct.

1:15:16PM MR. BRUCK: But then this is another one of those examples of why this is not actually a level -- it's supposed to be a level playing field. And the reason I say that is that the Government discloses its expert when he goes to the jail and introduces himself to the defendant, unless he is going to be wearing a black hood, normally.

1:15:37PM THE COURT: Don't give them any ideas, Mr. Bruck.

1:15:42PM MR. BRUCK: You know, he'll introduce himself, and our client will know who he has been talking to, and he can tell us the first time we confer with him.

1:15:52PM So we're going to get the name of the -- I guess I'd call him or her the primary evaluator.

1:15:59PM THE COURT: Let's just say the examining expert.

1:16:01PM MR. BRUCK: The examining expert. The wrinkle is that we now have or about to be provided further notice of remote experts. And that, it seems to me, changes what the rule clearly contemplated, which is that the defendant is going to meet whoever is evaluating him, and will know, not in advance, but at the start of each session of the evaluation, who the Government's experts are. By having every -- all but one expert do their work remotely, without ever coming face to face with the defendant, that structure is altered in a way that could not have been foreseen by the drafters of the rule.

1:16:50PM And keeping in mind, as we always have to, throughout all of this, that the Government is intruding on the defendant's Fifth Amendment privilege not, in effect, to be deposed prior to trial, which is exactly what this is.

1:17:06PM So the idea that, well, we didn't provide the names of our experts, and, therefore, it's perfectly fair that the Government should gain this added advantage, doesn't really compute. These are not parallel situations.

1:17:20PM And so I think to really -- to follow the way that Rule

12.2 was expected to work, and has worked in every other case, because this is an unusual approach the Government is taking, unprecedented but unusual, I think it's only fair that when the Government provides notice of the experts who are going to evaluate our client from afar, that we be told who they are.

1:17:46PM THE COURT: Mr. Richardson, your response?

1:17:49PM MR. RICHARDSON: Your Honor, we oppose doing that. We think that the playing field here is that they provided a list of experts. It is true that they will learn by necessity the identity of our examining expert when that examination occurs. But we do not think that the letter of Rule 12.2, which is what the defendant has demanded, requires or indeed needs the Government to make unilateral disclosure of its experts.

1:18:18PM THE COURT: I agree. Okay. Any other issues?

1:18:24PM MR. GANNETT: Your Honor, this is Sarah Gannett, and I think I am going to act a little bit too much like a lawyer for a moment. But just in case this is unclear, and for the -- at least for the record, I wanted to clarify one thing about the videotape and the use of the videotape. And that is that the video itself is not a result of the examination in the sense that a report or test results would be. The videotape is preserving the examination for the purposes that Your Honor and Mr. Bruck were discussing. And my one concern about the discussion that we've been having about the

videotape is that it all points up what a slippery slope this is. Once we have a videotape, and once the Government examiner gets to use it and review it in preparing the report, and once we set aside for another day whether other experts will get to use it, then there can be a lot of thought and a lot of study put into justifying how it becomes evidence in the case, as opposed to a tool to preserve what happened in the examination for the defendant's benefit, especially if their expert gets to study it in preparing his report, and gets to think about, you know, what are the ways that we can use to justify further disclosures of it to other experts. And I just want to point up that problem at this point before we get too far down the road to considering what the many potential reasons that could be conceived might be.

1:20:16PM THE COURT: Well, thank you, Miss Gannett. You know, what I'm trying to do is just postpone having to deal with that issue, to first determine whether we need to, that is, whether anyone has any need to do it. I'm very mindful that the purpose of the 12.2 examination is rebuttal, it's not to generate evidence to independently -- some independent evidence against the defendant. It is rebuttal evidence.

1:20:44PM But I'm going to postpone to a later point any discussion when there's shown to be some need to provide it. It may well be we don't need to address these issues. Because no one will have a need for it. And what I found in this job is, I don't

need to be answering questions I don't need to answer. There are a enough of the ones I do need to answer, that I don't go looking for ones that may one day not really require an answer.

1:21:11PM So I appreciate what you're saying. We'll wait until a later date to address this issue.

1:21:16PM MS. GANNETT: Thank you, Your Honor.

1:21:17PM THE COURT: Anything further?

1:21:19PM MR. BRUCK: One very quick final point. The reply that I've filed all of about two hours ago --

1:21:27PM THE COURT: Yeah.

1:21:28PM MR. BRUCK: May have inartfully made it appear that we were only pressing the two issues that were raised in that reply. I just would like to make it clear for the record that we stood on all of the positions we took in our -- stand on all of the objections that we made in our initial pleading No. 480.

1:21:47PM THE COURT: In fact, I addressed issues you didn't raise in this thing in your reply, because I understood that. Okay?

1:21:54PM MR. BRUCK: Thank you.

1:21:55PM THE COURT: Thank you. Good afternoon. Everyone have a good weekend.

1:21:58PM

1:21:58PM (Court adjourned at 1:21 p.m.)

REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.

S/Debra L. Potocki

Debra L. Potocki, RMR, RDR, CRR