IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:15-CR-00472-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| DYLANN STORM ROOF | ) | |
| | ) | **UNDER SEAL** |

**NOTICE OF GOVERNMENT'S PROPOSED VOIR DIRE QUESTIONS**

First, attached as Exhibit 1 are the Government's proposed voir dire questions for the first twenty jurors, all of which are scheduled to be at Court on November 7.[1] Second, attached as Exhibit 2 is the Government's proposed introduction to the jury.

Third, please find attached two partially-redacted voir dire transcripts from the Boston Bombing trial as Exhibit 3. The Government provides this information as a potential source of information to guide as to how Judge O'Toole handled the introductory charge and questioning.

Finally, the Government provides the information below to supplement the Government's pervious briefing on the appropriate scope and manner of voir dire questioning, *see* DEs 209, 210 & 211 (addressing judge-led questioning); DE 432 (addressing death-penalty screening). *See also* DE 255 (adopting court-led voir dire

---

[1] We understand that the Court intends to not sit on November 8 (Election Day) or November 11 (Veterans Day); as a result, the Government is submitting November 7 panel questions today (November 2) and will submit questions for November 9-10 panels on November 3 per the Court's previous Order. The Government then requests that the November 14 panel questions be submitted on November 9 to permit adjustment based on the Court's questioning on November 7 and 9.

1

because, inter alia, "advocates may have multiple agendas in voir dire" and "may also intentionally ask jurors leading questions for the purpose of affecting their responses") (citing DE 210 & 211).

## I.     Capital Voir Dire

Voir dire must be adequate to assure a jury whose members are able impartially to follow the Court's instructions and evaluate the evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). The Court may excuse a prospective juror for cause because his or her death penalty views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *Morgan v. Illinois*, 504 U.S. 719, 728 (1992). This standard applies equally to venire members who strongly favor and strongly oppose capital punishment. *Morgan*, 504 U.S. at 734 n.7. The rule reflects the defendant's right to an impartial jury and the government's legitimate interest in administering constitutional capital sentencing procedures. *Witt*, 469 U.S. at 418 & 423.

A juror's views would "prevent" impartial performance if he or she would "automatically" or "always" vote for or against the death penalty, regardless of the facts and the law. *Witt*, 469 U.S. at 422; *Morgan*, 504 U.S. at 733. A juror's views "substantially impair" impartial performance if they interfere with, or create an obstacle to, objective consideration of the law and the facts. *See Witt*, 469 U.S. at 433-34.[2] The

---

[2] It is also appropriate to excuse prospective jurors whose answers to key voir dire questions are equivocal, uncertain, ambiguous, contradictory, or conflicting regarding their ability to impose the death penalty. In *Uttecht v. Brown*, 551 U.S. 1 (2007), for example, the Supreme Court held it was proper to excuse a potential juror who "demonstrated no general

2

Court should not excuse prospective jurors "simply because they expressed general objections to the death penalty or voiced conscientious or religious scruples against its infliction." *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968). Likewise, a venire member is not partial merely because he or she states support, or even a preference, for capital punishment, *so long as the prospective juror can distinguish between his personal views and what the law requires*. See *Miniel v. Cockrell*, 339 F.3d 331, 339-40 (5th Cir. 2003).

"The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, *notwithstanding his views on capital punishment*." *Dutton v. Brown,* 788 F.2d 669, 675 (10th Cir. 1986) (emphasis added). Jurors are properly excused when they would make the decision based solely on their own values and not follow the law. See *United States v. Brown*, 441 F.3d 1330, 1357 (11th Cir. 2006). This is so because "[a]ny juror who states that he or she will automatically vote for the death penalty *without regard to the mitigating evidence* is announcing an intention not to follow the instructions to consider the mitigating evidence and to decide if it is sufficient to preclude imposition of the death penalty." *Morgan*, at 738 (emphasis added).

---

opposition to the death penalty or scruples against its infliction," said he "believe [d] in the death penalty in severe situations," and stated six separate times "that he could consider the death penalty or follow the law," merely because "these responses were interspersed with more equivocal statements" that betrayed "confus[ion] about the conditions under which the death penalty could be imposed." *Id.* at 1415, 17. The Court reasoned that the juror's "assurances that he would consider imposing the death penalty and follow the law do not overcome the reasonable inferences from his other statements." *Id.* at 18. *See also Tipton*, 90 F.3d at 880-81 (affirming excusal of jurors who expressed strong opposition to the death penalty and gave equivocal, ambiguous and contradictory voir dire responses).

In *United States v. Battle*, 979 F. Supp. 1442 (N.D. Ga. 1997), all jurors who stated they "strongly favor" the death penalty on the questionnaire were asked follow-up questions during voir dire by the court because:

> The court rejects the argument that a juror who "strongly favors" the death penalty is *per se* disqualified from jury service where he states that he could make a fair, individualized decision based on the evidence, including aggravating or mitigating circumstances, in accordance with the court's instructions on the law. Such a juror, by definition, is not "substantially impaired" because "substantial impairment" does not refer to mere ideological commitment, but rather refers to the juror's inability to be a fair and impartial trier of fact, consistent with the law.

*Id*. at 1459.

In *United States v. Fulks,* 454 F.3d 410 (4th Cir. 2006), the Court used a brief jury questionnaire that asked one very broad question concerning prospective juror's views concerning the death penalty. Nevertheless, when counsel was permitted to individually voir dire the prospective jurors, some initially expressed death penalty views that, without context and follow up, might indicate that they were excludable for cause. The trial court allowed or permitted further inquiry that placed their initial statements in proper context and the decision to seat those jurors was upheld by the Fourth Circuit. Specifically, in *Fulks,* the Court upheld a trial court's qualification of two jurors who indicated, at least preliminarily, that they would always or automatically impose the death penalty. Prospective juror Goehring said "he would automatically impose the death penalty on a defendant who had committed a knowing and intentional murder." *Id.*, at 428. Goehring went on to say that although circumstances presented about the defendant's life and background, unrelated to the offense, were relevant to his punishment decision, he would

vote for the death penalty 90 percent of the time in the case of intentional murder. *Id*. Prospective juror Harvey initially said that she "would impose the death penalty for any knowing and intentional killing." *Id.*, at 429. Nevertheless, the Court qualified those jurors, and that ruling was upheld by the Fourth Circuit. In support of qualifying juror Goehring, the Court stated:

> As we have recognized, *Morgan* only requires the exclusion of jurors who would categorically reject any mitigating evidence offered by the defendant. *See Tipton*, 90 F.3d at 878; see also *Yeatts v. Angelone*, 166 F.3d 255, 265 (4th Cir. 1999) (observing that only those jurors who would fail to consider mitigating evidence must be removed for cause). Although Goehring initially advised defense counsel that he would automatically impose the death penalty on any defendant who committed a knowing and intentional murder, he also repeatedly asserted that he would consider mitigating evidence.

Id. at 428.

In *United States v. Basciano*, 2011 U.S. Dist. LEXIS 25227 (E.D. N.Y. 2011), the District Court considered whether to strike a prospective juror who identified herself as a 10 out of ten in favor of the death penalty and would vote for death if the defendant was convicted of an intentional murder. The court denied the strike for cause, holding:

> Juror 64 wrote in the questionnaire that she "strongly agree[s] with [the] death penalty" (question # 85(a)), and she identifies herself as a ten on a scale of one to ten—strongly favoring the death penalty (question # 85(a)). However, her statement that she favors the death penalty does not, in itself, indicate the circumstances in which she would vote to implement the death penalty nor does it show whether the juror could follow the court's instructions with regard to the death penalty. At the beginning of Juror 64's questioning, she indicated that she would impose the death penalty as long as a defendant was convicted of intentional murder, saying "[a]s long as we have proof, enough evidence, and if that's the case, I'll go for it." (Mar. 7, 2011 Tr. at 449.) Juror 64 answered the court's question "would you always vote for the death penalty in a case where someone has been murdered" by saying "yes, strongly. . . . No exceptions." (*Id.* at 452.)   Shortly after

5

>making this statement, however, Juror 64 testified that her position was not absolute, stating a willingness to consider mitigating factors such as whether "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." (*See Id.* at 450–51.)

*United States v. Basciano*, 2011 U.S. Dist. LEXIS 25227, at *7.

In *United States v. Wilson*, 2013 U.S. Dist. LEXIS 65809 (E.D. N.Y. 2013), the District Court considered whether a prospective juror who suggested that he would automatically impose the death penalty could be qualified to sit as a juror. That juror responded to the question whether he "believe[s] that anyone who is convicted of intentional murder of a police officer should automatically get the death penalty, or always get the death penalty," by stating "I think if they did it knowing that it was a police officer and had that knowledge that they should be aware that they would be facing that kind of punishment, very possibly that." The prospective juror maintained further that "I would be very prone to [imposing the death penalty if Wilson knew his victims were police officers] unless there were really extenuating circumstances." Nevertheless, the court denied the strike for cause, holding:

>The court is convinced that Juror #592 would not exclude such evidence from his consideration or automatically impose the death penalty in any given circumstance. Thus, given Juror #592's questionnaire and his responses at voir dire (including the demeanor with which he gave them), the court is left with the firm impression that this prospective juror could meaningfully consider all forms of mitigation evidence and impose a life sentence.

Id. at *10.

In *United States v. Wilson*, 2013 U.S. Dist. LEXIS 62003 (E.D. N.Y. 2013), the District Court also considered whether a prospective juror who responded that she

6

believed that there was a presumption in favor of the death penalty for individuals who commit intentional murder could nevertheless be qualified to sit as a juror. The court denied the strike for cause, holding:

> Ultimately, given the entire record concerning Juror #358, the court is confident that her comments regarding a presumption and her inability to conjure up examples of when she might impose a life sentence for intentional murder do not overcome the substantial evidence demonstrating that she can: (1) consider both possible sentences; (2) meaningfully evaluate mitigation evidence; and (3) dutifully follow the court's instructions. Juror #358 is therefore not substantially impaired, and Wilson's motion is denied.

Id. at *17.

Accordingly, when case specific, or stake-out, questions are permitted in either the jury questionnaire or in oral voir dire, the Court should ask follow up questions to ensure the juror understands the sentencing process, such that his answers are provided in a proper context. Thus, for example, a question asking whether a juror would always impose a death sentence where the multiple murders aggravating factor is proven (*see*, *e.g.*, defendant's requested voir dire questions A.5, E.8-9, G.1-2) is asking only half the relevant inquiry. As the cases cited above demonstrate, to justify removal for cause, a juror must also be asked if he can set aside any opinion he has on the appropriate punishment and follow the law to consider mitigation before making a sentencing decision.

                                                          Respectfully submitted,

                                                          BETH DRAKE
                                                          ACTING UNITED STATES ATTORNEY

s/ Julius N. Richardson
Julius N. Richardson
Nathan Williams
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3000

Stephen J. Curran
Special Litigation Counsel
Mary J. Hahn
Trial Attorney
Civil Rights Division
U.S. Department of Justice

Richard E. Burns
Deputy Chief
Capital Case Section
U.S. Department of Justice
