**GOVERNMENT'S PROPOSED PRELIMINARY STATEMENT BY THE COURT**

Welcome back to the United States District Court for the District of South Carolina. Thank you for being here. We're continuing the process of selecting a jury for the case of the *United States vs. Dylann Storm Roof*. As I previously told you, Mr. Roof is charged in connection with the shooting at Emanuel AME Church in Charleston on June 17, 2015. Some, but not all, of the crimes charged are, by statute, potentially punishable by death.

Once selected, the jury will first consider and decide whether the government has proved Mr. Roof's guilt of any or all of the charges against him. Under the law, he must be presumed innocent of those charges. If he is convicted of any of the capital crimes, that is, crimes potentially punishable by death, the jury will then consider and decide whether he will be sentenced to death for any such crime or to life in prison without possibility of release.[1]

Because the jury that is selected first to decide the question of guilt or innocence will also decide the punishment if the defendant is convicted, it is necessary to question you then in this process about your feelings and beliefs about the death penalty as part of the process.

So let me explain briefly the procedures that are followed in a case in which the death penalty is or may be an issue. As in any criminal trial, initially the government will

---

[1] Prior to any such instruction, the Government requests that the defense put on the record that this limitation – *i.e.*, not including a consideration for the jury of a term of years – is at the request of the defense and waives any challenge to not including the third sentencing option for the jury. This limitation to two sentencing options, of course, does not bind the judge should the jury not reach an agreement on a sentence.

have the burden of proving that Mr. Roof is, in fact, guilty of any of the crimes with which he is charged. If he is convicted of a crime for which the death penalty may be imposed, then we will proceed to the second phase of the trial, sometimes referred to in shorthand as the penalty phase.

In that phase, the government will seek to prove beyond a reasonable doubt, first, that Mr. Roof was at least 18 years old at the time he killed the victims. Second, that he acted with the required intent or sufficient intent to be subject to the death penalty; and, third, that aggravating factors about the killings or about the defendant justify sentencing him to death. Aggravating factors are circumstances that, if proven, make the crimes particularly serious or blameworthy and, therefore, under the law, may justify imposing a more severe sentence on this defendant compared to other persons convicted of intentional killing or murder. The government bears the burden of proving any alleged aggravating factors to every juror beyond a reasonable doubt.

The defense will also have the opportunity to present evidence of what it will argue are mitigating factors in the case. Mitigating factors are usually circumstances about the crime or about the defendant's background or character that would suggest the death penalty is not the appropriate sentence for the case or that life imprisonment is adequate to punish the defendant. Unlike the proof of aggravating factors, a mitigating factor need only be proven by the greater weight of the evidence. That is a less demanding standard of proof than proof beyond a reasonable doubt. Again, unlike the proof of aggravating factors, mitigating factors do not have to be proven to the satisfaction of all 12 jurors. Any juror who find or determines a mitigating factor to have

been proven by a greater weight of the evidence may consider that factor in deciding the appropriate sentence in the case regardless of whether any or all of the other jurors agree that the mitigating factor has been proven.

Before deciding the appropriate sentence, the jury must listen to, consider, and weigh all the information provided by both parties. In order to impose the death penalty, the jury would have to be persuaded that certain threshold factors that make the defendant potentially subject to the death penalty have been proven beyond a reasonable doubt. In addition, the jury would have to be persuaded that any proven aggravating factors sufficiently outweigh any mitigating factors found to justify a sentence of death. Even if the jury did not find any mitigating factors in the case, it would still have to be unanimously persuaded that any proven aggravating factors were themselves sufficient to justify a death sentence.

What I've just described is an overview of the law applicable to the jury's consideration of the death penalty. If you are selected to serve on the jury and if you find the defendant guilty of a crime or crimes punishable by death, I will give you very detailed instructions concerning your duties in deciding whether to impose the death penalty or life imprisonment, and the law that pertains to the making of that decision.

There are no right or wrong answers to any of the questions that you have been asked or that you will be asked today in furtherance of the process. We're asking them because both our system of justice requires a jury that does not have its mind firmly made up one way or another before hearing the evidence and a detailed explanation of the law. So today I'm going to question each of you individually about some issues that are

relevant to the process of selecting a jury. We're going to call you into the courtroom one by one to ask you some questions. You'll see there are other people here in addition, mostly the lawyers and their staff, but there will be perhaps others in the back. The proceedings are also being simultaneously transmitted by audio and video to overflow courtrooms. We will not identify you by name but rather by number. And you will be seated so that the video camera will be behind you, shooting over your head basically. Your answers will generally be public, but if you believe a truthful answer would require you to reveal some sensitive personal information, we will temporarily stop the audio transmission to those courtrooms so that people observing there will not hear your answer.

When you are taken to the assembly room, you will be provided with a list of potential witnesses in this case. Please review that list while you wait as I will inquire as to whether you know any of the individuals listed as part of your questioning.

I want to remind you about some of my prior instructions. As I told you before, a jury's verdict must be based on the evidence produced at trial and must be free of outside influence. Therefore, I remind you again that it is extremely important that you do not discuss the case, including this selection process, with your family, friends, other potential jurors, or any other person, until you have been excused or, if selected as a juror, until the case has been concluded. Again, you must refrain from any online research or otherwise reading, watching or listening to any reports about the case that may appear in the media.

When you signed your questionnaires, you signed under the penalties of perjury. It's a solemn occasion. And we now will ask each of you to take an oath to tell the truth when you answer my questions. And so we will ask the clerk -- the clerk will ask you to rise and administer that oath to you. (*Venire sworn*.)