IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal No.: 2:15-472-RMG |
| vs. | ) | |
| | ) | |
| Dylann Storm Roof, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion challenging the constitutionality of the death penalty and various aspects of the Federal Death Penalty Act (FDPA). (Dkt. No. 291). The Government filed a memorandum in opposition and the Defendant filed a reply. (Dkt. Nos. 320, 368). The Defendant acknowledged that many of his arguments are "foreclosed by Supreme Court or Fourth Circuit precedent" and are made to preserve the issue "for further review by those courts in light of developing law." (Dkt. No. 291 at 1). In light of well-settled law in this area, Defendant's motion is denied.

### I.     The Constitutionality of the Death Penalty

Since the Supreme Court's landmark decision in *Gregg v. Georgia*, 428 U.S. 153, 181-87 (1976), it has been settled law that the death penalty is not prohibited by the United States Constitution. Defendant focuses much of his argument on the Justice Breyer's dissent in *Glossip v. Gross*, 135 S.Ct. 2726, 2755-80 (2015), in which he, joined by Justice Ginsburg, urges the Supreme Court to consider full briefing of "whether the death penalty violates the Constitution." Justice Breyer goes on to argue that the death penalty "likely constitutes a legally prohibited cruel and unusual punishment" in violation of the Eighth Amendment of the United States Constitution. *Id.* at 2756. As Defendant recognizes, the Court's majority affirmed once again

1

that "it is settled that the death penalty is constitutional." *Id.* at 2732. In light of this controlling precedent, this Court denies Defendant's motion on Eighth Amendment grounds.

## II.    The Constitutionality of the FDPA

Defendant argues that the FDPA is unconstitutional because it "fails to provide a structure that permits a reasoned choice between a sentence of life without the possibility of release and execution." (Dkt. No. 291 at 6). Controlling legal precedent establishes that this argument is without merit.

Before a jury can impose a death penalty under the FDPA, it must first determine that a defendant is eligible for the death penalty by finding a gateway intent factor and a statutory aggravating factor. 18 U.S.C. §§ 3591(a)(2), 3592(c). Only then may the jury consider and weigh individualized aggravating and mitigating factors. *See id.* § 3592(a) (providing for broad admissibility of mitigating factors); *id.* § 3593(c) allowing for relaxed rules of evidence at the sentencing hearing).

The crux of Defendant's argument is that no set of instructions are sufficient to ensure that a jury properly follows these procedures. (*See* Dkt. No. 291 at 8–12). However, this argument is unpersuasive because there is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). In the death penalty context, the Supreme Court has held that jury instructions are constitutional where they "are phrased in conventional and understandable terms," *Tuilaepa v. California*, 512 U.S. 967, 976 (1994), and do not have a "reasonable likelihood" of misleading the jury to sentence a defendant to death, *see Boyde v. California,* 494 U.S. 370, 386 (1990).[1] Accordingly, this Court joins the

---

[1] Although the Court has reviewed the voluminous social science and legal academic literature Defendant submitted relating to juror's purported inability to follow a court's instructions and other aspects of the death penalty, the Court declines to apply such literature to its analysis in the face of controlling Supreme Court precedent and in the absence of a clear directive from the

courts that have previously rejected similar claims regarding the FDPA's unconstitutionality.[2] This ruling does not prevent Defendant from challenging the specific language of the Court's jury charge in the penalty phase of the case should the jury render a verdict in the guilt phase.

### III.     The Constitutionality of the Requirement that Jurors Be "Death Qualified"

Defendant argues that that the process of selecting the pool of eligible jurors for capital cases, which is known as "death qualification," is unconstitutional because it excludes those individuals who adamantly oppose the death penalty. (Dkt. No. 291 at 13). In *Wainwright v. Witt*, the Supreme Court held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. 412, 424 (1985) (quoting *Adams v.*

---

Supreme Court to do so. Similarly, the Court acknowledges Defendant's challenges to well-settled Fourth Circuit precedent, but declines to do more than summarily reject such challenges.
[2] *See, e.g., United States v. Sanders*, Cr. 10-351, 2014 WL 3122418 at *6–*7 (W.D. La. July 3, 2014) (rejecting "claim that the FDPA is unconstitutional because of an incomprehensible sentencing scheme"); *United States v. Coonce*, Case No. 10-cr-3029, 2014 WL 1018081, *22(W.D.M.O. Mar. 14, 2014) ("The Court . . . joins with other district courts in concluding that the submissions fall short of the mark in establishing that the FDPA is unconstitutional."); *United States v. Sablan*, Case No. 08-cr-259, 2014 WL 172543, *4 (E.D. Cal. Jan. 15, 2014) ("This Court agrees with the other courts that have addressed and rejected the position taken by Defendant . . . on whether the FDPA is incomprehensible."). *See also United States v. Williams*, Case No. 08-cr-00070, 2013 WL 1335599, *17-*18 (M.D. Pa. Mar. 29, 2013) *United States v. Jacques*, 2011 WL 1674517, *11-*13 (D. Vt. May 4, 2011); *United States v. Taylor*, 635 F. Supp.2d 1243, 1247 (D.N.M. 2009); *United States v. Green*, Case No. 06-cr-19, 2008 WL 400901, *2 (W.D. Ky. Aug. 26, 2008) (holding empirical studies, including the Capital Jury Project, "provide[] no basis for undermining the constitutionality of the FDPA, a statute that has withstood innumerable attacks since its passage in 1994"); *United States v. Mikos*, Case No. 02-cr-137, 2003 WL 22110948, *17-*19 (N.D. Ill. Sept. 11, 2003) ("There is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel."); *United States v. Regan*, 228 F. Supp. 2d 742, 746 (E.D. Va. 2002) (holding same); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 450 (E.D. Pa. 2001) (holding studies cited "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic incomprehensibility as to render them incapable of clarification through adequate jury instructions").

3

*Texas*, 448 U.S. 38, 45 (1980)). The Supreme Court later held "that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Morgan v. Illinois*, 504 U.S. 719, 728 (1992). This is binding precedent this Court is commanded to follow.

Defendant additionally argues that the FDPA and the First Amendment preclude the "death qualification" process. The Court finds that no provision of the FDPA precludes the "death qualification" process. Further, the Court finds the Defendant's argument that a prospective juror's First Amendment right to freely practice his or her religion is impaired by the "death qualification" process to similarly without merit. The "death qualification" process eliminates from the prospective jury pool only those persons who state that they are unable to render a verdict based on the evidence presented during trial and the Court's instructions on the law. It does not require the Court or the parties to look to the sources of an excluded juror's beliefs. *Cf. United States v. DeJesus*, 347 F.3d 500, 510 (3d Cir. 2003) (noting that a peremptory strike based on religious belief would be constitutional if the religious belief might interfere with a juror's ability to follow the law). For the abovementioned reasons, the Court denies Defendant's motion to strike the "death-qualification" process as unconstitutional.

### IV.     Whether the Use of the Hate Crimes Prevention Act as a Predicate Crime of Crime of Violence Violates the Separation of Powers

Defendant argues that using the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, 18 U.S.C. § 249, as a predicate crime of violence for violations of 18 U.S.C. § 924(j)—which includes capital punishment as a possible penalty—violates the separation of powers because Congress made life in prison the maximum penalty for § 249 violations. As a preliminary matter, it is important to note that the Government is not seeking the death penalty against the Defendant on the basis of § 249 hate crimes charges. Instead, the Government seeks

4

the death penalty for charges relating to the use of a firearm to commit murder during and in relation to a crime of violence. Counts 1–12 of the indictment cover the § 249 hate crime charges, and they are clearly not charged as death-eligible counts. (Dkt. No. 2). By contrast, Counts 25–33 cover § 924(j) charges for the use of a firearm to commit murder during and in relation to a crime of violence. (*Id.* at 9–10). These are death-eligible counts.

A plain-language reading of § 924(j) makes it clear that the purpose of the statute is to make other federal crimes involving violence or drug trafficking death-penalty eligible when the defendant uses a firearm to commit murder. Although some § 924(j) predicate crimes are capital offenses, *e.g.*, 18 U.S.C. § 247, others are not, *e.g.*, 18 U.S.C. § 1951(a). Accordingly, Defendant's argument that § 249 cannot be a predicate crime because it is not a capital offense is without merit.

### V. The Constitutionality of the Government's Proposed Nonstatutory Aggravating Factors

In its notice to seek the death penalty, the Government identified six nonstatutory aggravating factors, five of which appear below:

(1) Attempt to Incite Violence. In preparation for, in committing, and subsequent to the acts of violence, the Defendant attempted to incite violent action by others.

(2) Victim Impact. DYLANN STORM ROOF caused injury, harm, and loss to the individuals that he killed as well as to the family, friends, and co-workers of those individuals. The injury, harm, and loss caused by DYLANN STORM ROOF with respect to each victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family, friends, and co-workers.

(3) Endangering the Safety of Others. DYLANN STORM ROOF endangered the safety of one or more persons in addition to the victims of the murders charged in the Indictment in the commission of these offenses.

(4) Racially Motivated Killing. DYLANN STORM ROOF has expressed hatred and contempt toward African Americans, as well as other groups, and his

> animosity towards African Americans has played a role in the murders charged in the Indictment.
>
> (5) Selection of Victims. DYLANN STORM ROOF targeted men and women participating in Bible-study group at the Emanuel AME church in order to magnify the societal impact of the offenses charged in the Indictment.

(Dkt. No. 164 at 5-6). Defendant argues that these nonstatutory aggravating factors are unconstitutional. The Court addresses each argument in turn.

### A.     Separation of Powers

Defendant first argues that factors (3)–"Endangering the Safety of Others", (4)–"Racially Motivated Killing", and (5)–"Selection of Victims" violate the separation of powers because they are nonstatutory aggravating factors that simply restate the aspects of the offense charged in the indictment. (Dkt. No. 291 at 23). The crux of this argument is that because these factors restate the factors charged in the indictment, they are not "*additional* nonstatutory aggravators." *United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003) (emphasis added). Defendant urges the Court to interpret the Fourth Circuit's use of the word "additional" to mean "a factor unrelated to the Defendant's crime of conviction." This argument ignores the fact that the FDPA expressly permits juries to consider statutory aggravators as well as "any other aggravating factor for which notice has been given." 18 U.S.C. § 3592(c). In other words, the FDPA empowers jurors to consider nonstatutory aggravators that are appropriately noticed. Accordingly, the Court rejects Defendant's argument that allowing prosecutors to identify nonstatutory aggravating factors violates the separation of powers.

### B.     Eighth Amendment Issues

Defendant argues that factors (3)–"Endangering the Safety of Others", (4)–"Racially Motivated Killing", and (5)–"Selection of Victims" constitute an "'end-run' around the Eighth Amendment" because, by allegedly restating the offenses charged, they fail to distinguish the

6

Defendant from other offenders. (Dkt. No. 291 at 26). To the contrary, the challenged aggravating factors do distinguish Defendant from other murder defendants. The inclusion of the particular nonstatutory aggravating factors in this case ensures the "*individualized* determination" required by *Zant v. Stephens*, 462 U.S. 862, 878 (1983) Accordingly, the Court rejects Defendant's Eighth Amendment argument.

## C.     Whether the nonstatutory aggravating factors are impermissibly duplicative.

Defendant argues the Government's nonstatutory aggravating factors are impermissibly duplicative because they may rely on the same evidence.³ (Dkt. No. 291 at 28). The issue is not whether the facts relied upon are duplicative but whether aggravating factors themselves are duplicative. *See Jones v. United States*, 527 U.S. 373, 399 (1999) (holding that factors as a whole were not duplicative); *see also United States v. Fell*, 531 F.3d 197, 236 (2d Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence.").

Here, even if some of the the nonaggravating factors may be supported by the same evidence, none are duplicative. Like a five-circle Venn diagram, there may be areas of overlap between the five aggravating factors. However, no two factors are identical, which means it aggravating factor may play some role in the weighing process. This is permissible under the FDPA. 18 U.S.C. § 3592(c) (allowing consideration of "any other aggravating factor for which notice has been given."). Accordingly, the Court denies Defendant's motion as it relates to striking the Government's aggravating factors as duplicative.

---

³ The Court finds that Defendant's argument relying on 18 U.S.C. § 3593 is premature at this time because § 3593 is the functional equivalent of Rule 403 of the Federal Rules of Evidence. Section 3593 governs the information—that is, evidence—relating to the mitigating and aggravating factors, not the factors themselves.

7

## VI.  Whether *Hurst v. Florida* Requires Reconsideration of Fourth Circuit Precedent.

In *Hurst v. Florida*, the Supreme Court held that Florida's capital sentencing scheme was unconstitutional because it required a judge, not a jury, "to find each fact necessary to impose a sentence of death." 136 S. Ct. 616, 619 (2016). Defendant argues that *Hurst* requires the Court to take "a fresh look" at certain Fourth Circuit precedent. Specifically, Defendant requests that the Court revisit *United States v. Runyon*, 707 F.3d 475, 515–16 (4th Cir. 2013) (holding that the penalty-phase jury need not find that aggravating factors sufficiently outweighed mitigating factors beyond a reasonable doubt); as well as *United States v. Lighty*, 616 F.3d 321, 367–68 (4th Cir. 2010) (holding that the grand jury need not find nonstatutory aggravating factors) and *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) (same). Nothing in *Hurst* invites this Court to reconsider these precedential Fourth Circuit cases.

*Hurst* held that any aggravating factor that exposes a defendant to greater punishment than the punishment authorized by the jury's guilty verdict must be submitted to a jury. Here, any aggravating factors that expose Defendant to the death penalty will be established by a jury, thereby avoiding any *Hurst* issue.[4]

---

[4] Other courts considering the issue have reached the same conclusion. *Compare People v. Rangel*, 367 P.3d 649, 681 (Cal. 2016), *reh'g denied* (June 15, 2016) (holding that *Hurst* did not render unconstitutional California's capital sentencing scheme, which utilizes a jury in the fact-finding process) and *Ex parte State*, No. CR-15-0619, 2016 WL 3364689, at *6 (Ala. Crim. App. June 17, 2016) (holding that Alabama's capital sentencing scheme, which utilizes a fact-finding jury, remains constitutional under *Hurst*), *with Rauf v. State*, 2016 WL 4224252 (Del. Aug. 2, 2016) (relying on *Hurst* to hold unconstitutional Delaware's capital sentencing scheme, which—like Florida's—left the ultimate sentencing decision to a judge).

## Conclusion

For the abovementioned set forth above, the Court DENIES Defendant's motion in its entirety. (Dkt. No. 291).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Court Judge

November 3, 2016
Charleston, South Carolina

9