RECEIVED
USDC CLERK, CHARLESTON, SC
2016 NOV -7 PM 5: 21

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal No. 2:15-472-RMG |
| vs. ) | |
| ) | |
| Dylann Storm Roof, ) | **MEMORANDUM OPINION** |
| ) | |
| _____ ) | |

Today, November 7, 2016, at 9 A.M. in open court, the Court gave notice that it had received a motion earlier that morning that required an immediate hearing. The Court stated that it intended to hold the hearing at 11 A.M. today, that it intended to conduct the hearing outside the presence of Government counsel and closed to the public, and that if any interested person wished to object to the closing of the hearing she or he could do so at 10 A.M.

The Court heard objections at 10 A.M. today. Members of the media from The Post & Courier, WCSC, Thompson Reuters, and The State objected to the closure, as did a concerned citizen. All members of the media that spoke asked that a transcript for any portion of the hearing that does not involve attorney-client privilege be released as soon as possible. The individual from the The State also asked the Court to release the subject matter of the hearing, and the individual from Thompson Reuters also asked for a schedule for the release of a transcript. The individual from WCSC noted the short notice that media had to register objections.

At the 10 A.M. hearing, the Court ordered the 11 A.M. to be closed and conducted ex parte. This memorandum opinion memorializes the findings upon which the Court's decision

was based. As set forth below, the Court determined that closing the hearing was necessary to protect the attorney-client privilege and the constitutional rights of Defendant. The Court found that conducting this hearing in public would destroy the confidentiality of attorney-client communications and that there was a substantial probability that holding the hearing in public would prejudice Defendant's right to fair trial, right to a fair and impartial jury, and right to assistance of counsel.

## I. Legal Standard

Any consideration for the closing of a court proceeding begins with the strong presumption in favor of open proceedings, and this extends to pre-trial, trial and post-trial matters in a criminal case. *In re Washington Post*, 807 F.2d 383, 390-91(4th Cir. 1986). The right to open court proceedings, which is grounded in the First Amendment, is not absolute and must yield to a defendant's Sixth Amendment rights. *In re S.C. Press Ass'n*, 946 F. 2d 1037, 1041 (4th Cir. 1991). The closing of court proceedings should, however, be a rare event, and the Court's justification "must be a weighty one" in which there is "a compelling governmental interest [in the closure of the proceeding] and is narrowly tailored to serve that interest." *Globe Newspaper Co. v. Super. Ct. for Norfolk Cty.*, 457 U.S. 596, 606-07 (1982).

To support the closure of a court proceeding, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access. *Id.* Before criminal proceedings can be closed, the trial court must make "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13-14. These "higher values" include a

Defendant's right to the selection of a fair and impartial jury, Defendant's right to a fair trial, and Defendant's right to assistance of counsel, all protected by the Sixth Amendment.

## II. Discussion

The Defendant was indicted by a federal grand jury sitting in Charleston, South Carolina on July 20, 2015, charging him with 33 counts related to the deaths of 9 persons and alleged attempted murder of 3 others at Mother Emanuel African Methodist Episcopal Church in downtown Charleston. (Dkt. No. 1). Eighteen of these counts are potential capital offenses. (Dkt. No. 3). This matter has received extraordinary local, national and international coverage.



■■■ Defense counsel moved for an *ex parte* hearing ■■■ ■■■ ■■■ ■■■ ■■■ The Court necessarily had to delve into attorney-client communications during this proceeding ■■■ ■■■ ■■■

*Ex parte* hearings, conducted without the other party (or the public) present are appropriate where attorney-client communications will be discussed. *See, e.g., United States v. Felder*, 389 F. App'x 111, 116–17 (3d Cir. 2010) (*ex parte* hearing held to determine whether

counsel could proceed without committing an ethical violation); *United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009) (*ex parte* hearing held on motion to substitute counsel); *United States v. Fields*, 483 F.3d 313, 352 (5th Cir. 2007) (*ex parte* hearing held on motion to substitute counsel); *United States v. Harris*, No. 2:14CR76, 2014 WL 5740515, at *4 (E.D. Va. Aug. 15, 2014) (*ex parte* hearing to determine if crime-fraud exception to attorney-client privilege applied); *Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 467 (D. Ariz. 2001) *(ex parte* hearing to determine whether documents were subject to the attorney-client privilege). It was clear to this Court that much, if not all, of the 11 A.M. hearing would require the discussion of privileged attorney-client communications. The only way to protect that privilege was to close the hearing and conduct it *ex parte*. Therefore, the hearing was appropriately closed to protect the attorney-client privilege.

Furthermore, the Court has not determined the admissibility ▮▮▮▮▮ ▮▮▮▮▮ The Court found that, ▮▮▮▮▮ ▮▮▮▮▮ there is a substantial probability that the publicity ▮ ▮▮▮▮▮ would prejudice Defendant's right to a fair trial. The Court is in the midst of jury selection in this case. Prospective jurors have reported to the courthouse today and have been sent home. This is an unusually sensitive period in this proceeding where highly prejudicial pre-trial publicity could taint the jury pool and make selection of a fair and impartial jury increasingly challenging. Although the Court has instructed prospective jurors to avoid media coverage, as one journalist noted at today's 10 A.M. hearing, the country and the world are watching. Given the pervasive coverage of today's proceedings, a prospective juror may accidently overhear some information. ▮▮▮▮▮ should

not be part of that information. The Supreme Court "has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). The Court found a substantial probability that it would do so here.

The Court also found that there is a substantial probability that closure would prevent that prejudice. By closing the hearing, the Court was not only protecting the attorney-client privilege but preventing prejudice to the Defendant's Sixth Amendment rights by not exposing prospective jurors ■■■■■■■■■■■■■■■■■■■■■■■■■ prior to the Court's determination of admissibility ■■■■■■■■■■■■■

Finally, the Court found that no reasonable alternative to closure could adequately protect Defendant's Sixth Amendment rights. The Court is fully aware that voir dire is the "preferred safeguard" against the potential prejudice of pretrial publicity if that device can cure the prejudice emanating from the disclosure of what might be determined to be inadmissible evidence. *In re Charlotte Observer (Div. of Knight Pub. Co.)*, 882 F.2d 850, 855 (4th Cir. 1989). Certainly, in most cases, voir dire can screen out and cure the potential prejudice from pretrial publicity. But there are rare cases–and the Court finds this is one such case–in which the nature of the topic to be discussed is so prejudicial that voir dire cannot cure the problem. Voir dire cannot correct the problem of destroying the attorney-client privilege or undo the effect publically revealing privileged communications could have on Defendant's Sixth Amendment right to assistance of counsel. The Court also found voir dire will be ineffective to cure the prejudice ■■■■■■■■■ be revealed to jurors and ■■■■ later be determined to be inadmissible.

### III. Conclusion

For the reasons stated above, the Court found Defendant's Sixth Amendment rights to a fair trial, a fair and impartial jury, and assistance of counsel and the interest of preserving attorney-client privilege between a criminal defendant and his counsel outweighed the First Amended right of access to these proceedings.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

November 7, 2016
Charleston, South Carolina