IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENSE MEMORANDUM ON
LEGAL ISSUES RAISED BY COMPETENCY HEARING**

The Court has ordered the parties to provide briefing on three issues raised by the competency hearing and the prospect that the defense will contest the evaluator's opinion that the defendant is competent to stand trial:

(1) The standard for competency to stand trial under 18 U.S.C. § 4241;

(2) Whether the use by the Defendant of expert mental health testimony during the competency hearing affects the use of the court-appointed examiner's report by the Government at a subsequent criminal trial of the case; and

(3) Whether the use by the Defendant of expert mental health testimony during the competency hearing should cause the Court to reconsider its ruling closing the competency hearing.

Dkt. No. 627.  We discuss the standard for competency below, with an emphasis on the "assistance" prong.  It is our position that the defense use of expert mental health

1

testimony affects neither the use of the court-appointed examiner's report nor the reasons for sealing the hearing.

I. **To establish incompetency, the defense need only show by a preponderance of the evidence that, due to a mental disease or defect, the defendant is unable to understand the nature or consequences of the proceeding or to assist properly in his defense.**

The Court has already found, based on evidence adduced prior to and at an *ex parte* hearing on November 7, that there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The standard for determination of competency following a hearing is similar – it just applies a different standard of proof:

> If, after [a] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense the court shall commit the defendant to the custody of the Attorney General."

18 U.S.C. § 4241(d). *See also Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) ("The 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational as well as factual understanding of the proceedings against him.'").

The burden of establishing incompetence by a preponderance of the evidence is not a heavy one. *See Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241); *United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005) (same). A

2

preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring) (internal quotation marks and citation omitted). As we noted in a filing last week, *see* Dkt. No. 607, the Supreme Court has specifically prohibited courts from imposing any higher burden. *See Cooper*, 517 U.S. at 360-61. Here, the defense has already offered substantial evidence of incompetence to the Court's evaluator, in contrast to many other cases in which competence is raised. *Cf. Robinson*, 404 F.3d at 858 ("[W]e are left with the simple fact that Robinson failed to put forth any evidence to support a finding that he was incompetent.").

A trial court must consider and analyze all relevant information concerning the defendant's competency to stand trial. *See Drope v. Missouri,* 420 U.S. 162, 180 (1975). Specifically, the trial judge's inquiry should be guided by:

   (1) evidence of the defendant's irrational behavior;

   (2) the defendant's demeanor in the courtroom;

   (3) any prior medical opinion on competence; and,

   (4) counsel's representations of the client's competence.

*Id.* at 177 n.13, 180. "[E]ven one of these factors, standing alone may, in some circumstances, be sufficient." *See id.* at 180. "There are, of course, no fixed or immutable signs" of competency. *Id.* "[T]he question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.*

In evaluating competency, defense counsel's concerns are especially pertinent because counsel has "the best-informed view" of the defendant's competence. *See*

*Medina v. California*, 505 U.S. 437, 450 (1992). The Fourth Circuit has emphasized this in its decisions. *See, e.g., Shull v. South Carolina*, 885 F.2d 866, 1989 WL 106842, at *2 (4th Cir. 1989) (observing that counsel represented she "had no trouble communicating with [the defendant], and that [the defendant] was cooperative and understood the process"). *See also United States v. Basham*, 789 F.3d 358, 381 (4th Cir. 2015) (affirming finding of competence, but placing great weight on defense counsel's observations).

*Mental disease or defect.* The Court has expressed concern that Monday's competency hearing not devolve into a broad-ranging exploration of the defendant's mitigation case. We do not intend for that to happen. However, the statute and relevant precedent require us to establish that the defendant is incompetent due to (1) a "mental disease or defect" that affects his ability *either* (2) to understand the nature and consequences of the proceedings *or* (3) to assist in his defense. The defendant's social and medical history is an indispensable part of any reliable assessment of whether he currently suffers from any mental "disease or defect." Moreover, we understand the Court evaluator's position to be that what we see as part of defendant's delusional belief system is instead a set of cultural or political beliefs. Addressing this distinction will necessarily require some discussion of the defendant's social history.

*Ability to understand the nature and consequences of the proceedings.* *Basham* may be instructive regarding the defendant's ability to understand the nature and consequences of the proceeding. There, the defendant became angry because the Court would not permit him to chew tobacco during the proceedings. In protest, he engaged in

4

a number of disruptive acts in the courtroom. He was removed to a holding cell, and his lawyers requested a delay in the proceedings so that they could assess his competency. They observed that he "'[l]ooked like someone who didn't have the ability to control the simple function of sitting down in a seat.'" Following testimony, the court found him competent, and the Fourth Circuit affirmed. *See* 789 F.3d at 380-81. The Court held, essentially, that Basham was throwing a tantrum, not demonstrating incompetence. Basham wanted to use his tobacco, and he wasn't permitted to, so he did some things that were impulsive and self-destructive, but these were not evidence of incompetence, because they showed no evidence of a failure to understand the nature and consequences of the proceeding or an inability to assist counsel. Indeed, Basham indicated to the Marshals prior to disrupting the proceedings that he would be back to his holding cell soon – demonstrating he well understood what he was doing and its impact on the proceedings. *Id.* at 381 (citing cases). This is in contrast to the our situation, in which the defendant has stated his firm belief that even if his failure to present any mitigating evidence results in a death sentence, he will never be executed, because he will be rescued by fellow white nationalists after their takeover of the government.

   ***Ability to assist in the defense.*** We attach here two articles that address the role of the defendant in his relationship with defense counsel at trial. Exhibit 1 is an article by Michael Burt and John Philipsborn, which was cited in *United States v. Duhon*, 104 F. Supp. 2d 663, 669 n.21 (W.D. La. 2000), on the question of ability to assist counsel, and is entitled "Assessment of Client Competence, A Suggested Approach." Exhibit 2 is an article by David Freedman, entitled "When is a capitally charged defendant incompetent

5

to stand trial?"[1] All three authors have extensive experience in capital defense and are eminently qualified to address this subject. They agree: the two main components of ability to assist are: (1) whether the defendant can appropriately communicate with counsel in the actual setting of a trial; and (2) whether the defendant can appropriately manage his demeanor in the courtroom. S*ee also Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) (assessing same factors).

Although we cannot provide a comprehensive summary here, we note some of the issues the authors identify as important considerations. Significantly, a competent defendant is not simply a passive bystander who sits by while counsel conducts the preparation and courtroom work, and does only what he is told. A defendant must demonstrate the mental acuity to see, hear, and digest information and events, and to communicate in interactive dialogue with counsel about small and large decisions during the rapidly changing environment of trial.[2] This is referred to as "decisional competence," – the ability to rationally make decisions (based on real-world events) that protect one's interests, and to communicate those decisions to counsel or the court. *See* Exhibit 2 at 130.[3] Thus, for example, the defendant must be able to engage in:

---

[1] *See especially* Exhibit 1 at 19-23, 56-57; Exhibit 2 at 130-33.

[2] The rapidly changing environment of a capital trial cannot be overstated, as recent events have demonstrated. We attach as Exhibit 3 an opinion piece by the Honorable Michael A. Ponsor, describing the destabilizing effect of the continual scheduling disruptions and changing priorities in a capital trial on all participants (in a setting that is already emotionally fraught).

[3] *See also* American Bar Association, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (rev. ed. Feb. 2003), Guideline 10.5 (Relationship with the Client) (outlining tasks required of counsel in a capital case, including engaging in a continuing interactive dialogue with the client).

- Reviewing discovery materials[4]

- Weighing the significance of potential evidence

- Developing trial and sentencing themes

- Evaluating and agreeing on potential jurors

- Contributing to investigation and examination of witnesses

- Maintaining attention during meetings with counsel and experts and during court proceedings

- Showing appropriate interest and emotion in the courtroom.

These tasks are difficult or impossible when the defendant is out of touch with reality or suffering from other symptoms of mental illness or neurodevelopmental disorder like anxiety, rigidity, concrete thinking, delayed processing, paranoia or distrust, becoming easily overwhelmed, and being unable to understand social cues. For example, as Dr. Freedman notes, for people with anxiety disorders, which Dr. Ballenger concedes the defendant has, *see* Ballenger Report at 66,

> functional impairments may include: dissociation, a loss of a sense of future, difficulty developing trusting relationship (*e.g.*, with counsel), difficulty interpreting social cues, intrusive thoughts, difficulty comprehending the emotional content of language and situations, difficulty regulating affect, impaired attention and concentration, difficulty believing in or planning of the future, and the development of hypervigilant behaviors.

---

[4] We note that we continue to receive discovery regularly, having received three separate sets just since November 3, 2016, when we first learned of the defendant's intent to send a letter to prosecutors.

7

Exhibit 2 at 132. Although medication and/or courtroom accommodations may assist in overcoming concerns about the defendant's ability to assist counsel, the defendant has not yet been assessed for possible medication,[5] and trial should not proceed until any such proposals are implemented and evaluated to determine their efficacy.

II. **The defense use of expert mental health testimony during the competency hearing does not affect the use of the court-appointed examiner's report by the government at a subsequent criminal trial of the case.**

The Due Process Clause prohibits the Court from trying and convicting an incompetent defendant. *See Cooper*, 517 U.S. at 354; *Drope*, 420 U.S. at 171-72; *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). As we have noted in prior pleadings, our assertion of the defendant's due process right here – including the decision to introduce evidence in support of a claim that he is incompetent – does not require him to waive other rights, such as his Fifth Amendment right against self-incrimination, his Sixth Amendment right to counsel, or his Eighth Amendment right to a reliable sentencing determination. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another."). Thus, our introduction of evidence at the competency proceeding has no bearing on the government's ability to use the court-appointed evaluator's report at future stages of the litigation. To find otherwise would require a defendant to have to choose between asserting equally important constitutional rights. *See United States v. Nguyen*, 962 F. Supp. 1221, 1223 (N.D. Cal. 1997) (holding that statements made by defendant during

---

[5] Dr. Ballenger's report mentions the possibility of medication, *see* Ballenger report at 41, but it does not address medication in its conclusions.

8

competency hearing could not be used against him at trial, because "[i]f Nguyen's statements were not protected, he would be forced to choose between sacrificing his constitutional right not to incriminate himself and sacrificing his constitutional right not to stand trial if incompetent"). It would also reflect upon the integrity of these proceedings – the Court would face the unseemly prospect of presiding over a capital trial that required the defendant to waive one set or another of his most basic and vital rights.[6]

Perhaps for this reason, we are unaware of a case in which a competency evaluation of the defendant has been presented as evidence against him in the penalty phase of his capital trial, unless the defendant himself presented some evidence from the same evaluator or proceeding first. *Cf. Buchanan v. Kentucky*, 483 U.S. 402 (1987). In *Buchanan*, the Court explained that permitting the court-appointed evaluator to testify for the government would turn an otherwise neutral witness into a prosecution team member:

> Given the character of the psychiatrist's testimony, moreover, we were unable to consider his evaluation to be "a routine competency examination restricted to ensuring that respondent understood the charges against him and was capable of assisting in his defense." [*Estelle v. Smith*, 451 U.S. 454 (1981)], at 465. We concluded: "When [at trial the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a

---

[6] We also maintain here our attorney-client and 12.2 objections, discussed in Dkt. No. 584. *See also* American Bar Ass'n, Criminal Justice Standards on Mental Health (2016 rev. ed.) Guideline 7-4-3(f) ("In making any motion for evaluation, or, in the absence of a motion, in making known to the court information raising a good faith doubt of defendant's competence, the defense counsel should not divulge confidential communications or communications protected by the attorney-client privilege."), *available at* http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/mental_health_standards_2016.authcheckdam.pdf. We further maintain that the Court should have adopted the protective measures requested in Dkt. No. 584, including requiring appointment of firewall counsel, staged disclosure, and entry of a protective order.

9

> postarrest custodial setting." *Id.*, at 467. In such a situation, we found a Fifth Amendment violation because of the failure to administer to *Smith*, before the examination, the warning required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

483 U.S. at 421-22. The Court permitted this in *Buchanan*, however, in the unusual circumstance in which the defense had first introduced at trial evidence from the same evaluator. *See id.* at 423.

The government may argue that because the defense raised the competency question here, the defendant should not receive the same protection afforded in *Smith*, where the competency evaluation was ordered without the defendant's knowledge. That argument misses the point that a competency evaluation involves compelled statements, regardless whether the court, the defense, or the prosecution initiates it. *Cf. United States v. Byers*, 740 F.2d 1104, 1113 (D.C. Cir. 1984) (Scalia, J.) ("it is doubtful whether" submission to government 12.2 exam "could meet the high standard required for a voluntary, free and unconstrained relinquishment of the Fifth Amendment privilege," due to legal consequences of refusal).[7] That is particularly true here, where the defendant has resisted the competency proceedings, and the defense has been forced to proceed over his objection. *Cf.* American Bar Ass'n, Criminal Justice Standards on Mental Health

---

[7] Moreover, this evaluation is only defense-initiated in the sense that we have been compelled to raise it to protect the defendant's rights. *See Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003) ("As one of our sister circuits has recognized in a different context, one may be 'a "voluntary" party only because there is no other means of protecting legal rights.... The scope of required disclosure should not be so broad as to effectively eliminate any incentive to vindicate [one's] constitutional right [s]....'") (quoting *Greater Newburyport Clamshell Alliance v. Public Service Co.*, 838 F.2d 13, 21-22 (1st Cir. 1988)).

10

(2016 rev.), Guideline 7-4-3(c), ("Defense counsel may seek an ex parte evaluation or move for evaluation of the defendant's competence to proceed whenever counsel has a good faith doubt about the defendant's competence, even if the motion is over the defendant's objection"), *available at* http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/mental_health_standards_2016.authcheckdam.pdf.

Even if the Court decides that the competency evaluation might theoretically become admissible under some circumstances, a decision at this stage on whether it is admissible *in fact* is premature. Should this case proceed to trial and a penalty phase, and should the defense reconfirm its intent to offer expert evidence of mental condition bearing on the issue of punishment, the Court may have to consider whether evidence derived from the court-appointed evaluator's competency report is proper rebuttal to whatever the defense chooses to offer. *See* Fed. R. Crim. P. 12.2(c)(4). We note, however, that the scope of rebuttal is tightly confined, a point emphasized by the Supreme Court's remand in *Kansas v. Cheever*, 134 S. Ct. 596, 603 (2013). We further note that in light of Rule 12.2's provisions for ensuring that the government has a fair opportunity to rebut a defendant's expert mental health mitigation evidence, it is highly doubtful that the government should also receive a second set of rebuttal materials as a side benefit of the defendant's compelled and unwarned cooperation with a pretrial competency determination. But the important point here is simply that such issues need not be decided now.

### III. The defense use of expert mental health testimony during the competency hearing should not cause the Court to reconsider its ruling closing the competency hearing, because the same interests in protecting the defendant's Sixth Amendment right to a fair and impartial jury remain.

As discussed above, our assertion of the defendant's due process right here – including the decision to introduce evidence in support of a claim that he is incompetent – does not require him to waive other rights, such as his right to a fair and impartial jury, under the Sixth Amendment. *See Simmons,* 390 U.S. at 394. In this regard, the competency hearing should not be treated any differently from the sealed suppression hearing held over the summer.

We anticipate that the Court will, at some point following jury selection, release redacted transcripts of the competency hearing, in accord with its order in Dkt. No. 621, rejecting our request that certain aspects of the competency evaluation be maintained as confidential. We ask that the Court permit an opportunity for the parties to be heard on the timing of that disclosure (and the disclosure of the transcript of the suppression hearing, as well), prior to any disclosure being made. Given the unprecedented level of publicity surrounding this trial, and the fact that the jury will not be sequestered, it may be difficult – despite the Court's admonitions – to prevent the jury from gaining access to prejudicial material during trial. We note, for example, that it has been difficult for us to go about our day-to-day activities in Charleston without being alerted on our phones and tablets, or by televisions in hotel lobbies and other establishments, of news we are trying to avoid.

For the reasons given in the Court's order at Dkt. No. 561, and in our pleading at Dkt. No. 583, we maintain that the competency hearing should be sealed.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof