IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:15-CR-00472-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| DYLANN STORM ROOF | ) | |
| _____ | ) | |

**GOVERNMENT'S MOTION TO LIMIT COPYING AND
DISSEMINATION OF CERTAIN CRIME SCENE EVIDENCE**

This Court has indicated that it plans to post trial exhibits on the internet, making them widely available for dissemination and copying. As the Court has recognized in protecting the Defendant's rights, narrowly tailored limitations serving significant interests should overcome the rights of the public and the press to full access to materials. The families of the murder victims have a very significant interest, which has existed "in almost all civilizations from time immemorial," to protect the memories of their deceased loved ones, including how they are portrayed in death. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 168-71 (2004).

The government requests that a very narrow subset of the trial evidence – namely, the evidence depicting the deceased victims at the crime scene – not be posted on the internet or made available for copying. Granting this limited request would provide the media and the public full access to view this evidence, while ensuring that the victims' families are shielded from being confronted by death-scene depictions of their loved ones on the internet and in the press.

**I.     ARGUMENT**

The Fourth Circuit has held that the common law and First Amendment protect the right of the media and the public to access judicial proceedings, including the right to access evidence

admitted as exhibits at trial. *See In re Associated Press*, 172 Fed. App'x 1, 5 (4th Cir. 2006); *see also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 589, 607 (1978). As this Court has repeatedly recognized to protect the Defendant's rights, "[t]he First Amendment is not, however, absolute." (Order, Dkt. No. 624; Order, Dkt. No. 346). The right to access should be restricted where substantial, competing rights are implicated, and the restriction on access is narrowly tailored. *See, e.g.*, *In re Associated Press*, 172 Fed. App'x at 5; *cf. Warner Communications, Inc.*, 435 U.S. at 599 (holding that "[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute" and that access to copy judicial records may be restricted where the files "might have become a vehicle for improper purposes" or to "gratify private spite").

### A. The Families of the Victims Have a Substantial Right to Limit the Dissemination of the Images of Their Deceased Family Members

The Supreme Court has declared that the right of family members to exert "control over the body and death images of the deceased has long been recognized at common law." *Favish*, 541 U.S. at 168. The Supreme Court has explained that "[w]e have little difficulty . . . in finding in our case law and traditions the right of family members to direct and control disposition of the body of the deceased and to limit attempts to exploit pictures of the deceased family member's remains for public purposes." *Id.* at 167.

This right exists not only to protect the memory of the deceased victim, but also "'for the benefit of the living, to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased.'" *Id.* at 168-69 (quoting *Schuyler v. Curtis*, 147 N.Y. 434, 447 (1895)); *see also, e.g.*, *Marsh v. County of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) ("Few things are more personal than the graphic details of a close family member's tragic death. Images of the body usually reveal a great deal about the manner of death and the decedent's suffering during his final moments . . . ."); *Accuracy in Media v. Nat'l Park Serv.*, 194

F.3d 120, 123 (D.C. Cir. 1999) (hereinafter "AIM") (stating that "obviously [the party seeking photographs of the deceased] cannot deny the powerful sense of invasion bound to be aroused in close survivors by wanton publication of gruesome details of death by violence").

The release of crime scene evidence depicting deceased victims directly implicates their families' rights to control the images of their loved ones. *Marsh*, 680 F.3d at 1154 (holding that, in the absence of a legitimate governmental purpose, the submission of autopsy photograph of deceased son to a newspaper violated the rights of the mother); *AIM*, 194 F.3d at 123 (holding that autopsy photos should not be released under FOIA exemption and holding that "the release of photos of the decedent at the scene of his death and autopsy qualifies as such an invasion [of the family's privacy]").[1]

Although the government's prosecution of the defendant necessitates admitting images of the crime scene as evidence at trial, these images should not be available for republication to protect the interests of the victims and their families. *See United States v. Criden*, 648 F.2d 814, 830 (3rd Cir. 1981) (holding that in evaluating common law right to access to judicial records, "courts may appropriately exercise their discretion to deny copying for rebroadcast of evidence which may inflict unnecessary and intensified pain on third parties who the court reasonably finds are entitled to such protection"); *United States v. Dimora*, 862 F. Supp. 2d 697, 707 (N.D. Ohio 2012) (holding that in evaluating common law right to access to judicial records, "the

---

[1] *See also, e.g.*, *Katz v. Nat'l Archives and Records Admin.*, 862 F. Supp. 476, 485 (D.D.C.1994) (exempting from FOIA disclosure autopsy X-rays and photographs of President Kennedy on the ground that their release would cause "additional anguish" to the surviving family); *New York Times Co. v. Nat'l Aeronautics and Space Admin.*, 782 F. Supp. 628, 631, 632 (D.D.C.1991) (sustaining a privacy claim under FOIA with respect to an audiotape of the Space Shuttle Challenger astronauts' last words, because "[e]xposure to the voice of a beloved family member immediately prior to that family member's death ... would cause the Challenger families pain" and inflict "a disruption [to] their peace of mind every time a portion of the tape is played within their hearing").

privacy rights of disinterested, uninvolved third parties . . . weigh against allowing inspection and copying" of trial exhibits and denying request to copy photographs showing the images of third parties); *United States v. Troup*, No. 3:12-cr-36, 2012 WL 3818242, at * 6 (N.D. Ind. Aug. 31, 2012) (ordering that pornographic images of minors would not be visible to the gallery because it would be detrimental "to put their victimization on display"); *see also AIM*, 194 F.3d at 123 (recognizing that family privacy interests exist even though "law enforcement sometimes necessitates the display of such ghoulish materials").

These privacy interests are substantially heightened in this case. The Court has recognized that this case has received "extraordinary local, national and international coverage," *see* Order, Dkt. No. 561, at 3, and the likelihood that the trial exhibits will be widely republished is significant. Given the "viral nature of the Internet," it is reasonable for the victims' families to be apprehensive that they "might easily stumble upon photographs of [their deceased relatives] on news websites, blogs or social media sites." *Marsh*, 680 F.3d at 1155 (describing "intrusion into the grief of a mother over her dead son" based on the fear that her son's autopsy photograph would be published on the internet); *see also Favish*, 541 U.S. at 167.

The nature of the crimes charged in the Indictment makes these depictions of the victims particularly susceptible to misuse by third parties. The defendant published an online manifesto outlining the racial motivation for his crimes, and making these images available for copying to those who might share his racist ideology would serve no purpose other than to cause pain to the victims and their families. *See, e.g.*, *Warner Communications*, 435 U.S. at 598; *Melton v. Bd. of County Comm'rs*, 267 F. Supp. 2d 859, 864 (S.D. Ohio 2003) ("[F]amilies have a right not to be embarrassed or humiliated by the outrageous display or exposure to public view of the remains of a loved one."); *In re Application of KSTP Television*, 504 F. Supp. 360, 362 (D. Minn. 1980)

4

(rejecting request to copy videotapes made by the defendant before raping a kidnap victim because further broadcast would "serve only to accent the morbid and lurid details of the crime and pander to lascivious curiosity"); *see also Favish*, 541 U.S. at 168, 170 (noting that withholding photographs of a deceased family member guards against "unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased person who was once their own.").

The trial will take an emotional toll on the victims' families. Limiting the copying and dissemination of the images of their deceased family members will help ensure that they do not suffer additional pain and anguish. They should be allowed to leave the courtroom with the assurance that they will not be bombarded by crime scene images of their loved ones. *Favish*, 541 U.S. at 166 (noting that family members should be able to take "refuge from a sensation-seeking culture for their own peace of mind and tranquility.").

### B. The Government's Request is Narrowly Tailored

The government's request is the least restrictive alternative available. The government seeks only to limit posting on the internet and copying of a narrow subset of evidence, i.e., images depicting the deceased victims, leaving the media and public with full access to view and copy the vast majority of the evidence in this case. The courtroom will remain open throughout the trial, and all attendees will be able to view the evidence, hear the testimony, and evaluate the government's case against the defendant, including all of the crime scene evidence.[2] *See*

---

[2] Cases in which the Fourth Circuit has found violations of the right to access judicial proceedings are distinguishable because they involved restrictions on the public's access to all, or most, documents without substantial justification. *See, e.g.*, *In re Wash. Post*, 601 Fed. App'x 215 (4th Cir. 2015) (per curiam) (requiring rescission of gag order prohibiting "public access to most documents filed in the case"); *In re Associated Press*, 172 Fed. App'x 1 (4th Cir. 2006) (holding that administrative burdens did not warrant "complete denial of access" to trial exhibits). The government's request here is far more narrowly tailored, seeking only to restrict the copying and internet posting of depictions of the victims at the crime scene to respect the privacy interests of the victims' families.

*Application of KSTP Television*, 504 F. Supp. at 363 (holding release of trial exhibit for copying "can serve little, if any, purpose" where the trial was open and the media was assured adequate seating).

## II.     CONCLUSION

To respect the memories of the murdered victims and to ensure that their families are not caused additional, undue anguish, the government respectfully requests that this Court order that the crime scene evidence depicting the victims will not be made available on the internet or for copying.

Respectfully submitted,

BETH DRAKE
ACTING UNITED STATES ATTORNEY

s/ Julius N. Richardson
Julius N. Richardson
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3000
