IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 2:15-CR-472 |
| ) | |
| DYLANN STORM ROOF ) | |

### DEFENDANT'S EIGHTH AMENDMENT OBJECTION
### TO TRIAL PROCEEDINGS

The defendant, by and through standby counsel, objects to these proceedings as violating his Eighth Amendment right to a reliable determination of his culpability and sentence in a capital case, because of the Court's refusal to authorize reasonable, limited assistance he has requested from standby counsel. Unlike the broader question of a court's discretion to limit the involvement of standby counsel during the actual trial of a non-capital case, e.g. *United States v. Singleton*, 107 F.3d 1091 (4th Cir. 1997), this is an issue of first impression. Neither the Supreme Court nor the Fourth Circuit has addressed the question whether the Eighth Amendment requires the Court to provide a *pro se* defendant in a capital case any greater protection than that to which he would be entitled in a noncapital case. That is not surprising. This is not a question that arises frequently. As discussed further below, however, because the law is clear that "death is different," *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976), there can be no other answer: the twenty-two year-old defendant on trial for his life in an extraordinarily high-profile criminal trial must have the ability to call on experienced counsel the Court appointed to

1

stand by him to help him find the words he needs to preserve fully his other constitutional rights.

Exercise of the constitutional right to self-representation should not require a defendant to relinquish the right to the heightened reliability guaranteed in capital cases under the Eighth Amendment, or – for that matter – the right to a fair trial under the Fifth Amendment's Due Process Clause or to a fair and impartial jury under the Sixth Amendment. That *is* happening here, however. It should be apparent to everyone observing these one-sided proceedings that despite the defendant's best efforts, there is much being left unaddressed as jury selection proceeds.[1] The Court's refusal to exercise the discretion granted it by the Supreme Court to provide the defendant reasonable, limited assistance from standby counsel is therefore thwarting rather than promoting justice. This in turn is creating a constitutionally-impermissible risk that the capital sentencing jury now being selected will neither "express the conscience of the community on the ultimate question of life or death," *Witherspoon v. Illinois,* 391 U.S. 510, 520 (1968), nor decide that ultimate question with the heightened reliability demanded by the Eighth Amendment. *See Woodson*, 428 U.S. at 305.

---

[1] The government noted on November 29 that there appeared to be much discussion at the defense table on November 28. The press reported much note-passing, which did not correspond to the amount of speaking by the defendant. *See* Jennifer Berry Hawes, "Acting as own attorney, Dylann Roof helps select jury that will decide his fate", The Post and Courier (Nov. 29, 2016), available at http://www.postandcourier.com/church_shooting/acting-as-own-attorney-dylann-roof-helps-select-jury-that/article_27281404-b56e-11e6-aca9-b3862d04ed6a.html. And on November 30, after the defendant requested more time, the Court refused this request: "Can -- can I -- can you let David speak?

As the Court has stated many times in the course of this case, the parties and the public share an interest in a fair trial, with fulsome presentation of the facts under procedures designed to ensure a reliable and final outcome. Neither the Court nor the government should now be satisfied with anything less, merely because the defendant has made what is perceived to be an unwise choice. This is particularly true in light of the settled precedent authorizing the Court to do what is necessary to assure that both the defendant's rights and the public interest are protected. Because the Court has until now refused to take these necessary steps, the defendant now invokes his overriding rights to a reliable sentencing proceeding, and against the arbitrary infliction of the death penalty, that the Eighth Amendment guarantee.

### A. The defendant's interest in representing himself is not a "tactic." In fact, both the Court and informed legal observers believe it will likely inure to his detriment.

There has been much speculation about whether the defendant's decision to represent himself is a tactic of some kind. Speculation has been equally rampant about the purpose of the tactic. As the Court is well aware, however, it is not a tactic designed to achieve any sort of litigation advantage or result. In fact, the Court found in permitting the defendant to represent himself that, "[h]ere no facts suggest Defendant's motion is 'a tactic for delay; for disruption for distortion of the system; or for manipulation of the trial process.'" Dkt. No. 700 at 8 (citing *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000)). Indeed, the defendant formally requested to proceed *pro se* as early as November 7, 2016, but was not approved to do so until November 28, 2016, following a

3

competency hearing in the interim, requested by now-standby counsel and ordered by the Court.  *See* Dkt. No. 700 at 8.

The defendant's interest in deciding what sentencing evidence is presented on his behalf should not affect his ability to receive all the protections offered under the Constitution, including the Eighth Amendment's promise of heightened reliability in a capital case.  There can be no dispute that the choice to represent one's self in court – if a considered choice – is a difficult one.  *See Faretta v. California*, 422 U.S. 806, 834 (1975) ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.").  This Court has indicated that it is hard to fathom why the defendant would forego the assistance of "the services of the nation's foremost capital defense attorneys." Dkt. No. 700 at 9.  Legal experts agree with the Court's assessment that this decision may be "unwise," *id. See* Mike Hayes, "No Dylann Roof's Decision Will Not Help Him Appeal the Verdict", BuzzFeedNews (Nov. 30, 2016) (quoting legal experts discussing reasons why the defendant's decision is not good legal strategy), *available at* https://www.buzzfeed.com/mikehayes/no-dylann-roofs-decision-to-represent-himself-will-not-help?utm_term=.yeyEg6WNW#.lrGeAJLxL.

**B. In capital trials, the problem of self-representation is compounded by both the complexity and the stakes of the proceedings.  In fact, the vast majority of lawyers are not qualified to handle such cases.**

The United States Code provides that in a federal capital case, the defendant is entitled to at least two attorneys, one of whom must be "learned in the law applicable to capital cases."  18 U.S.C. § 3005.  Judicial Conference policy is that "[o]rdinarily,

'learned counsel' should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in state death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation." Recommendation 1(b), Subcommittee on Federal Death Penalty Cases, Committee on Defender Services Judicial Conference of the United States, Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense (approved September 15, 1998). Depending on the difficulty and seriousness of the matter, more than two attorneys can be appointed to represent a defendant in a capital case. *See* 18 U.S.C. § 3599(a). Minimum experience standards for attorneys appointed in capital cases are set forth in 18 U.S.C. § 3599(a)-(d).

Many aspects of death penalty cases are handled differently from noncapital cases, and are unfamiliar even to lawyers practicing at the highest levels in other areas of criminal law. These include jury selection, in which the parties are now engaged. Capital voir dire requires special qualification of jurors, who may serve only if they meet requirements set out in a line of Supreme Court cases that have been the subject of a half-century of litigation in the lower courts. Learned counsel receive extensive training in capital voir dire and must keep abreast of the developing law in this area. They must also be adept at quickly formulating follow-up questions and objections aimed at identifying qualified jurors and preserving a record for possible appeal in the event of error by the court. The trial and sentencing stages of capital cases also involve special challenges not present in noncapital cases, which may eventually be the subject of requests by the defendant regarding standby counsel.

The stakes here cannot be overstated.  The defendant faces a choice between the two most severe punishments known to the law.   He will either spend the rest of his natural life in prison without the possibility of release, or he will be executed. After *Gideon v. Wainwright*, 372 U.S. 335 (1963), and *Argersinger v. Hamlin*, 407 U.S. 25 (1972), a defendant is entitled to counsel on any criminal charge in which he faces so much as single day's imprisonment.  It should go without saying that the Constitution entitles a *pro se* defendant to reasonable, limited assistance from standby counsel, of the sort requested here, when he is on trial for his life.

### C. The Constitution provides special protections in capital cases due to the life-or-death stakes.

"[D]eath is a different kind of punishment from any other which may be imposed in this country. . . . From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 357-358 (1977).  Because death is different, the Constitution provides special protections in capital cases, including an Eighth Amendment requirement of "heightened reliability" in the proceedings.  *See Woodson*, 428 U.S. at 305.

The Supreme Court has therefore "invalidated procedural rules that tended to diminish the reliability of the sentencing determination. The same reasoning must apply

to rules that diminish the reliability of the guilt determination" or any other phase of the proceeding, including jury selection. *See Beck v. Alabama*, 447 U.S. 625, 638 (1980) (considering jury instruction at guilt phase of capital trial). Although the Court may be correct in assuming it would have full discretion to deny the defendant the ability to, for example, have standby counsel explain voir dire objections for him in a noncapital trial, the Eighth Amendment requires such accommodations in a capital trial because the need for careful, reliable jury selection (and record preservation about it) is heightened. *See Ake v. Oklahoma*, 470 U.S. 68, 87 (1985) (Burger, C.J., concurring in judgment) ("In capital cases the finality of the sentence imposed warrants protections that may or may not be required in other cases.").

The Supreme Court has advised, "[o]ur experience has taught us that 'a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney.'" *See Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152 (2000). In a capital case, the Eighth Amendment does not permit the Court to obstruct a *pro se* defendant's effort, consistent with *McKaskle v. Wiggins*, to use standby counsel to avoid a miscarriage of justice from "a bad defense".

**D. The Court must balance the defendant's Sixth Amendment right to self-representation with his other constitutional rights, and established precedent expressly permits this.**

The Court has so far treated the defendant's *Faretta* right as paramount in these proceedings. But the Supreme Court has acknowledged that the Sixth Amendment right to self-representation may yield to other interests in some circumstances. *See Martinez v.*

7

*Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000) (holding that a defendant does not have the constitutional right to represent herself on appeal). In *Martinez*, the Court noted that "the right to self-representation is not absolute", even at trial: "the government's interest in ensuring the integrity and efficiency *of the trial* at times outweighs the defendant's interest in acting as his own lawyer." *Id.* at 161, 162 (emphasis added). Here, counter-balancing the *Faretta* right, is not only the Eighth Amendment right to heightened reliability, but also the defendant's Fifth Amendment right to due process, the Sixth Amendment right to a fair and impartial jury, *and* the interests in the integrity and efficiency of the trial noted by the Supreme Court in *Martinez*.

We have already set forth in Dkt. Nos. 679 and 694, the Court's full authority under *Wiggins* to do what is necessary to support the defendant in assertion of his rights to a representative and impartial jury, and a fair and reliable trial and sentencing, while also protecting his right to self-representation. In doing so, the Court also will be protecting the integrity and efficiency (and likely ensuring the finality) of the proceedings.

## CONCLUSION

This trial is an event that few favored. The defendant has consistently offered to plead guilty in exchange for a sentence of life without the possibility of release. The Solicitor decried the federal intrusion into a matter the state was already vigorously pursuing. And some of the people most directly affected by the defendant's actions have expressed a wish to avoid the trauma of these proceedings. Nevertheless, this federal trial is now occurring, with the sole issue being whether the federal death penalty will be inflicted. If this trial cannot be avoided, the hope remains that it will somehow shed some additional light on the events of June 17, 2015. The Court's refusal to permit the defendant to call on standby counsel for assistance works against even that modest aim. Both the Constitution and the public interest require reconsideration of the Court's approach.

Respectfully submitted,

DYLANN STORM ROOF

BY: *s/ Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Stand-by Counsel for Dylann S. Roof