IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No. 2:15-472-RMG |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| Dylann Storm Roof. | ) | |
| | ) | |

This matter came before the Court on Defendant's motion to represent himself (Dkt. No. 666), defense counsel's (then "Standby Counsel")[1] objections to limitations on the role of Standby Counsel (Dkt. No. 704), Standby Counsel's objections to permitting Defendant to proceed *pro se* (Dkt. No. 718), and Defendant's motion for the reappointment of counsel only for the guilt phase of trial (Dkt. No. 728). The Court granted Defendant's motion to self-represent orally on November 28, 2016 (Dkt. No. 672 at 9), for reasons memorialized in its opinion of November 29, 2016 (Dkt. No. 691). When granting Defendant's motion to represent himself, the Court also appointed former defense counsel as Standby Counsel. (Dkt. No. 672 at 9–10.) On December 5, 2016, the Court granted Defendant's motion for the reappointment of counsel only for the guilt phase of trial. (Dkt. No. 740.)

During the voir dire process, when Defendant proceeded *pro se* with Standby Counsel, the Court found it necessary to issue orders orally limiting the role of Standby Counsel, and Standby Counsel filed Eighth Amendment objections to those limitations and to Defendant being permitted to self-represent at all. The Court, after full consideration of the many briefs submitted by Standby Counsel and the Government (Dkt. Nos. 679, 692, 694, 704, 708, 715, 718, 730), issues this Opinion to memorialize its reasons for limiting the role of Standby Counsel over the objections of

---

[1] In this Opinion, the Court uses "Standby Counsel" to refer to Defendant's counsel in the period November 28, 2106 to December 5, 2016.

-1-

Standby Counsel and for granting Defendant's motion for the reappointment of counsel only for the guilt phase of trial. This Opinion will also inform Defendant about the role standby counsel may perform in the event he persists with his present intention to self-represent during any penalty phase.

## I.   **Background**

Defendant Dylann Roof is accused of killing nine persons and attempting to kill three other persons at the Emanuel African Episcopal Church in Charleston, South Carolina. He was indicted on various federal charges on July 22, 2015, and on May 24, 2016, the Government served notice of intent to seek the death penalty. (Dkt. Nos. 1, 164.) The Court appointed David I. Bruck, an attorney with extensive trial and appellate experience in capital cases, as lead counsel for Defendant on July 23, 2015. (Dkt. No. 11.) The Court thereafter approved additional trial counsel and a variety of expert witnesses to assist in the defense.

Under circumstances discussed in the Court's prior opinion of November 29, 2016 (Dkt. No. 691), on November 27, 2016, Defendant moved to represent himself at trial. (Dkt. No. 666.) The following day, the Court held a *Faretta* hearing. At the conclusion of the examination, the Court found Defendant had made a clear and unequivocal waiver of his right to counsel and of his desire to represent himself; that his decision was made knowingly, intelligently, and voluntarily; that his decision was timely; and that has the capacity to represent himself. (Dkt. No. 672 at 9.) The Court again admonished Defendant that his decision was "strategically unwise." (*Id.*) Defendant nonetheless again confirmed—unambiguously—his knowing and intelligent waiver of his right to counsel and decision to represent himself. The Court then granted Defendant's motion. The Court appointed Defendant's former counsel as Standby Counsel without objection from Defendant. (*Id.* at 9–10.)

The Court then proceeded to voir dire.[2] During voir dire, confusion regarding the respective roles of Defendant and Standby Counsel became apparent. For example, during the lunch break of the second day of voir dire, Standby Counsel filed a "motion for additional voir dire questions" requesting additional follow-up questions be posed to certain veniremen already qualified—even though Defendant stated in open court that he had no further questions for those veniremen. (Dkt. No. 684.) The Court strongly admonished that Standby Counsel are not co-counsel with Defendant and that the Court would not allow the defense to speak with two voices—and certainly would not allow Standby Counsel to contradict Defendant. Nonetheless, the next morning (a mere 19 hours later) Standby Counsel filed a "second motion for additional voir dire questions" complaining that the rate of jury qualification had increased and requesting six changes in how the Court phrases voir dire questions. (Dkt. No. 695.) Then, 19 hours after that motion, Standby Counsel filed a *third* motion for additional voir dire questions. (Dkt. No. 703.) That third motion, filed at 1 a.m. on December 1, 2016, was the first of *five* motions Standby Counsel filed on December 1.

Defendant proceeded *pro se* for the entire period of voir dire. On December 2, 2016, the Court completed voir dire and scheduled final jury selection and empanelment for December 7, 2016, with opening statements to follow immediately thereafter. (*See* Dkt. Nos. 724 & 725.) On December 4, 2016—after voir dire but before jury empanelment—Defendant moved for Standby Counsel to be reappointed as his counsel of record only for the guilt phase of his trial and to be allowed to (again) proceed pro se during any sentencing proceeding. (Dkt. No. 728.) The Court granted that motion at the pretrial conference held on December 5, 2016. (Dkt. No. 740.)

---

[2] Defendant assured the Court that if he were allowed to self-represent that it would not delay trial proceedings because he was ready to commence with jury selection.

## II.   Legal Standard

The Sixth Amendment provides both the right to counsel and the right to self-representation. *Faretta v. California*, 422 U.S. 806, 807 (1975). Those rights are mutually exclusive—"assertion of one constitutes a de facto waiver of the other." *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997). A defendant may choose to be represented by competent counsel, or he may choose to proceed *pro se*. There is no right to "any intermediate accommodation." *Id.* at 1102. A *pro se* defendant has no right to standby counsel, and, consequently, no right to have standby counsel perform any particular function on his behalf. *See id.* at 1100–01. The trial court has broad discretion to define "what, if any, assistance standby, or advisory, counsel may provide a defendant conducting his own defense." *United States v. Lawrence*, 161 F.3d 250, 253 (4th Cir. 1998). But the trial court should take care to prevent the use of standby "counsel as an instrument to distort the system," which "'[a] skillful defendant'"— or skillful standby counsel—"'could manipulate . . . to create reversible error.'" *Singleton*, 107 F.3d at 1096, 1102 (quoting *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc)).

## III.   Discussion

### A.   Authority of the Court to control standby counsel in capital cases

Standby Counsel argued that Court's discretion to limit the involvement of standby counsel in a capital case is distinct from the question of the Court's discretion to limit the involvement of standby counsel generally, and that the Eighth Amendment limits trial courts' control over standby counsel in capital cases.[3] (Dkt. No. 704 at 1.) Standby Counsel also objected that Defendant has

---

[3] Though "Defendant's Eighth Amendment Objection to Trial Proceedings" (Dkt. No. 704) is styled as an objection by the "defendant, by and through standby counsel," it is obvious to the Court that Standby Counsel were arguing their own view of what their own role should be in this case. Standby Counsel conceded this with their subsequent filing, "Eighth Amendment Objection to Permitting Defendant to Proceed Pro Se in a Capital Trial" (Dkt. No. 718). Defendant made clear to the Court—including after the filing of docket entry 718—that he objects to Standby

-4-

no right to self-representation at all in capital sentencing proceedings. (Dkt. No. 718.) It is appropriate to address the scope of the Court's authority to define the role of standby counsel in a capital case before the Court proceeds to the role and function of Standby Counsel in this case. As explained below, the Court a capital defendant has the right to represent himself, and the Court has equal discretion over the role of standby counsel in capital and non-capital cases.

Standby Counsel argued that Defendant has, under the Eighth Amendment, an unwaivable right to counsel or, at the least, a right to the appointment of standby counsel. (Dkt. No. 704 at 6–7 ("It should go without saying that the Constitution entitles a *pro se* defendant to reasonable, limited assistance from standby counsel, of the sort requested here, when he is on trial for his life."); Dkt. No. 718 (arguing Eighth Amendment concerns prevent a capital defendant from discharging counsel and self-representing).) This is the crux of Standby Counsel's argument. If Defendant has a constitutional right to standby counsel, it must follow that there are substantial constitutional limits on the discretion of the Court to limit the involvement of Standby Counsel in his case. *Cf. Singleton*, 107 F.3d at 1103 (trial court has broad discretion to limit role of standby counsel because there is no right to standby counsel). And if he has an unwaivable right to counsel, there would be no standby counsel to limit. But there are no such rights. Although Standby Counsel argued the heightened reliability and special protections the Constitution requires in

---

Counsel's efforts to offer evidence over his objections. Standby Counsel asserted they are nonetheless authorized to file that objection because "the issues relate to the defendant's capacity to enter a waiver of counsel in the first instance." (Dkt. No. 718 at 1.) Having succeeded in his *Faretta* motion, Defendant himself is judicially estopped from arguing that he has no *Faretta* right in this case (of course, nothing prevents him from reconsidering his assertion of that right, as he did on December 4, 2016). *See generally New Hampshire v. Maine*, 532 U.S. 742 (2001). But estoppel is an equitable doctrine that should not make it impossible to adjudicate whether a capital defendant has a constitutional right to self-representation. The Court therefore agrees Standby Counsel were authorized to file their Eighth Amendment objection to permitting Defendant to proceed *pro se*—although the open conflict between Defendant and Standby Counsel regarding the objection was certainly evidence of the need for the Court to define Standby Counsel's role.

capital cases include provision of standby counsel for *pro se* defendants—and that those requirements completely preempt a capital defendant's right to proceed *pro se* (Dkt. No. 718)—they cited no authority in support of that argument.

Standby Counsel claimed they lack authority for their position because "[t]his is not a question that arises frequently" and because "this is an issue of first impression" in this Circuit. (Dkt. No. 704 at 1.) They appear to be correct insofar as there is no Supreme Court or Fourth Circuit case indistinguishably on point,[4] but federal courts have repeatedly considered and rejected Standby Counsel's argument:

- In *Alkebulanyahh v. Byars*, a habeas review of a death sentence, the District of South Carolina held "if a criminal defendant choose to represent himself, he has no right to standby counsel." 2015 WL 2381353, at *15 (D.S.C. May 18, 2015), *appeal docketed*, No. 15-3 (4th Cir. Oct. 30, 2015).

- In *Lay v. Trammell*, a habeas review of a death sentence, the petitioner argued, on direct appeal, "that a defendant in a capital criminal trial has no constitutional right to proceed without counsel during the penalty phase of trial." 2015 WL 5838853, *22 (N.D. Okla. Oct. 7, 2015). The Oklahoma Court of Criminal Appeals had held "the right of self-representation is not limited based upon the type of trial, and the law allows a competent defendant to waive any right to counsel during any phase of a capital trial." *Id.* The Northern District of Oklahoma found no misapplication of federal law, because "neither

---

[4] However, in *Townes v. Murray*, the Fourth Circuit affirmed the district court's determination that a capital defendant's *Faretta* hearing in state court met constitutional requirements—which rather strongly indicates a view that the Eighth Amendment does not prohibit capital defendants from exercising their *Faretta* rights. 68 F.3d 840, 845 (4th Cir. 1995).

*Faretta* nor any subsequent ruling by the United States Supreme Court limits the Sixth Amendment right to self-representation to non-capital cases."

- In *United States v. Fields*, a federal capital prosecution, the trial court instructed standby counsel "that they could not 'represent [Defendant] through [Defendant]'" and that the defendant himself was responsible for making statements to the court. 483 F.3d 313, 361 (5th Cir. 2007) (the trial court later expanded standby counsel's role when the *pro se* defendant refused to abide by rules of procedure and courtroom protocol).

- In *Simpson v. Battaglia*, an appeal from a habeas review of a death sentence, the Seventh Circuit held "[t]he *Faretta* right and the appointment of standby counsel inherently conflict which, taking into account that hybrid representation is not required, supports the conclusion that there is no right to standby counsel." 458 F.3d 585, 597 (7th Cir. 2006) (citation omitted). The Seventh Circuit also noted that "[appellant] does not provide, nor could we find, a Supreme Court case holding standby counsel in a capital case should be treated any differently" than standby counsel in a non-capital case. *Id.*

- In *United States v. Davis*, the Fifth Circuit granted a writ of mandamus to reverse a district court decision to appoint an independent counsel to present mitigation evidence on behalf of a *pro se* capital defendant, because that decision "cannot be squared with [the defendant's] self-representation right." 285 F.3d 378, 384 (5th Cir. 2002).

- In *Nelson v. Alabama*, the Eleventh Circuit affirmed a district court's determination that the state court reasonably applied *Faretta* when it permitted

- a capital defendant to self-represent, despite not holding a formal *Faretta* hearing. 292 F.3d 1291, 1297 (11th Cir. 2002).

- Finally, in *Silagy v. Peters*, the Seventh Circuit addressed a habeas petitioner's argument that "that the right recognized in *Faretta* is not applicable within the context of a sentencing hearing in a capital case," stating, "we disagree." 905 F.2d 986, 1007 (7th Cir. 1990). The court explained that it could "think of no principled reason to deny a death-eligible defendant his *Faretta* right to proceed without the assistance of counsel. If an individual in a capital sentencing hearing wishes to proceed pro se, *Faretta* grants him the right to do so." *Id.*

Standby Counsel also made what appears to be a Fifth Amendment or Sixth Amendment argument that the complexity of capital defense litigation makes standby counsel for *pro se* defendants necessary. (Dkt. No. 704 at 4–5.) That argument is without merit. The constitutional right of self-representation is not contingent on the complexity of the litigation. Obviously, Defendant is professionally unqualified to manage this litigation or any other litigation. But "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993). Where—as here—a defendant is not suffering from mental illness to the point he is incompetent to conduct trial proceedings, his "ability to represent himself has no bearing upon his competence to *choose* self-representation." *Id.* at 400; *see also Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008). And to choose self-representation means to represent oneself, not hybrid representation or "to choreograph special appearances by counsel." *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Singleton*, 107 F.3d at 1096–1102. Of course, if Defendant feels this case is too complex for him to manage *pro se*, he may assert his right to counsel, as he did on December

4, 2016. (Dkt. No. 728.) The Court has repeatedly reminded Defendant of his right to do so, and, by this Opinion, reminds him again of his right to be represented by counsel.

In their second Eighth Amendment filing, Standby Counsel framed this argument as an Eighth Amendment violation, arguing that because a capital trial is "the most complicated proceeding known to the criminal law," an "untrained layperson" cannot through *pro se* efforts achieve the "heightened reliability" required by the Eighth Amendment, and that the Sixth Amendment right to self-representation is inapplicable because the Sixth Amendment language "[i]n all criminal prosecutions" "does not by its terms apply to the penalty phase of a capital proceeding." (Dkt. No. 718 at 2–3.) That reframed argument remains without merit. Sentencing is part of criminal prosecution, and the Sixth Amendment of course applies to capital sentencing proceedings—were it not so, a defendant would have neither the right to self-representation nor the right to counsel. We would instead have a court-driven, inquisitorial inquiry. That is, obviously, not the law.

Finally, Standby Counsel argued the Eighth Amendment requirement for heightened reliability in capital proceedings and the public interest in the integrity and efficiency of the trial outweigh the Sixth Amendment right to self-representation, at least with regard to the sentencing proceeding.[5] (Dkt. No. 718 at 2, 4–7; Dkt. No. 704 at 6–8.) Standby Counsel's arguments mirror points raised by Justice Thurgood Marshall when dissenting from the denial of a stay of execution in *Lenhard v. Wolff*. 444 U.S. 807 (1979). In *Lenhard*, the defendant, Jesse Bishop, faced a capital

---

[5] Standby Counsel argued there is no Sixth Amendment right in capital sentencing only on page three of docket entry 718. In the view of the Court, that argument is absurd. Otherwise, Standby Counsel admitted or at least assumed a Sixth Amendment right throughout a capital prosecution, but argued that, because of the unique nature of the death penalty, other constitutional interests outweigh the Sixth Amendment right to self-representation in capital cases. As explained in this Opinion, that is a dissenting view and not the law.

murder charge. *Id.* at 808. He stated he wished to self-represent. *Id.* His competency was then assessed. *Id.* After hearing testimony from court-appointed psychiatrists, the trial judge found the defendant competent. *Id.* The trial judge then advised the defendant "that *pro se* representation was ill-advised when facing the death penalty." *Id.* The defendant nevertheless insisted on proceeding *pro se*. *Id. Faretta* compelled the trial judge to grant the defendant's motion for self-representation, but the judge did appoint his former defense counsel as standby counsel. *Id.* at 808–09. At the sentencing phase of the trial, the defendant decided to present no evidence in mitigation. *Id.* at 809. Standby counsel sought to present mitigation evidence, but the defendant refused to allow it. *Id.* The trial court "acceded to his wishes and did not allow standby counsel to proceed." *Id.* "Finding the existence of aggravating circumstances and noting that [the defendant] had offered no proof of mitigating the circumstances, the court imposed the death penalty." *Id.* "The court reasoned that, under *Faretta*, [the defendant] had the absolute right to represent himself and to decline to introduce any mitigating evidence." *Id.*

The Supreme Court refused to grant a stay of execution. *Id.* at 807–08. Justice Marshall dissented that the failure to introduce any mitigating evidence deprived the sentencing court of evidence needed to make the "individualized consideration of the capital defendant" required by the Eighth Amendment, and thereby infringed "[s]ociety's independent stake in enforcement of the Eighth Amendment." *Id.* at 811–14. Standby Counsel presented that dissenting argument to this Court (*see* Dkt. No. 718 at 2, 6–7), but this Court recognized—as Justice Marshall did—that a dissenting view is not the law. *See Lenhard*, 444 U.S. at 810. To the contrary, the law requires the Court, in Standby Counsel's words, to "treat[] the defendant's *Faretta* right as paramount." (Dkt. No. 704 at 7.)

In *United States v. Davis*, the district court appointed counsel to present mitigating evidence over the objections of a defendant who wished to present no true mitigation defense but instead wished to re-litigate guilt in the penalty phase. In granting the defendant's petition for a writ of mandamus to reverse that decision, the Fifth Circuit explained,

> The district judge appointed the independent counsel because she wants the jury to have a complete picture of all possible traditional mitigating factors. In her view, society's interest in a full and fair capital sentencing proceeding can only be served if all possible aggravating and mitigating factors are presented to the jury. While this notion is certainly noble, it cannot be squared with Davis's self-representation right. *Faretta* teaches us that the right to self-representation is a personal right. It cannot be impinged upon merely because society, or a judge, may have a difference of opinion with the accused as to what type of evidence, if any, should be presented in a penalty trial.

285 F.3d 378, 384 (5th Cir. 2002). The right of self-representation protects the individual right to autonomy, not societal interests. "The core of a defendant's right to pro se representation is his ability to preserve actual control over the case he chooses to present to the jury. This is so regardless of whether society would benefit from having a different presentation of the evidence." *Davis*, 285 F.3d at 385 (citation omitted). If tensions between important public interests and constitutionally protected individual rights categorically resolved in favor of the public, our landscape of individual freedoms would be barren.

The Court therefore concluded that its decision to permit Defendant to self-represent in this matter was a correct application of *Faretta*, and that its discretion to manage the role of standby counsel in a capital case is no different from its broad discretion to manage the role of standby counsel in a non-capital case.

## B.    The Court's exercise of discretion in rejecting the hybrid or co-counsel role for standby counsel

Having concluded the Court has broad discretion to define what if any assistance standby counsel may provide in a capital case, the Court now addresses why a primarily consultative role

for Standby Counsel was necessary and why a hybrid or co-counsel role was neither acceptable nor workable. The Court's experience after completing one week of court-directed individual voir dire confirmed the correctness of the initial orders limiting Standby Counsel to a primarily consultative role, which Standby Counsel repeatedly disregarded.

In the course of the week of voir dire, Standby Counsel repeatedly challenged and contradicted decisions and actions (or decisions not to act) by Defendant in representing himself or otherwise made a mockery of the concept of self-representation. For example, on December 1, 2016, Defendant purportedly made five written motions despite being in court all day. (Dkt. Nos. 684, 695, 703, 712.) Of course, those motions were filed by Standby Counsel acting independently of Defendant. It is rather unlikely Defendant, currently incarcerated, was available to request a 1 a.m. filing. (*See* Dkt. No. 684.) It also strains credulity to imagine Defendant—who on December 1 was actively participating in courtroom proceedings from about 9 a.m. to about 6 p.m.—requested Standby Counsel to file five motions on that same day without mention to the Court.

Motions filed by Standby Counsel also contradicted Defendant's courtroom statements (or silence), seeking questioning of qualified veniremen that differed from what Defendant requested during voir dire proceedings or a trial schedule different from what was discussed with Defendant in open court. (*See, e.g.*, Dkt. Nos. 684, 695, 703, 712.) Standby Counsel even filed motions opposed by Defendant. (*See, e.g.*, Dkt. No. 718.) The Court would never allow a lawyer to take a position in open court, only to have his co-counsel file a motion contradicting that position while he is still in the courtroom. Nor would the Court permit such actions from a *pro se* party and his standby counsel. Such behavior makes it impossible to manage trial proceedings.[6] The Court

---

[6] During voir dire, outside of the presence of the venire, the Court made passing reference to the conflicting directives from Defendant and Standby Counsel as producing a "two-headed monster." A member of the defense team, for whom the Court has the highest regard, later told the Court she

could not be left to wonder whether Defendant's courtroom statements or silence should be taken as his position, or whether they should be ignored in favor of whatever contrary statement Standby Counsel are at that very moment using ECF to file.

The Court's decision to limit Standby Counsel's role to a primarily consultative one was based upon three quite compelling factors, each independently sufficient to support the Court's exercise of discretion in this matter. First, allowing Standby Counsel to perform as co-counsel and to contradict or challenge the decisions of Defendant acting as his own counsel produces a disorganized, incoherent, and chaotic situation. Defense counsel in a criminal proceeding must necessarily make myriad decisions, large and small, in the course of a single day. These include whether to object or not to object, to raise issues or not to raise issues, to call witnesses or not to call witnesses, and to cross-examine a witness or not to cross-examine a witness. The defendant must speak with one voice. A self-representing defendant and standby counsel acting as co-counsel (and sometimes conflicting counsel) is simply unworkable.

Second, a criminal trial is organized on certain foundational principles, one being that if a criminal defendant represented by counsel wishes to speak he must take the stand and submit himself to cross-examination. A defendant who self represents is allowed certain liberties to fulfill his constitutional right of self-representation, which entitled him to engage directly or indirectly with the jury. These include the right to make opening and closing statements, raise objections, and examine and cross-examine witnesses. None of these functions requires him to submit to cross-examination. If a criminal defendant could enjoy the potential benefits of self-representation

---

took the statement as a personal reference and took offense to it. As the Court explained orally, this term was meant only as a metaphor for difficulties with the co-counsel or hybrid role of standby counsel and was in no way intended as a personal reference to defense counsel. To the contrary, the Court has great respect for the zealousness defense counsel have shown in representing Defendant.

while continuing to be represented by counsel, this would fundamentally alter the nature of the criminal trial and disrupt long-standing practices and procedures that promote a fair and just adjudication process.

Third, the use of the self-representation with co-counsel model is an obvious charade and manipulation of the system that creates a circus type atmosphere in the courtroom. This would threaten to destroy the solemnity of the criminal adjudication process and to bring the court proceedings into public disrepute. As the Fourth Circuit observed in *Singleton*, "the Constitution does not require such a manipulable and unwise arrangement." 107 F.3d at 1101. And as the Supreme Court noted in *McKaskle*, "a defendant does not have a constitutional right to choreograph special appearances by counsel" and "*Faretta* does not require a trial judge to permit 'hybrid representation." 465 U.S. at 183.

### C. The role of standby counsel in this case

The Court has found much wisdom in the following statement of the West Virginia Supreme Court regarding the need of the trial court to set forth specifically the parameters of the role of standby counsel:

> Trial courts can easily remedy the confusion surrounding the differing roles apparently filled by standby counsel by exercising their supervisory powers to specifically define or restrict the duties of standby counsel whenever such counsel is appointed. *See Lawrence*, 161 F.3d at 253 ("[T]he district court, in keeping with its broad supervisory powers, has equally broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." (citation omitted)). Given the lack of clarity over what, exactly, is the role of standby counsel, we find it is of the utmost importance that, when appointing standby counsel, trial courts do in fact define, precisely, the role counsel is expected to assume. Furthermore, trial courts should clearly inform counsel and the defendant of that role.

*West Virginia v. Powers*, 563 S.E.2d 781, 788 (W.Va. 2001). The Court appointed Standby Counsel as "standby counsel" and not as hybrid counsel or co-counsel. (Dkt. No. 672 at 9–10.) If Defendant persists in his present intention to self-represent, the Court anticipates it will reappoint

his defense counsel as standby counsel. The relevant ABA standard governing standby counsel's conduct provides,

> Defense counsel whose duty it is to assist a pro se accused only when the accused requests assistance may bring to the attention of the accused matters beneficial to him or her, but should not actively participate in the conduct of the defense unless requested by the accused or insofar as directed to do so by the court.

ABA Defense Function Standards 4-3.9(2) (3d ed. 1993). This Opinion memorializes the role of Standby Counsel in this matter as directed by the Court during voir dire, which will also be the role of standby counsel, if any, in any future sentencing proceeding.

The Court instructed Standby Counsel in open court to limit their functions to the following: (1) to consult with Defendant before and after court proceedings and during breaks in court proceedings, (2) to sit with Defendant at counsel's table and provide "elbow advice" directly to Defendant during court proceedings, and to serve as an intermediary between Government counsel and Defendant, (3) to facilitate Defendant's receipt of filings and other communications delivered to counsel. Those role specific roles—and only those specific roles—were the roles assigned to Standby Counsel.

If Defendant wished Standby Counsel to perform any other function, Defendant—directly and not through Standby Counsel—was required to inform the Court that he wished Standby Counsel to perform a specific function to assist him. He was required to explain to the Court why he was unable to perform that function himself. The Court would then determine whether to authorize Standby Counsel to perform that function. Any such authorization would be no broader than the performance of that specific function at that time. Standby Counsel could not file any motion unless Defendant first requested it and the Court then authorized Standby Counsel to file it on behalf of Defendant. Further, Standby Counsel could not speak for Defendant—or perform any function other than giving Defendant "elbow advice"—in the presence of the jury or any

potential juror. *See Singleton*, 107 F.3d at 1103 (holding the district court has discretion "to insist that [Defendant's] case be presented in court either by his attorney or by himself, but not by a combination of the two").

The Court adopted these limitations to provide clear definition to Standby Counsel's role to ensure that the defense speaks with a single voice, to maintain an orderly trial process that does not allow Defendant and Standby Counsel to manipulate Defendant's *Faretta* rights to enjoy the benefits of self-representation while maintaining *de facto* representation from Standby Counsel as co-counsel, and to preserve the dignity and decorum of courtroom proceedings.

## D. Defendant's motion to go back and forth between representation by counsel and self-representation

After the completion of voir dire, Defendant moved for Standby Counsel to be reappointed as his counsel of record, but only for the guilt phase of his trial. (Dkt. No. 728.) He asked to be permitted to proceed *pro se* at any sentencing hearing. A request to self-represent after the jury returns a verdict may be considered untimely and therefore within the discretion of the Court to deny. Although permitting a defendant to vacillate from self-representation and representation by counsel could frustrate the orderly administration of justice, the Court deemed the potential disruption from permitting Defendant to be represented by counsel for the entirety of the guilt phase to be manageable and outweighed by the potential disruption of a capital defendant proceeding *pro se*. The Court therefore exercised its discretion to grant Defendant's motion. (Dkt. No. 740.)

The right of self-representation may be waived if not asserted in a timely manner. *Martinez v. Ct. App. Cal., 4th App. Dist.*, 528 U.S. 152, 162 (2000); *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). Defendant proposed to wait until after the jury returns a verdict to assert his right to represent himself. (Dkt. No. 728.) That certainly could be seen as an untimely assertion

-16-

of the right to self-represent. Once trial has begun, motions for self-representation are generally untimely and the right to self-representation may be waived. *See, e.g.*, *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007) (finding no basis for habeas relief where the trial court denied as untimely self-representation request made after the jury returned a guilty verdict but before the sentencing phase of the trial); *Stenson v. Lambert*, 504 F.3d 873, 882, 884 (9th Cir. 2007) (same where motion for self-representation was made during voir dire and "on the verge of jury [e]mpanelment"); *United States v. Edelmann*, 458 F.3d 791, 808–09 (8th Cir. 2006) (finding untimely a self-representation request made four days before trial); *Singleton*, 107 F.3d at 1099 ("[I]f a defendant first asserts his right to self-representation after trial has begun, the right may have been waived."); *Lawrence*, 605 F.2d at 1325 (holding self-representation rights properly found waived when asserted after "meaningful trial proceedings had commenced").

Courts typically do not allow a defendant to proceed *pro se* once the trial has begun with Defendant represented by counsel to ensure the right to self-representation is not "used as a ploy to frustrate the orderly procedures of a court in the administration of justice." *Lawrence*, 605 F.2d at 1325. Requests for self-representation may not be "used as a tactic for delay; for disruption; for distortion of the system; or for manipulation of the trial process" and "[a] trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Frazier-El*, 204 F.3d at 560 (citations omitted). To ensure Defendant was not engaging in such tactics, the Court engaged him in an extensive colloquy at the December 5, 2016 pretrial conference. Defendant clearly and unequivocally stated his desire to waive *irrevocably* his right to self-representation during the guilt phase of this case. The Court informed Defendant that defense counsel would have ultimate control over all strategic and tactical decisions in the conduct of the guilt phase, including deciding

-17-

what evidence to present and what arguments to make. Defendant acknowledged that he would not be permitted to reassert his right to self-representation if defense counsel present evidence or argument of which he disapproves. After those admonitions, Defendant again unequivocally stated his desires to waive his right to self-representation during the guilt phase and to assert his right to self-representation during any penalty phase.

The Court then granted his motion for reappointment of counsel for the guilt phase only. The Court exercised its discretion not to find Defendant's intended post-verdict assertion of his right to self-represent untimely for three reasons. First, the guilt phase of the trial is a proceeding discrete from any penalty phase, and a switch from representation by counsel to self-representation will not pose the same potential for courtroom confusion or conflict as would, for example, switching between professional and *pro se* witness examinations within a single trial phase. Second, the Court is satisfied Defendant waived his right to self-represent in the guilt phase fully understanding that his waiver is irrevocable, even if he and his counsel have disagreements about strategy. Third, the Court believes the interests of justice are served best through professional representation of capital defendants.

E.  **Government's requests to unseal and to ask Defendant to withdraw motions**

The Government requested its first brief on the role of Standby Counsel be unsealed. (Dkt. No. 692 at 1 n.1.) Although none of Standby Counsel's briefs was filed under seal, the Government's brief repeatedly and explicitly refers to sealed matters (*see id.* at 1, 5, 6), and so the Court declines to unseal the Government's first brief. The Government also requested the Court to ask Defendant whether he wishes to withdraw two motions (Dkt. Nos. 665 & 667) filed by counsel. (Dkt. No. 692 n.4.) The Court declines that request as moot.

2:15-cr-00472-RMG     Date Filed 12/05/16     Entry Number 741     Page 19 of 19

## IV.  Conclusion

For the foregoing reasons, the Court limited the role of Standby Counsel to the role described in this Opinion and granted Defendant's subsequent motion for reappointment of counsel for the guilt phase of trial only (Dkt. No. 728).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 5, 2016
Charleston, South Carolina

-19-