IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S MOTION TO CONTINUE TRIAL
OR, IN THE ALTERNATIVE, FOR EXPANDED VOIR DIRE**

The defendant, through counsel, moves to continue the start of trial in light of the likely impact of the mistrial just declared in the trial of former North Charleston police officer Michael Slager for the fatal shooting of Walter Scott. For the reasons set forth below, the defendant submits that the Slager mistrial, declared less than 48 hours before the scheduled start of the trial in this case, is highly likely to create undue pressure on the jury to compensate for the judicial system's apparent failure to punish Mr. Slager by imposing a harsher punishment here.

The Slager case has been closely linked with this case from the start. Indeed, the press reporting the mistrial mentions this trial in the same breath: "[L]ocal activists called for harmony regardless of the outcome of the Slager trial and the death penalty trial of alleged Emanuel AME shooter Dylann Roof going on across the street." Brenda Rindge, "'I know justice will prevail': Scott family calls for peace as police prepare for city's reaction", POST AND COURIER (Dec. 6, 2016), available at http://www.postandcourier.com/news/i-know-justice-will-prevail-scott-family-calls-for-

peace/article_019413c8-bb36-11e6-a9c7-3feb4b09bf23.html. With the widely-held view that justice has not been served in the Slager trial, *see* Mark Berman, "Mistrial declared in case of South Carolina officer who shot Walter Scott after traffic stop", WASHINGTON POST (Dec. 5, 2016), available at https://www.washingtonpost.com/news/post-nation/wp/2016/12/05/mistrial-declared-in-case-of-south-carolina-officer-who-shot-walter-scott-after-traffic-stop/?utm_term=.61b279972ab8, we have grave doubt whether the defendant can receive a fair trial.

From the start, many have questioned why these trials should occur at the same time. *See* Darren Simon, Praying for Justice in Charleston, CNN (Nov. 28, 2016) ("One thing I did not understand is why they had both trials around the same time," [one resident] said. "I just thought it would be too much on people from Charleston."), available at http://www.cnn.com/2016/11/28/us/charleston-slager-roof-trials/. It is certain that emotion is now swirling in reaction to the mistrial. *See id.* ("'I would imagine an acquittal would lead to a great deal of bitterness, a great deal of anger. I think a great deal of it would be suppressed, as is usually the case in Charleston. . . . This is Charleston. We specialize in raging politeness down here.").

Under these circumstances, the risk that the defendant's soon-to-be-empaneled jury will feel pressure to respond to widespread frustration and anxiety aroused by the Slager mistrial is too great to ignore. To be clear, we do not suggest that the jury will treat the defendant more harshly simply out of a fear that any degree of leniency might produce violent repercussions of the sort experienced by other communities – such as Ferguson, Missouri and Baltimore—in the recent past. But such extreme fears are not the

only way that the fairness of the defendant's trial might be impaired. That justice has been frustrated in the Slager appears to be an extremely widespread concern, judging by today's media coverage.[1] And anyone feeling such concern may also feel that an unequivocally pro-government outcome in *this* case will come as a welcome corrective. Of course such extraneous considerations and pressures must play no role in the determination of the defendant's fate. But in the immediate aftermath of the Slager mistrial, it will be hard if not impossible for a jury in this case to separate its verdict and sentence from the broader concerns of the community.[2]

Courts have approved continuances in response to highly publicized and potentially inflammatory events like this mistrial. In *Skilling v. United States*, the Supreme Court noted with approval that, in response to a co-conspirator's "well-publicized decision to plead guilty shortly before trial", which created a danger of juror prejudice, the district court properly granted a one-month continuance and addressed the issue during voir dire, making a change of venue unnecessary. *Skilling*, 561 U.S. 358,

---

[1] Andrew Knapp, "After hung jury is declared in Michael Slager trial, prosecutor vows: 'There will be another day'", POST AND COURIER (Dec. 6, 2016) ("Gov. Nikki Haley announced her hopes for another trial so Scott's family "and all of South Carolina will hopefully receive the closure that a verdict brings." Charleston Mayor John Tecklenburg said he was "deeply disappointed" by the jury's inability to reach a verdict.), available at http://www.postandcourier.com/news/after-hung-jury-is-declared-in-michael-slager-trial-prosecutor/article_b43c72ec-baad-11e6-a6eb-8714ab6ea5f8.html.

[2] This is especially true now that Vice President-Elect Pence has suggested that the federal government may not pursue civil rights charges against Officer Slager. *See* Andrew Knapp, "VP-elect says Trump administration will decide future of Michael Slager federal prosecution", POST AND COURIER (Dec. 6, 2016), available at http://www.postandcourier.com/news/vp-elect-says-trump-administration-will-decide-future-of-michael/article_18939c8c-bbd2-11e6-bd2d-b319ba6c4f7f.html.

384-85 (2010). *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (suggesting several preventive and protective precautions when it appears that there is a reasonable likelihood that prejudicial news dissemination prior to trial will prevent a fair trial including: continuance of the trial to a later date when publicity has subsided; changing venue; conducting intensive and extensive voir dire of the jury panel; and sequestering the jury).

Whether or not the Court grants the requested continuance, additional voir dire is required before peremptory strikes are exercised in light of the virtually non-stop and highly charged coverage of the Slager trial since jury selection commenced – especially because that publicity has included references to this case. Multiple jurors commented last week that it was difficult, if not impossible, to avoid coverage of this case. They were not instructed to avoid coverage of the Slager trial. Although we do not concede it would be effective in the absence of a continuance and additional voir dire, we also suggest that the Court should instruct the jury specifically regarding Officer Slager's case.

We recognize the importance to the Court, the parties, and the family members of the victims of the Emanuel AME Church killings of proceeding to trial in this case without undue delay. But we would be remiss if we did not call the Court's attention to the substantial threat to the fairness and integrity of the proceedings posed by the unexpected conclusion of the Slager prosecution directly across the street from this Court. The Court, the parties, and the community share a common interest in assuring a fair and final verdict in this matter. We urge the Court to grant appropriate relief in light of these very unusual circumstances.

Respectfully submitted,

s/ *David I. Bruck*
David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof