IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**MOTION IN LIMINE TO ADMIT RELEVANT EVIDENCE REGARDING THE DEFENDANT'S STATE OF MIND AND PERSONAL CHARACTERISTICS**

The defendant, through counsel, submits this motion to admit relevant evidence of the defendant's state of mind and personal characteristics. The Court has commented that information regarding the defendant's state of mind and personal characteristics around the time of the offense is irrelevant, suggesting that this evidence is pertinent only to penalty and not to guilt. Evidence bearing on the defendant's state of mind and personal characteristics is relevant for at least four reasons, however:

(1) The government has opened the door in its opening statement and through the testimony of its first witness to defense evidence about state of mind and personal characteristics.

(2) Facts relating to the defendant's behavior during the time period addressed by the government's evidence are part of the *res gestae* of the crime.

(3) The defense is entitled to challenge the weight of any statements of the defendant – including his confession – by evidence pertaining to his state of mind and personal characteristics at or near the time they were made; and

1

>    (4) The defense is entitled to counter the government's proof on any element of the charged offenses, including intent;

To deem government evidence of state of mind and personal characteristics of the defendant relevant while precluding defense evidence in contravention is fundamentally unfair and violates the Fifth, Sixth, and Eighth Amendments to the United States Constitution.  Without the opportunity for a full and fair presentation by the defense (through cross-examination or in the defense case-in-chief), this trial will be one-sided and a disservice to justice.

### A. The government has opened the door to what the Court is characterizing as "penalty" evidence, through its opening statement and the testimony of its first witness.

"It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party." *United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000) (citing cases).  In his opening statement, the government's lead prosecutor opened the door to introduction of evidence about the defendant's state of mind and personal characteristics by making repeated pejorative reference to them.  For example, in discussing the defendant's post-arrest statement to FBI agents, in which the defendant acknowledged responsibility for the shooting and answered every question asked of him, the prosecutor said that the defendant confessed only "as fully as he wanted those agents and others to know," thus ascribing the defendant's limited description of the events to a deliberate effort to

2

conceal. This approach to the evidence was characteristic of the opening statement.[1] The prosecutor referred to the defendant's state of mind and personal characteristics repeatedly, and in the most negative terms:

- Describing the defendant as having "a cold and hateful heart";
- Referring to the defendant's "choices" or "decisions" regarding the crime nearly twenty times;
- Noting that the defendant "mentally and physically prepared himself, … getting himself in a state of mind where he could do what he believed he had to do";
- Referencing the defendant's "contemplating" and "coldly considering" his acts;
- Speculating that the defendant "fel[t] the recoil each time [the gun] fired";
- Characterizing the defendant's manner as he left the scene as "calm[]"; and
- Suggesting that he "curated" a set of photographs.

The government is certainly entitled to cast the evidence in this manner, but when it does, the defense is entitled to respond – not just in opening statement, but by the evidence. *See Chavez, supra*.

The same is true of the first witness' testimony, which similarly characterized the defendant's state of mind and behavior. The witness commented on how the defendant hung his head down during the Bible study, how he told her son, "I have to do this," and

---

[1] This sort of advocacy was unnecessary. In contrast, the defense simply called upon the jury to closely examine the facts and to render the verdict it deemed just.

3

how she "thought he was there before the Lord, but in return, he just sat there the whole time evil. Evil. Evil as can be." Later, she repeated, "He's evil. There's no place on earth for him except the pit of hell." These characterizations require rebuttal from the defense, in such manner as the defense may choose. Whether such evidence is conventionally offered in "penalty" instead of "guilt", the topic has been joined by the government at this phase of trial, and now must be addressed by the defense, as well.

### B. Evidence of the defendant's state of mind may be "*res gestae*" necessary to complete an accurate narrative of the offense.

The defense is entitled to present evidence relating to the defendant's state of mind because it "furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the 'res gestae'." *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (discussing res gestae in the context of other crimes evidence) (internal quotation marks and citations omitted). Much of the evidence the defense will seek to present – such as the testimony we sought from the government's first witness that the defendant announced at the crime scene his plan to commit suicide – is *res gestae*. Just as the government is able to fill out the details of what happened – whether someone arrived by helicopter or whether there was an unrelated bomb threat – so is the defense. "There is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." *Id.*

### C. The defense is entitled to address and explain statements by the defendant that are offered by the government.

The government will offer in evidence multiple statements by the defendant, including his confession. The defense is entitled to address and explain those statements, and their pertinence to the indictment, by reference to evidence of the defendant's state of mind and his personal characteristics. *See* 18 U.S.C. § 3501(a). The law requires the Court to "permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves *under all the circumstances*." *Id.* Indeed, the parties have submitted agreed-upon instructions on this subject, directing the jury to consider such factors. *See* Dkt. No. 431 at 20, 21. The defense must, therefore, be permitted to present them.

### D. The defense is entitled to contest the intent elements of the offenses.

It goes without saying that a defendant may contest any element of the offense. Here, the facts and circumstances the defense intends to offer – and has attempted to offer – relate to the defendant's intent. That is, they relate to his state of mind at and around the time of the crime. The jury instructions – on which the parties agree – make this clear. *See* Dkt. No. 431 at 39, 41, 49. The standard "willfulness" instruction (Counts 1-9), for example, directs jurors to consider "any statements made or any acts done or omitted by the Defendant … [and] all the attendant circumstances of the case, that is, any other facts and circumstances received in evidence that may aid in your determination of the Defendant's intent." *Cf. Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (defining willfulness requirement). The standard "intentionally" instruction (Counts 13-

5

21, 22-24, 25-33) also requires consideration of the "circumstances." *Cf. United States v. Worrell*, 313 F.3d 867, 873-74 (2002) (approving, consistent with other circuits, use of psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent).

The two facts the defense attempted to adduce during cross-examination of the first witness, and which the Court and the government deemed "irrelevant" to guilt, are illustrative. The government places great emphasis on what it claims to be extensive and sophisticated planning of this offense. In response, the defense seeks to show that the defendant was 21 years old and expressed suicidal ideation on the night of the offense. To find these facts so totally irrelevant as to be excludable as a matter of law ignores ordinary human experience and modern developmental neuroanatomy.

A twenty-one year old's brain is still developing, making a person of that age likely to be more impulsive and more vulnerable to outside influences. *See generally*, Lawrence Steinberg, "A Social Neuroscience Perspective on Adolescent Risk-Taking", 28 Developmental Rev. 78-136 (Mar. 2008) (discussing progression of brain development in young people through their twenties). And a suicidal person – someone who is seriously considering taking his own life – is highly likely to have a compromised capacity for decision-making and planning. *See* Thomas Insel, "Understanding Mental Illness", National Institute of Mental Health Blog (Jan. 11, 2011) (commenting, in blog post following on Jared Loughner case, "Although it is not possible to know what prompted every suicide, it is safe to say that unrecognized, untreated mental illness is a leading culprit."), *available at*   https://www.nimh.nih.gov/about/directors/thomas-

6

insel/blog/2011/understanding-severe-mental-illness.shtml. Both of these facts therefore bear on intent, particularly the question of malice aforethought, which requires premeditation and deliberation. *See* Dkt. No. 431 at 83 ("deliberation … requires a cool mind that is capable of reflection").

To be sure, youth, suicidality and malice aforethought can all co-exist, in the sense that neither of the first two characteristics necessarily constitutes a defense to malice. But no rule of law limits a criminal defendant to presenting only those facts which in and of themselves prove his innocence.

## CONCLUSION

The defense seeks here no advantage, just a balanced proceeding in the tradition of adversarial testing for which our justice system is known. We therefore request that the Court grant this motion permitting the defense to introduce relevant evidence of the defendant's state of mind and personal characteristics.

        Respectfully submitted,

        s/ *Sarah S. Gannett*
        Sarah S. Gannett
        Assistant Federal Public Defender
        Federal Public Defender for the District of Arizona
        850 W. Adams Street, Suite 201
        Phoenix, AZ 85007
        602-382-2862
        sarah_gannett@fd.org

        David I. Bruck
        Washington & Lee School of Law
        Lexington VA 24450
        540-458-8188
        bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof