**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Criminal No. 2:15-472-RMG |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Dylann Storm Roof. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion in limine (Dkt. No. 783), requesting leave to introduce "relevant evidence of the defendant's state of mind and personal characteristics." For the reasons set forth below, the Court denies the motion without prejudice to Defendant's right to introduce particularly identified evidence relevant to an element of a charged offense.

## I.    Background

Defendant Dylann Roof is accused of killing nine persons and attempting to kill three other persons at the Emanuel African Methodist Episcopal Church in Charleston, South Carolina on June 17, 2015. He was indicted on various federal charges on July 22, 2015, and on May 24, 2016, the Government served notice of intent to seek the death penalty. (Dkt. Nos. 1, 164.) His trial began on December 7, 2016. On December 9, 2016, Defendant filed the present motion, asking the Court to permit him to introduce "relevant evidence of the defendant's state of mind and personal characteristics" in the guilt phase of trial.

## II.    Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to

avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 Fed. App'x 220, 222 (4th Cir. 2012).

## III.    Discussion

Defendant wishes to introduce "relevant evidence of the defendant's state of mind and personal characteristics" in the guilt phase of trial. (Dkt. No. 783 at 1.) By that phrase, Defendant appears to mean evidence related to his mental health. Defendant correctly notes the Court has already stated that such evidence is pertinent to penalty and not to guilt. (*Id.*) Defendant has not asserted an insanity defense and, after a thorough mental health evaluation, he has been found competent to stand trial. (Dkt. Nos. 656 & 657.) Defendant nonetheless presents four arguments in support of his request to present mental health evidence in the guilt phase of his trial. First, he argues the Government opened the door to mental health evidence. Second, he argues mental health evidence is part of the *res gestae* of the crime. Third, he argues mental health evidence is part of the "circumstances" of his confession that must be considered by the jury under 18 U.S.C. § 3501(a). Fourth, he argues he is entitled to use mental health evidence to rebut the Government's proof on any element of any charged offense. As explained, below, only Defendant's fourth argument has merit—and even that merit applies only in exceedingly rare circumstances.

## A.    Door opening by the Government

"[A] party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party." *United States v. Chavez*, 229 F.3d 946, 952

-2-

(10th Cir. 2000). Defendant argues the Government's opening statement opened the door to the admission of mental health evidence and as examples of door opening, he offers several quotes from the Government's opening statement that concern Defendant's mental state. Each of those statements describes Defendant's mental state as satisfying a statutory element of one of offenses charged:

- The description of Defendant as having "a cold and hateful heart" is a metaphorical description of Defendant's alleged malice, an element of certain charged offenses. *See* 18 U.S.C. §§ 924(j)(1), 1111.

- Referring to Defendant's "choices" or "decisions" regarding the crime describes Defendant's alleged intentionality, an element of certain charged offenses. *See* 18 U.S.C. §§ 247(a)(2), 249(a)(1), 924(j)(1), 1111.

- Noting Defendant had "mentally and physically prepared himself" describes Defendant's alleged intentionality and premeditation, elements of certain charged offenses. *See* 18 U.S.C. §§ 247(a)(2), 249(a)(1), 924(j)(1), 1111.

- Referring to Defendant as "contemplating" and "coldly considering" his crimes describes his alleged intentionality and premeditation, elements of certain charged offenses. *See* 18 U.S.C. §§ 247(a)(2), 249(a)(1), 924(j)(1), 1111.

- Referring to Defendant feeling the recoil of each shot while shooting victims describes his alleged malice, an element of certain charged offenses. *See* 18 U.S.C. §§ 924(j)(1), 1111.

- Describing Defendant's demeanor as he left the scene as "calm[]" refers to his alleged intentionality and malice. *See* 18 U.S.C. §§ 247(a)(2), 249(a)(1), 924(j)(1), 1111.

- Stating Defendant confessed "as fully as he wanted those agents and others to know" describes his confession as voluntary.

Defendant also complains that Felicia Sanders, the Government's first witness, made statements opening the door to mental health evidence. That is not so. Mrs. Sanders described her perception of Defendant's conduct at the time of the alleged crime: "he just sat there" and "[he told her son] I have to do this." (Trial Tr. 94, Nov. 7, 2016.) Her statement that she "though he was there before the Lord, but in return, he just sat there the whole time evil. Evil. Evil as can be" is also relevant to the elements of malice and the obstruction of the enjoyment of the free exercise of religious beliefs. *See* 18 U.S.C. §§ 247(a)(2), 924(j), 1111. Her statement "He's evil. There's no place on earth for him except the pit of hell" was potentially objectionable, but defense counsel strategically chose not to raise a timely objection—understandably, since defense counsel elicited the statement by repeatedly asking the witness to comment on the possibility of Defendant's death.

It is worth elaborating on the point that defense counsel repeatedly elicited Mrs. Sanders's call for Defendant to be condemned to hell. Defense counsel wanted to elicit testimony that, during the attack, Defendant stated his intent to commit suicide immediately thereafter. The only witnesses to that statement are defendant and the surviving victims. However, cross-examining a mother who witnessed Defendant shoot her son at Bible study—leaving him to bleed to death on the floor as she watched—about the possibility of Defendant's death risked eliciting an opinion in favor of Defendant's death. Defense counsel made the strategic decision that eliciting testimony about Defendant's stated suicidal intent was worth the risk.

Q. . . . Do you remember the man who did this saying something about that he was only 21? And then talking about what he was going to do afterwards?

A. Yes.

Q. Could you tell us what he said?

A. He say he was going to kill himself. And I was counting on that. He's evil. There's no place on earth for him except the pit of hell.

(*Id.* at 98.) At that point, defense counsel had elicited the testimony he wanted. He could have sat down. He also could have objected to the comment about the pit of hell. Instead, he asked the same question again. And again, he received the same answer.

Q. When you said that he was 21? And then that he was going to kill himself when he was finished?

A. Send himself back to the pit of hell, I say.

(*Id.*) Again, counsel could have objected, or simply sat down. Instead, he continued.

Q. Did—he didn't say that though. About hell. He just said he was going to kill himself?

A. That's what he would go, to hell.

(*Id.*) Counsel obviously knew Defendant did not say that he meant to send himself back to the pit of hell. Mrs. Sanders explicitly qualified that statement as her own opinion and not a statement by Defendant: "Send himself back to the pit of hell, *I say*." (*Id.* (emphasis added).)

Defendant's door-opening argument mistakenly assumes any statement about his mental state during the *res gestae* "opens the door" to a far-ranging discussion of his life history and mental health. The Government is entitled to argue that the evidence will prove the elements of each charged offense without "opening the door" to any mental health evidence other than evidence rebutting the Government's proof of those elements. Statements that Defendant acted with requisite intent and malice only open the door on the question of whether Defendant acted with requisite intent and malice (a door already opened by the indictment). Such statements do not open the door to mental health evidence about *why* Defendant was disposed to act with that intent and malice—that is a sentencing issue. To the contrary, the Insanity Defense Reform Act of 1984 ("IDRA") provides that, except for the affirmative defense of insanity, mental disease or

provided as part of the *res gestae*, the purpose of the guilt phase of the trial is to prove the offense elements, not details incidental to the charged offenses. So Defendant, for example, may not offer diagnoses, expert testimony, or other mental health evidence to explain, interpret, or speculate about why Defendant stated an intent to commit suicide or to explain any other detail incidental to the offense.

## C.    Circumstances under 18 U.S.C. § 3501(a)

Title 18 USC § 3501 regards the admissibility of confessions. All confessions are admissible if voluntarily given. 18 U.S.C. § 3501(a). The Court must rule on voluntariness, if the issue is raised, out of the presence of the jury. *Id.* If Court rules the confession voluntary, it must be admitted into evidence, but the defendant may present "relevant evidence on the issue of voluntariness" to the jury, who should "give such weight to the confession as the jury feels it deserves under all the circumstances." *Id.* Defendant argues this allows him to "address and explain" his confession by reference to mental health evidence.

Defendant's argument is unpersuasive. Defendant abandoned his mental health-based challenge to the voluntariness of his confession because he could not produce any evidence to support that challenge. (Dkt. No. 266 at 6; Dkt. No. 312 at 1.) Yet he now asserts that he does have such evidence to present to the jury. Of course, Defendant's proposed mental health evidence does not actually relate to the voluntariness of his confession because Defendant *said* he had no mental health evidence relating to the voluntariness of his confession when he moved to suppress his confession. (*Id.*) Rather, Defendant merely seeks to use § 3501(a) as a backdoor to introduce mental health mitigation evidence in the guilt phase of his trial.

Moreover, the statutory language Defendant seeks to use as a bootstrap—"all the circumstances"—was an attempt to overrule legislatively *Miranda v. Arizona*, 384 U.S. 436, rejected by *Dickerson v. United States*, 530 U.S. 428, 435–38 (2000). It codifies longstanding pre-

defect is not a defense in any federal criminal prosecution. Pub. L. No. 98-473, Title II, § 402(a), 98 Stat. 2057 § 20 (re-codified at 18 U.S.C. § 17(a). The "IDRA bars a defendant who is not pursuing an insanity defense from offering evidence of his lack of volitional control as an alternative defense." *United States v. Worrell*, 313 F.3d 867, 875 (4th Cir. 2002). A defendant may offer "psychiatric evidence to show he did not do it, not that he could not help it." *Id.* at 874. In other words,

**B.   *Res gestae***

*Res gestae* "means literally 'the thing done' and properly applies only to words that accompany and aid in giving legal significance to the act." *Miller v. Keating*, 754 F.2d 507, 509 n.1 (3d Cir. 1985). Incidental details surrounding an offense, not directly relevant to any element of the offense, may be admissible "to provide . . . full presentation of the offense" because "(t)here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (internal quotations and citation omitted). "[T]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *Id.*

*Res gestae* once referred to the excited utterance exception to the hearsay rule, *see United States v. Stroupe*, 538 F.2d 1063, 1068 (4th Cir. 1976)), and it still requires "a close temporal, spatial, and causal proximity" with the charged offenses, *United States v. Churn*, 800 F.3d 768, 778 (6th Cir. 2015). "[Such] evidence may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *Churn*, 800 F.3d at 779. The circumstances of Defendant's confession are not part of the *res gestae*. Nor is Defendant's childhood. Moreover, although incidental details may be

-6-

*Miranda* Fourteenth Amendment jurisprudence: "And, in a long series of cases, this Court has held that the Fourteenth Amendment does not prohibit a State from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive." *Culombe v. Connecticut*, 367 U.S. 568, 590–91 (1961) (collecting cases); *see also Dickerson*, 530 U.S. at 434 ("We have never abandoned this due process jurisprudence . . . ."). There is no basis to argue that a venerable "all the circumstances" test for the voluntariness of a confession requires in-depth exploration of the life history of the confessor, rather than mere consideration of all the circumstances of the confession itself.

**D.      Rebuttal of Government's proof on any element of the charges**

Finally, Defendant argues he may contest any element of the offense. He claims he intends to offer evidence relevant to intent and malice. That is obviously true, but he may offer such evidence only to argue that he did not have the requisite intent, not to offer a justification or excuse for why he did in fact have the requisite intent. *See Worrell*, 313 F.3d at 874. He may offer evidence that he did not act with malice aforethought, but not a psychological explanation for why he did act with malice. The Fourth Circuit has noted the difficulty in threading that needle: "We are inclined to agree with those courts holding that IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent, *although such cases will be rare*." *Id.* 874 (emphasis added). In short, Defendant may offer mental health evidence to rebut the Government's evidence that Defendant acted with the intent, malice, or motive that the charged offenses require, but he may not offer mental health evidence to explain why he acted with the requisite intent, malice, or motive.

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendant's motion in limine (Dkt. No. 783) is **DENIED WITHOUT PREJUDICE** to Defendant's right to introduce particularly identified evidence relevant to an element of a charged offense.  The motion is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 12, 2016
Charleston, South Carolina