IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No. 2:15-472-RMG |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Dylann Storm Roof. | ) | |
| | ) | |

This matter is before the Court on Defendant's Amended Motion for Mistrial, or for Curative and Prospective Relief (Dkt. No. 777) and Motion for Remedial Measures (Dkt. No. 789). For the reasons set forth below, the Court denies the Motion for Remedial Measures (Dkt. No. 789) and grants in part and denies in part the Amended Motion (Dkt. No. 777).

## I.    Background

Defendant Dylann Roof is accused of killing nine persons and attempting to kill three other persons during a Wednesday night Bible study at the Emanuel African Methodist Episcopal Church ("Mother Emanuel") in Charleston, South Carolina on June 17, 2015. He was indicted on various federal charges on July 22, 2015, and on May 24, 2016, the Government served notice of intent to seek the death penalty. (Dkt. Nos. 1, 164.) His trial began on December 7, 2016.

The Government called Felicia Sanders as its first witness. Mrs. Sanders is one of the three individuals Defendant is accused of attempting to kill, as is her minor granddaughter, K.M. Defendant also stands accused of killing Mrs. Sanders's son, Tywanza Sanders, and her aunt, Susie Jackson.

On direct examination, Mrs. Sanders provided background information on each of the victims and gave a first-hand account of the events that transpired at Mother Emanuel on June 17, 2015. Mrs. Sanders described the experience of lying in the blood of her son and aunt. Mrs. Sanders described telling her granddaughter to play dead and holding the child's face to her chest

so tight she feared she would suffocate the child. Mrs. Sanders described watching Defendant shoot her already-wounded son multiple times after he told Defendant, "You don't have to do this. We mean you no harm." (Tr. December 7, 2016 at 92–93). Mrs. Sanders concluded her graphic narration of events by stating that Defendant was "someone who [they] thought was there before the Lord, but in return, he just sat there the whole time evil. Evil. Evil as can be." (*Id.* at 93–94). Defendant made no timely objection at this time, and Mrs. Sanders responded to two additional questions before the Court briefly recessed at the Government's request.

Mrs. Sanders was subsequently cross-examined by defense counsel. The following exchange is the entirety of the cross-examination:

Q. Good afternoon, Miss Sanders. I only have one question to ask you. I'll be done. Do you remember the man who did this saying something about that he was only 21? And then talking about what he was going to do afterwards?

A. Yes.

Q. Could you tell us what he said?

A. He say he was going to kill himself. And I was counting on that. He's evil. There's no place on earth for him except the pit of hell.

Q. When you said that he was 21? And then that he was going to kill himself when he was finished?

A. Send himself back to the pit of hell, I say.

Q. Did -- he didn't say that though. About hell. He just said he was going to kill himself?

A. That's [where] he would go, to hell.

Q. Yes, ma'am. I'm so sorry. Thank you.

(*Id.* at 97–98).

Defense counsel did not object contemporaneously to any of Mrs. Sanders's testimony on direct examination. Defense counsel did not object contemporaneously to Mrs. Sanders' responses

to any of the four questions he asked her on cross-examination. Similarly, Defendant did not contemporaneously request that any portion of her testimony to be stricken from the record.

On the morning of December 8, 2016, however, Defendant filed a motion for mistrial or curative and prospective relief based on the two portions of Mrs. Sanders' December 7th testimony. (Dkt. No. 777). Defendant asserted that Mrs. Sanders's use of the word "evil" during her direct-examination testimony constituted an improper characterization of Defendant. In addition, Defendant asserted that Mrs. Sanders's references to "evil" and "the pit of hell" on cross examination constituted an impermissible victim comment on the appropriate punishment.

After giving the Government an opportunity to respond, the Court addressed the motion outside of the presence of the jury in open court. The Court ruled that Defendant's motions were untimely. Moreover, the Court stated that it would have overruled a timely motion to Mrs. Sanders's direct-examination testimony because it was a descriptive comment on Defendant's conduct on June 17, 2015, which was relevant to the elements of malice and the obstruction of the enjoyment of the free exercise of religious beliefs. *See* 18 U.S.C. §§ 247(a)(2), 924(j), 1111. The Court further stated that although it viewed Mrs. Sanders's statement as a religious statement and not a comment on sentencing, it would, out of an abundance of caution, provide the jury the following instruction:

> Ladies and gentlemen of the jury, I want to remind you that the decisions this jury must make, whether the defendant is guilty or not guilty and if we come to a sentencing phase, the appropriate sentence is always your decision to make. It is not the decision of this court, or the attorneys or the witnesses. It always will be yours.

(Tr. December 8, 2016 at 18).

On December 11, 2016, Defendant filed a Motion for Remedial Measures based on courtroom proceedings on December 7 and 8, 2016. (Dkt. No. 789). Specifically, Defendant argued that the following three events "created a constitutionally-impermissible risk" of tainting

-3-

the future testimony of "unsequestered prospective witnesses" and undermined Defendant's right to effective assistance of counsel: (1) the Court's rulings regarding Mrs. Sanders's direct- and cross-examination testimony; (2) the Court's statement that it viewed defense counsel's cross-examination of Mrs. Sanders as an effort to provoke Mrs. Sanders to make statements that would provide grounds for a mistrial; and (3) the lead prosecutor's statement, made while arguing the motion for a mistrial, that "[Mrs. Sanders] was not commenting on [what] the punishment is [when she said, 'There's no place on earth for him except the pit of hell.'] [W]hat she was describing is if he kills himself, where he was going. That is also where he's going if he dies [of] natural causes or the state does it."

Defendant now asks the court to (1) reconsider its rulings on Defendant's objections to Mrs. Sanders's statements; (2) instruct the jury that witness testimony like Mrs. Sanders's objected-to statements is improper, has been stricken from evidence, and should be accorded no weight in the jury's determination of the defendant's guilt or punishment; (3) publicly withdraw the Court's prior assertion that defense counsel appeared to deliberately elicit testimony to produce a mistrial; (4) instruct all potential Government witnesses that trial witnesses must answer only the questions put to them and must refrain from expressing or volunteering opinions about Defendant or the punishment the witness thinks the jury should impose; and (5) direct the Government to (a) refrain from comments implying that Defendant will go to hell when he dies, (b) advise each prospective Government witness against expressing opinions about Defendant or his punishment, and (c) refrain from referring to "evil," "the pit of hell," or other similar terms in closing argument. (Dkt. No. 789 at 10–11).

## II.    <u>Legal Standard</u>

Rule 103 of the Federal Rules of Evidence requires, among other things, that any objection or motion to strike evidence must be timely. Fed. R. Evid. 103(a)(1)(A). "Timeliness of objection

under the Rule requires that it be made at the time the evidence is offered . . . ." *United States v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983) (internal quotation mark omitted). If an objection is not timely invoked, it is waived. *Id.*

To consider an objection that is not timely raised, there must be a "plain error that affects substantial rights." Fed. R. Crim. P. 52(b). "The plain-error doctrine . . . tempers the blow of a rigid application of the contemporaneous-objection requirement. . . . [It authorizes the Court] to correct only particularly egregious errors, those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985) (internal quotation marks and citations omitted).

### III.   Discussion

#### A.   The Court Will Not Reconsider Its Rulings on Defendant's Objections to Mrs. Sanders's Testimony

As a preliminary matter, none of Defendant's objections to Mrs. Sanders's testimony were timely. Defendant objected to Mrs. Sanders's direct-examination testimony during the recess that took place two questions after she made the statements. Defendant objected to Mrs. Sanders's cross-examination testimony the day after it occurred. Because Defendant did not object at the time the testimonies were offered, the objections are waived pursuant to Rule 103.[1]

---

[1] Defense counsel conclusorily cites *Osborne v. Ohio*, for the proposition that they need not timely object to the second statement. 495 U.S. 103, 124 (1990). In *Osborne*, the trial judge, in no uncertain terms, rejected counsel's argument that a statute as written was overbroad. The Supreme Court held that counsel's failure to raise *the same issue* again did not serve as a bar to reaching Osborne's due process claim. Defendant appears to argue that the Court's denial of its first untimely objection excused its failure to timely object to Mrs. Sanders's cross-examination testimony. Here, however, Defendant's objection was not to the same testimony or even substantially similar testimony. The only similarities between the two testimonies is that they were spoken by the same witness; only one of Mrs. Sanders's three responses to defense counsel's questions even includes the word "evil." *Osborne* does not excuse Defendant's untimely objection to Mrs. Sanders's cross-examination testimony.

Even if Defendant's objection to Mrs. Sanders's direct-examination testimony had been timely, the Court would have overruled the objection. Mrs. Sanders's words described her perception of Defendant's conduct and demeanor, which were relevant to the issue of malice for Counts 25–33 of the Indictment. Moreover, the statements were relevant to the obstruction of the enjoyment of the free exercise of religious beliefs. *See* 18 U.S.C. §§ 247(a)(2), 924(j), 1111.

The Court next turns to defense counsel's four-question cross-examination of Mrs. Sanders. After Mrs. Sanders answered defense counsel's question regarding Defendant's expressed intention to commit suicide, she added that she "was counting on [him committing suicide.] He's evil. There's no place on earth for him except the pit of hell." Defense counsel made no objection to this testimony. Instead, defense counsel repeated essentially the same question and produced from Mrs. Sanders (quite predictably) essentially the same answer. Rather than object to this second response, defense counsel persisted in this line of questioning, asking Mrs. Sanders a third related question:

> Q. Did -- he didn't say that though. About hell. He just said he was going to kill himself?
>
> A. That's [where] he would go, to hell.

(Tr. December 7, 2016 at 97–98).[2]  Still, defense counsel made no objection to any of these responses from Mrs. Sanders. Only later did Defendant file his motion for a mistrial.

---

[2] It is notable the entire line of questioning was raised by defense counsel. For three successive questions, defense counsel persisted in asking questions that elicited responses about hell. The Court assumed that because defense counsel did not object or move to strike Mrs. Sanders's responses that there was some underlying strategic purpose. If defense counsel had timely objected, the Court would have sustained an objection to the testimony as being nonresponsive. A review of the transcript has not altered the Court's initial impression that defense counsel's line of questioning was designed to provoke the witness to make statements that would form the basis of a mistrial motion. The Court has further addressed this issue in an order and opinion related to one of Defendant's motions in limine. (*See* Dkt. No. 793).

Defendant asserts that Mrs. Sanders's testimony is an impermissible victim-impact statement to the jury regarding the appropriate penalty for Defendant. (Dkt. No. 777 at 3). When Mrs. Sanders made these statements, the Court—and the Government[3]—interpreted her references to hell as a religious comment on where *she* believed Defendant would go when he died rather than a call to sentence Defendant to death. As the Court noted the next day, her world is the religious world, not the sentencing world. (Tr. December 8, 2016 at 7). After reviewing the transcript, the Court maintains this view of Mrs. Sanders's cross-examination testimony.

Mrs. Sanders's responses to defense counsel's questions were potentially objectionable as non-responsive and possibly on other grounds, but defense counsel made no objection and persisted in his line of questioning. The Court regarded defense counsel's repeated failure to object as a strategic decision, which was borne out when defense counsel subsequently sought to use Mrs. Sanders's responses to support a motion for a mistrial.

Witnesses certainly should not testify regarding an appropriate sentence. The Court did not understand Mrs. Sanders to offer such testimony, but nonetheless provided an instruction—at Defendant's request—should any member of the jury interpret her comments in that way. Further, the Court intends to repeat this instruction, in more detail, at the sentencing stage, should the jury be required to address the sentencing issue.

---

[3] Defense counsel has attempted to use tweets from a reporter to provide a window into the "atmosphere" of the courtroom and suggest that the lead prosecutor passionately yelled "it's a matter of fact that #DylannRoof is going to Hell." (Dkt. No. 789-2). Tweets are not the record. The transcript is the record. The lead prosecutor did not state that Defendant is going to hell, but expressed the view that Mrs. Sanders's testimony was a religious statement rather than a comment on the appropriate punishment. (*See* Tr. Dec. 7, 2016 at 5, 13 (Government expressing view that Mrs. Sanders's testimony was a religious statement rather than a comment on the appropriate punishment)).

**B.     Victims Have the Right to be Present in the Courtroom**

Defendant argues a novel theory about prejudice in this matter, contending that because unsequestered witnesses overheard the Court's rulings (made outside the presence of the jury) that such rulings will inspire other victim-witnesses to make prejudicial statements before the jury. Notably, Defendant cites no authority for this dubious legal proposition.

Pursuant to 18 U.S.C. § 3510(b), crime victims have the right to attend and observe a trial. There is an exception to this provision if victims' testimony might be materially altered by attending the trial. 18 U.S.C. § 3771(a). Defendant made no prior objection to victim-witnesses' presence, and the Court finds any potential influence on their future testimony by overhearing Court evidentiary rulings to be highly speculative. To the extent Defendant now believes that the testimony of specific victims or family members will be *materially* altered by their presence for the testimony of any other witness, Defendant is free to file a motion to exclude them from the courtroom, and the Court will consider such a motion at that time.

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for a mistrial (Dkt. No. 777). The Court **DENIES** Defendant's motion for remedial measures. (Dkt. No. 789). The motion for a mistrial is denied, as are the requests for the Government to instruct its witnesses on the proper limits of their testimony and to preclude the Government from referring to the statements at issue. The motion is granted insofar as the Court has already instructed the jury—and will do so again, if there is a sentencing phase—that the jury, not the court, attorneys, or witnesses, decides Defendant's guilt and, if applicable, the appropriate sentence. (*See* Tr. December 8, 2016 at 18).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

December 13, 2016
Charleston, South Carolina