# EXHIBIT 4

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S PROFFER OF TESTIMONY OF RACHEL LOFTIN, Ph.D.**

The defendant, through counsel, submits this written summary of the anticipated testimony of expert witness Rachel Loftin, Ph.D.

A. <u>Background of Rachel Loftin, Ph.D. and her evaluation of Dylann Roof</u>

Rachel Loftin, Ph.D. is an Assistant Professor and Clinical Director of the Autism Assessment, Research & Treatment Services (AARTS) Center at the Rush University Medical Center in Chicago, Illinois.

Dr. Loftin was awarded a doctorate in school psychology from Indiana University. She completed both pre- and post-doctoral work at the Yale Child Study Center at the Yale School of Medicine and completed a social policy fellowship at Yale University's Edward Zigler Center. At Yale she was mentored by Ami Klin, Ph.D and Fred Volkmar, MD, internationally recognized authorities on autism spectrum disorder.

Dr. Loftin has special expertise in the assessment of autism spectrum disorder and is "research-qualified" in the administration of the gold standard instrument for autism assessment, the ADOS-2 or "Autism Diagnostic Observation Schedule, Second Edition." Because it is a developmental disability present from early childhood, autism is most

often assessed in children. However, Dr. Loftin has particular experience assessing autism in adults who have not previously been diagnosed. Dr. Loftin's curriculum vitae is provided as Exhibit A.

If called as a witness, Dr. Loftin would testify that she was asked by defense counsel to evaluate Dylann Roof to determine whether or not he meets diagnostic criteria for autism spectrum disorder ("ASD"). She would testify that prior to undertaking a comprehensive evaluation of Mr. Roof, at defense counsel's request, she reviewed the videotape of Mr. Roof's confession to the police. She would testify that she did this in response to counsel's question regarding whether it was warranted to undertake a full autism evaluation. Dr. Loftin would testify that her review of the videotape identified numerous "red flags" suggesting the presence of signs and symptoms of ASD or an autism-like disorder and that, accordingly, she recommended a full evaluation.

B. Explanation of autism spectrum disorder ("ASD")?

If called to testify, Dr. Loftin would explain that ASD is a neurodevelopmental disorder. This means its symptoms are brain-based, present early in life, and affect the course of development across the individual's lifespan. The diagnostic criteria for ASD are defined in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM 5), which requires that the individual demonstrate *social communication difficulties* in three of three stated domains, along with *restricted repetitive behaviors* in two of four stated domains.

Dr. Loftin would testify that symptoms of social difficulties evidenced by people with ASD may include problems with the give and take of social interaction, poor conversational skills, problems with eye contact and other non-verbal aspects of

2

interaction, difficulty understanding the emotions and nonverbal cues of others, difficulty forming and sustaining relationships, poor perspective taking, and poor understanding of social cues and social rules. Atypical behaviors seen in autism may include repetitive speech or motor movements, difficulty with change and rigid adherence to routine, intense or unusual interests, and atypical responses to sensory input.

Dr. Loftin would elaborate that the social-communication difficulties of ASD include persistent difficulties in social communication and interaction that include (currently or historically):

- Deficits in social-emotional reciprocity that may present as:
    - Difficulty in back and forth conversation
    - Reduced sharing of affect, interests, or emotions
    - Lack of initiation or response to overtures

- Deficits in reading and using nonverbal communication that may present as:
    - Poorly integrated verbal and nonverbal communication
    - Abnormalities in eye gaze for social purposes
    - Abnormalities in gesture use (from absent to overly frequent and exaggerated)
    - Abnormalities in facial expression

- Difficulty understanding, developing and maintaining appropriate social relationships that may present as:
    - Challenges with adjusting behavior to suit context or audience
    - Difficulties with age appropriate friendships
    - Absence of or reduced interest in peers

Dr. Loftin would testify that the atypical behaviors category includes at least two of the following (currently observed or reported historically):

- Stereotyped or repetitive speech, motor movements, or use of objects, such as:
    - Lining up toys
    - Idiosyncratic speech, such as repeating lines from other sources
    - Repetitive motor mannerisms, such as hand flapping
- Excessive adherence to routines or resistance to change, including:
    - Extreme distress at changes
    - Difficulty transitioning
    - Inflexible, "black and white" thinking

3

- o   Rigid insistence on particular routines

- Intense preoccupation with particular topics, such as:
    - o   Perseverative interests
    - o   Strong attachment to or preoccupation with certain objects

- Unusual sensory interests or aversions that include:
    - o   Apparent indifference to pain or temperature
    - o   Adverse response to specific sounds or textures
    - o   Seeking out smell or tactile stimulation
    - o   Visual inspection/fascination with objects

Dr. Loftin would testify that consistent with best practices in the field she conducted an assessment that included interviews of Dylann Roof; investigation of his social and developmental history investigation through interviews of family members and review of educational, medical, mental health and other records; evaluation of adaptive functioning; neurodevelopmental testing (including the Autism Diagnostic Observation Schedule (ADOS-2)); psychological and neuropsychological testing; reference to the DSM-5 criteria; and review of police reports and other case-related materials. Dr. Loftin would testify that she also evaluated Mr. Roof for, and consulted with Dr. Donna Maddox about, possible psychiatric comorbidities, as there is a high rate of psychiatric comorbidity among individuals diagnosed with ASD and her observations of Mr. Roof included symptoms beyond those associated with a diagnosis of autism spectrum disorder.

Dr. Loftin would testify that based on her evaluation it is her opinion, to a reasonable degree of scientific certainty, that Mr. Roof has autism spectrum disorder and that, currently or by history, he has psychiatric symptoms that are not necessarily explained by autism spectrum disorder. These include anxiety, depression, suicidal ideation, obsessive-compulsive symptoms, disordered thinking, and psychosis (including

4

delusions of grandeur and somatic delusions). Dr. Loftin would testify that while it is too early to predict his psychiatric trajectory, Mr. Roof's symptoms appear to be consistent with a schizophrenia spectrum disorder.

If permitted to testify, Dr. Loftin would offer observations and opinions including the following about Mr. Roof's videotaped confession:

- Although the video does not provide a high quality image of Mr. Roof's face and body, it appears to reflect flattened and otherwise limited range of expression in his voice (prosody), limited eye contact, and limited and stereotyped use of gestural communication, all of which are consistent with autism. The flattened affective expression and other deficits in nonverbal communication that can be characteristic of ASD are sometimes misinterpreted as demonstrating that an individual is cold and unfeeling.

- In addition to not demonstrating emotion in his tone, Mr. Roof does not appear to be able to understand or verbalize information with emotional content. This is true when he speaks about the victims and also when he speaks about his own expectation that he was going to die. Such a deficit in a person with autism should not be mistaken as evidence of a cold and uncaring nature. There is a difference between the failure to understand something because of a brain-based difference such as autism and a deliberate indifference to human pain and suffering.

- Mr. Roof is cooperative in answering questions and willing to provide information; however his answers, while apparently truthful, reflect no awareness of the "big picture," minimal understanding of the enormity of what he has done, the emotional impact of it on others or the overall meaning of the situation he is in and its consequences. This missing the forest for the trees is characteristic of individuals with autism, who have the ability to focus intently on small details or parts of the whole but frequently struggle to derive the larger meaning in a situation.

- In his responses to questions, Mr. Roof evidences overly specific and literal or concrete use of language: e.g., when asked whether he has been to the church before, he says "well, not *in* it," apparently needing to clarify that though he did come to the church and ask someone a question, he had not entered the building. Asked if he is a white supremacist, he starts out by distinguishing between a white "supremacist" and a white "nationalist;" asked if he has "remorse," he responds by talking about "regret." While some non-autistic people can and do have a strong need for very precise language, this characteristic is a common sign of autism.

5

- Sitting stock still as Mr. Roof does for two hours prior to questioning is unusual behavior that raises mental health concerns.

- It is significant that Mr. Roof appears unable to respond appropriately to overtures at small talk initiated by the law enforcement officer at the beginning of the interrogation. Lack of social reciprocity is a brain-based characteristic of autism. The give and take of conversation can be extremely difficult for people with autism to who are, in contrast, much better able to talk about their favorite topics or to answer questions that call for providing specific factual information. Broader, more open-ended questions are much more difficult for people with autism, even if all that is called for is their opinion.

- Mr. Roof says repeatedly that he "had to" commit this crime. Individuals with autism can be extremely rigid in their thinking and their behaviors and they have difficulty with flexible problem solving. Mr. Roof's repeated statement that he "had to" commit these killings suggests an extremely rigid way of thinking. Mr. Roof also evidences rigid thinking in the way he categorizes different types of people. Rigid ways of thinking are a brain-based characteristic of autism.

- Mr. Roof's statements that he expected to die and had saved bullets to kill himself, and the fact that he appears to have had no plan for what to do in the immediate aftermath of the shooting or thereafter are evidence of mental instability, poor problem solving, depression and suicidality.

- Wearing two pairs of pants (sweatpants underneath "Dickie's") in the summer in South Carolina suggests the existence of sensory issues that could relate to autism or mental illness.

- Mr. Roof is surprised when informed he killed nine people. He wonders whether he is being lied to, says there weren't even that many people in the room. It is significant that in spite of having spent nearly an hour in their company, Mr. Roof is not aware of how many people were present at the Bible study. Research has shown that what is salient in a given situation is different for people with autism than for others and this can lead to individuals with autism focusing, for example, on things rather than people in a given situation. Along the same lines, although he is able to provide description of physical aspects of the church and of the things he brought with him (his clothing, the magazines, the bullets, the gun), Mr. Roof does not describe any of the people he interacted with.

- Although it is June, Mr. Roof thinks the month is July. Mr. Roof also dramatically underestimates the amount of time he was present at the church. This degree of disorientation in an intelligent person is a red flag and suggests confused thinking and possible deficits in executive functioning (mental processes that guide higher order cognitive processes, such as estimating the passage of time).

6

- Naivete about the likely reaction of the listener was apparent throughout the interview. Mr. Roof speaks about his ideas with a degree of ingenuousness that suggests he does not grasp how they will be received by others. Likewise, he does not seem to understand the seriousness of his situation. Interviewed about nine murders, he is reluctant to admit to using any drugs. This suggests limited awareness of others' view of the seriousness of the respective crimes.

- Mr. Roof's affect is often incongruent with the content of what he is saying. Incongruent affect is a common psychiatric symptom observed in both ASD and psychosis.

- Inappropriate laughter was common in the interview. He is observed to laugh about things that he does not appear to find funny. He laughs under three conditions in the interview. First, when others say something that he was not expecting to hear as if he is incredulous that he is being asked the question (i.e., when asked whether he disagreed with the ending of *American History X* when the character is no longer behaving in a racist fashion). As with the prior point, this is consistent with a theory of mind deficit, which is difficulty taking another person's perspective, as he is surprised that the investigators are even asking about whether he would like someone disavowing racist beliefs. Second, Mr. Roof frequently laughs at points when he feels self-conscious (i.e., at the end of the formal interview, one of the interviewers tells Mr. Roof that he is skinny and he laughs in response. In fact, he is very self-conscious about being so thin). Finally, Mr. Roof laughs in the same tone at times when there is no clear reason, such as when he confirms that he received money for his birthday. This may be a repetitive vocalization, which can be a sign of ASD. Research suggests that people with ASD laugh with a different, more vocal tone more frequently than people without ASD. Typically developing people are much more likely to alternate between vocal laughs and a range of other types of laughter sounds (e.g., breathy laughs, snorts, etc.), which are more socially engaging and effective. Mr. Roof's laughter exclusively used the vocal tone laugh and demonstrated no other forms of laughter. That is, he laughs in an autistic manner.

- Response latency and difficulty answering open-ended questions were also noted. Mr. Roof takes longer than expected to provide answers to questions that it would be expected he knows the answer to and, though it appears he is making an earnest effort to provide answers to the questions, he has particular difficulty answering open-ended questions. This may suggest a difficulty with processing verbal information or in formulating oral responses, both of which are common in even intelligent people with ASD.

- People who suffer with real disabilities can present as highly capable and mask their challenges. This is particularly true in people with high verbal ability and intact intelligence. Others hear their speech and are likely to over-estimate comprehension and ability. For Mr. Roof, the gap between his apparently adequate intelligence and poor performance in real world settings is remarkable.

7

    He has minimal employment history (briefly working for a friend of his father's), was not able to complete high school, dropped out of online school (later obtaining his GED), and was not living independently. Such a gap between potential and actual achievement is common among individuals with ASD, who have difficulty applying their intelligence and skills in real world situations.

- ASD may provide some explanation as to why racist ideas were appealing to Mr. Roof. As noted above, the rigidity of racial categories for organizing people and understanding the world may have appealed. This is a system that simplifies human interaction and renders it comprehensible. Further, Mr. Roof pursued his preoccupation with racism with an autistic intensity. It pervaded all aspects of his life. The tendency for an area of preoccupation to pervade a person's life is common in ASD.

- It is clear that Mr. Roof has an absence of social relationships. When asked how he communicates with others as he has no cell phone, Mr. Roof says "I don't." Asked about a best friend he says he doesn't have one. Lack of age appropriate relationships is a diagnostic feature of ASD. It is not typically a product of choice but rather of sustained lack of success in forming relationships because of brain-based deficits.

- Mr. Roof demonstrated excessive concern about having his photograph taken. He asks repeatedly if he has to permit the police to take his picture, which suggests extreme self-consciousness about his appearance.

- Mr. Roof does not seem able to recount a whole story with a beginning, middle and end. Rather, provides simple specific answers to specific questions calling for small chunks of information. Frequently, though he seems to be trying sincerely to answer questions, or at least not to be trying to avoid giving information, his answers reflect a lack of comprehension of why the questions are being asked.

The factors listed above summarize the testimony that Dr. Loftin would provide if she were called as a witness.

                        Respectfully submitted,

                        s/ *Sarah S. Gannett*
                        Sarah S. Gannett
                        Assistant Federal Public Defender
                        Federal Public Defender for the District of Arizona
                        850 W. Adams Street, Suite 201
                        Phoenix, AZ 85007
                        602-382-2862
                        sarah_gannett@fd.org

8

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender, District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
(336) 788-3779 - telephone
kim_stevens@fd.org

Attorneys for Dylann S. Roof

9