IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S MOTION FOR A NEW TRIAL**

The defendant, through counsel, moves for a new trial pursuant to Federal Rules of Criminal Procedure 29(c) and 33(b)(2). The Court's order of January 11, 2017, extended the time in which to file this motion through February 10, 2017. *See* Dkt. No. 875. The motion raises two issues:

(1) Whether the defendant's wholly intrastate use of the internet, the highways, a GPS navigation device, and a gun, ammunition, and tactical pouch manufactured out of state, suffices to establish that "the [obstruction of religious exercise] offense was in or affecting interstate commerce"; and

(2) Whether 18 U.S.C. §§ 247(a)(2) and 249(a)(1) require the use or attempted use of "violent physical force" as defined by the Supreme Court and the Fourth Circuit, particularly *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016), a case not addressed by the Court's order in Dkt. No. 735.

Our attention to these issues is not intended to waive others preserved over the course of the proceedings, which might be argued later. However, because these issues are

1

dispositive regarding the defendant's death sentences, a finding in his favor on this motion would resolve the case, since he would not challenge further the resulting sentences of life in prison without the possibility of release.

**I.     The defendant's wholly intrastate use of the internet, the highways, a GPS navigation device, and a gun, ammunition, and tactical pouch manufactured out of state, is insufficient to establish that "the [obstruction of religious exercise] offense was in or affecting interstate commerce".**

We do not repeat here the legal background on the Commerce Clause contained in our motion to dismiss, Dkt. No. 233 at 4-10.  Although the Court rejected the defendant's Commerce Clause challenges, the parties and the Court agree that the law requires the government to establish that the defendant's "offense was in or affecting interstate commerce."  18 U.S.C. § 247(a).  Because 18 U.S.C. § 247(a)(2) addresses *non-economic* activity, *see* Dkt. No. 233 at 6, 9-10 (contrasting, *e.g.*, animal fighting, child pornography, and drug distribution), the Court should require more than the *de minimis* and attenuated connection to interstate commerce that suffices when Congress is regulating commerce.  *See United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009) (finding child pornography statute constitutional as applied, despite local production, because camera and film had traveled in interstate commerce and production of such material is an economic activity with an effect on interstate commerce) (citing cases).

At trial, the government claimed that the defendant's use of various items connected to interstate commerce – the internet, the interstate highways, a GPS navigation device, and a gun, ammunition, and tactical pouch manufactured out of state – was sufficient to establish the interstate commerce nexus required by 18 U.S.C. §

2

247(a)(2).[1]  *See* Tr. 12/15/16 at 1196.  But the government's statement that the evidence "proved that *items involved in this case* were in interstate commerce," *id.* (emphasis added), demonstrates the insufficiency of the government's proof.  The test is not whether items involved in this case were in interstate commerce, but whether *the offense* was in or affecting interstate commerce.  *See* 18 U.S.C. § 247(b) ("The circumstances referred to in subsection (a) are that *the offense* is in or affects interstate or foreign commerce.") (emphasis added).  *Compare United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir.2005) (finding defendant's "four-state church-arson spree" to be in or affecting interstate commerce).  In fact, virtually every crime would qualify under the government's broader test because almost any item "involved in" any crime is likely to have been "in or affecting interstate commerce".

As the Court noted in denying our motion to dismiss the indictment, *see* Dkt. No. 735 at 25, the government's bill of particulars suggested it would prove a much more extensive connection between the offense and interstate commerce. It proposed to do so primarily by demonstrating that Emanuel AME itself was involved in interstate economic activities, and – presumably – that the defendant's actions affected those activities, *see* Dkt. No. 277 at ¶¶ 12-18.  *See also United States v. Terry*, 257 F.3d 356, 369 (4th Cir. 2001) (holding that church's operation of daycare facility was sufficient to establish interstate commerce nexus).  But the government did not present evidence to substantiate

---

[1] At this stage, of course, the mere existence of a jurisdictional element in the statute and the indictment is insufficient.  *Cf.* Dkt. No. 735 at 22 (denying facial challenge to indictment due to existence of jurisdictional element in statute).  The issue now is whether the government actually proved facts sufficient to establish that element.

3

this contention. Instead, it relied on a theory that the use in planning or carrying out the offense of any item with a connection to interstate commerce – no matter how attenuated – establishes that the offense itself is "in or affecting interstate commerce." In a modern world, this would set no meaningful limit on federal power. *See* Dkt. No. 233 at 9-10; *see also Alderman v. United States*, 562 U.S. 1163, 131 S. Ct. 700-01 (2011) (Scalia, Thomas, JJ, dissenting from denial of certiorari) ("This Court has consistently recognized that the Constitution imposes real limits on federal power.") (citing cases).[2] Such a result would be plainly unconstitutional.

The Court's citation to felon-in-possession law in denying the defendant's motion to dismiss is inapposite. *See* Dkt. No. 735 at 25 (citing *United States v. Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001)). The cases upholding the firearms prohibition statutes do not stand for the proposition that any offense involving a firearm necessarily implicates interstate commerce. Rather, they recognize that Congress appropriately exercised its commerce power in regulating firearm possession by certain classes of individuals because of the aggregate effect on the national firearms market from illegal possession by prohibited persons. *See United States v. Peters*, 403 F.3d 1263, 1276-77 (11th Cir. 2005) (citing cases).

---

[2] The Third Circuit put the point succinctly: "In this era of globalization where the apple at one's local supermarket may come from Chile or New Zealand, it is increasingly difficult for robberies not to fall within the scope of the Hobbs Act, whose reach is co-extensive with the broad scope of Congress's commerce power, and it is perhaps similarly uncommon for modern robberies not to involve firearms." *See United States v. Walker*, 657 F.3d 160, 184 (3d Cir. 2011).

This offense was committed entirely within the state of South Carolina. There is no evidence that any of the defendant's actions – even considering his internet use and travel to Charleston – involved more than the incidental and everyday use of instrumentalities and channels of interstate commerce that are inherent in American life in the twenty-first century. The same is true of the firearm, ammunition, and tactical pouch used in the crime. Like most items in any store in any state, these may have been made elsewhere. But they were purchased in South Carolina, in the same manner anyone might purchase an ordinary consumer item. Their use or purchase does not acquire special meaning by virtue of the jurisdictional element in § 247(a)(2). Nor does the grave crime committed with them justify federal prosecution simply because the defendant used them in committing it. The defendant's obstruction of religious exercise was an intrastate activity punishable under the general police power that our Constitution reserves to the state.

**II.     Sections 247(a)(2) and 249(a)(1) are not crimes of violence for purposes of 18 U.S.C. § 924(j), because they do not require the use or threat of use of "violent physical force" as defined by the Supreme Court and the Fourth Circuit.**

The Court's order denying the defendant's motion to dismiss the § 924(j) counts held that the predicate offenses – §§ 247(a)(2) and 249(a)(1) – qualified as crimes of violence under the "force" clause, 18 U.S.C. § 924(c)(3)(A), regardless of whether the residual clause is void for vagueness. In particular, the Court questioned how §§ 247(a)(2) and 249(a)(1) could be interpreted as lacking the element of violent physical force when § 247(a)(2) requires a finding that a person "intentionally obstructs, by force

5

or threat of force …" and § 249(a)(2) requires a finding that a person "willfully causes bodily injury …", both resulting in death. *See* Dkt. No. 735 at 31-33 (citing *United States v. Castleman*, 134 S. Ct. 1405 (2014), and *[Curtis] Johnson v. United States*, 559 U.S. 133, 140 (2010)). Fourth Circuit precedent speaks directly to this question. In *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), the Court reaffirmed its holding that causation of injury *does not* necessarily require the use of violent force:

> The government suggests that the Supreme Court's 2014 decision in *United States v. Castleman*, ––– U.S. ––––, 134 S. Ct. 1405, 188 L.Ed.2d 426 (2014), has abrogated the distinction that we recognized in *Torres–Miguel* between the use of force and the causation of injury. That strikes us as a dubious proposition. Writing for the *Castleman* majority, Justice Sotomayor expressly reserved the question of whether causation of bodily injury "necessarily entails violent force." *See* 134 S.Ct. at 1413; *see also id.* at 1414 (emphasizing that Court was not deciding question of whether or not causation of bodily injury "necessitate [s] violent force, under *Johnson's* definition of that phrase").

*McNeal* at 156 n.10. As a result, the Court may not be so dismissive of the defendant's argument that §§ 247(a)(2) and 249(a)(1) do not require the use or threat of use of "violent force".[3]

As we discussed in our motion to dismiss, because both offenses may be committed in ways that do not involve the use or threat of use of violent force, they are not predicates under § 924(c)(3)(A) and cannot support § 924(j) convictions. *See* Dkt. No. 233 at 25-28 (offering examples). Recent decisions by other courts support this

---

[3] *United States v. Evans*, -- F.3d --, 2017 WL 444747 (4th Cir. Feb. 2, 2017), does not undermine our argument. *Evans* concerned a carjacking statute that required taking by force *and violence* or intimidation (which the Court interpreted to mean threat of force and violence). *Id.* at *4. Here, § 247(a)(2) requires only "force" and § 249(a)(1) does not require force at all.

position. For example, in *United States v. Villanueva*, 191 F. Supp. 3d 178 (D. Conn. 2016), the court held that an assault statute requiring intentional causation of physical injury *did not* require violent physical force because the offense could be committed "by using emotional force to compel another person to take a cyanide pill, or by distributing anthrax through a building's air conditioning system." *Id.* at 192; *see also id.* at 196 (addressing a second, similar statute). In this context – unlike in *Castleman*, which involved 18 U.S.C. § 922(g)(9) – "the focus must be on whether the subject statute has "as an element the use ... of [violent] physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). If the bodily injury at issue may occur without the use of [violent physical] force, then force is not an element of the crime." 191 F. Supp. 3d at 195. Neither § 247(a)(2) nor § 249(a)(1) contains such an element.

    This is not the first time – nor will it be the last – in which the categorical approach has required a finding that seems at odds with the facts of the case: how could *this* crime *not* be a crime of violence? Courts have recognized the cognitive dissonance that results from the application of the law in this manner. *See, e.g., United States v. Brown*, 765 F.3d 185, 194 (3d Cir. 2014) ("No doubt, given the facts surrounding Brown's 2004 and 2005 convictions, they would appear to be 'crimes of violence' to a layperson …. But [the law] rejects that approach; the factual circumstances of the conviction are not what matter, the key is the elements of the crime."). The categorical approach remains firmly entrenched, however, and must be strictly applied. *Cf. Mathis v. United States*, 135 S. Ct. 2243, 2247-48 (2016) (noting 25-year lifespan of the categorical approach). This requires presuming the conviction rested on the least serious

7

acts that could satisfy the statute, not the actual acts, nor the likeliest acts. *See [Curtis] Johnson*, 559 U.S. at 137 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

We note that, in *Lynch v. Dimaya*, No. 15-948 (argued Jan. 17, 2017), the Supreme Court is currently considering a challenge to the vagueness of the residual clause in 18 U.S.C. § 16(b). That clause is virtually identical to the one at issue in this case. *See* Dkt. No. 233 at 31-33 (citing authority comparing the two provisions). This Court did not reach the question whether the residual clause at issue here is void for vagueness because of its ruling that §§ 247(a)(2) and § 249 (a)(1) are crimes of violence under the "force" clause (the ruling we challenge above). In light of the Supreme Court's impending decision regarding § 16(b), we request that the Court refrain from ruling on this motion until the Supreme Court issues its decision in *Dimaya*.

## **CONCLUSION**

The Court imposed on the defendant twelve sentences of life imprisonment without the possibility of release under § 249(a)(1), ten of which are to be served consecutively to each other, and none of which are challenged here. These sentences violate neither the Commerce Clause nor *Johnson* and § 924(c). The Court should vacate the remainder of the convictions and sentences for the reasons stated.

        Respectfully submitted,

        s/ *Sarah S. Gannett*
        Assistant Federal Public Defender
        Federal Public Defender for the District of Arizona
        850 W. Adams Street, Suite 201
        Phoenix, AZ 85007
        602-382-2862
        sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof

9