IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                      )<br>)<br>DYLANN STORM ROOF                     )<br>)<br>_____)  | Criminal No.  2:15-472-RMG |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL

The United States hereby responds to Defendant's Motion for a New Trial (Dkt No. 916) (hereafter "Motion").  Defendant's Motion raises no new issues that were not already fully briefed prior to his trial and correctly decided in the Court's order denying his pretrial motion to dismiss the Indictment.  Consequently, Defendant has failed to demonstrate that the interest of justice requires that the Court set aside the jury's verdict.  For the reasons explained more fully below (and in the government's prior briefing on these issues, which it requests be incorporated by reference), Defendant's motion should be denied in its entirety.

### LEGAL STANDARD

Federal Rule of Criminal Procedure 33 states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."[1]  Fed. R. Crim. P. 33.  "[A] motion for new

---

[1] Defendant also cites Federal Rule of Criminal Procedure 29(c) as a basis for his motion.  Rule 29 requires that any such motion be filed within 14 days of a guilty verdict or the discharge of the jury.  Fed. R. Crim. P. 29(c)(1).  Although Defendant requested an extension of his deadline for filing a new trial motion under Rule 33, he made no such request with regard to a Rule 29 motion for acquittal.  *See* (Defendant's Motion for a New Trial, Dkt No. 874) (requesting, with direct acknowledgement of advice and assistance of standby counsel, only an extension of the deadline for filing a new trial motion); (Order, Dkt No. 875) (granting Defendant's motion for an extension of his deadline for filing a new trial motion).  Consequently, to the extent Defendant's motion requests a judgment of acquittal pursuant to Rule 29, that request is not untimely and is not properly before the Court.  In any event, the evidence at trial amply supported Defendant's convictions.

1

trial in a capital case is governed by the same Rule 33 applicable in all criminal cases." *United States v. Johnson*, 713 F. Supp. 2d 595, 605 (E.D. La. 2010).

The decision whether to grant a new trial motion is discretionary, and "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (citation and internal quotation marks omitted); *accord United States v. Arrington,* 757 F.2d 1484, 1486 (4th Cir.1985) ("The power to grant a new trial should be used sparingly."). Granting a new trial is reserved for instances where the evidence weighs so heavily against a jury's guilty verdict that a miscarriage of justice is deemed to have occurred. *Arrington*, 757 F.2d at 1485. Where the evidence in the record is sufficient to support the jury's verdict, a Rule 33 motion must be denied. *United States v. Singh*, 518 F.3d 236, 250 (4th Cir. 2008).

## ARGUMENT

### I.     Defendant's Offense Satisfies 18 U.S.C. § 247(a)(2)'s Interstate Commerce Element

Defendant first challenges an issue he previously argued in his pretrial motion to dismiss his charges: whether there is a sufficient connection between his crimes and interstate commerce to sustain a conviction under 18 U.S.C. § 247.[2] The evidence at trial demonstrated that Defendant repeatedly and frequently used multiple channels and instrumentalities of interstate commerce (including interstate highways, an automobile, telephones and the internet) to prepare for and carry out his crimes, including scouting and researching Mother Emmanuel and other potential targets,

---

[2] Defendant's motion suggests the exclusive basis for his § 247 convictions lies in the "in commerce" aspect of § 247's interstate commerce element and the Supreme Court's Commerce Clause jurisprudence. The jury's instructions also included, without objection, the "affects commerce" basis for this element. Defendant did not argue to the jury that there was insufficient evidence to justify an "affects commerce" finding, nor has he demonstrated the trial evidence was insufficient to sustain this potential basis for his § 247 convictions.

2

traveling to and from his attack, and posting an online manifesto shortly before committing his offenses.  Additionally, goods obtained through interstate commerce (including a foreign-made gun, magazines and ammunition, and a tactical pouch to conceal them) were essential and integral to his attack.  In dismissing Defendant's pretrial challenge, the Court correctly concluded that this type of evidence was more than sufficient to demonstrate a sufficient connection between Defendant's actions and Congress's well-established power to prevent the use of the channels, instrumentalities, and goods of interstate commerce for criminal purposes.  (Order and Opinion, Dkt No. 735 at 25.)  Defendant's instant motion provides no new argument or evidence that undermines the Court's prior ruling on this issue.

Defendant's central argument once again asks the Court to focus on where he was physically located when he prepared for and carried out his crimes and to disregard the means he used to commit them.[3]  (Motion at 3 ("The test is not whether items involved in this case were in interstate commerce, but whether *the offense* was in or affecting interstate commerce.").)  This argument is as misguided now as when he first asserted it.  It is well settled that "Congress may regulate the use of the channels of interstate commerce … [and] regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, *even though the threat may come only from intrastate activities*."  *United States v. Lopez,* 514 U.S. 549, 558 (1995) (emphasis added); *see also United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998) (quoting and citing *Lopez*).  This power over the channels and instrumentalities of interstate

---

[3] To the extent Defendant argues that this Court should limit its inquiry to his final acts instead of the entire course of his criminal conduct, such limitation "severs unnaturally the offender from the offense," for "the offense is more than the last step in a sequence of acts that add up to the statutorily prohibited conduct" and includes travel and procurement of materials related to the offense.  *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005) (en banc); *see also* H.R. Rep. No. 104-621, at 7 (1996) (explaining that § 247(b) was intended to cover offenses where a defendant uses channels or instrumentalities of interstate commerce "in committing, planning, or preparing to commit the offense.").

commerce and things in interstate commerce "includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature."  *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (en banc) (citing and quoting, *inter alia*, *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 256, 258 (1964); *Brooks v. United States,* 267 U.S. 432, 436 (1925); *Caminetti v. United States,* 242 U.S. 470, 491 (1917)); *see also United States v. Horton*, 321 F.3d 476, 479 (4th Cir. 2003) ("Congress' authority to address [interstate kidnapping] falls under its power to prevent the misuse of channels of interstate or foreign commerce.").  This broad scope also applies to § 247's jurisdictional element, which extends to any conduct that falls within Congress's Commerce Clause authority.  *See* (Government's Response to Motion to Dismiss Indictment, Dkt No. 279 at 6-9) (discussing scope of § 247(b)).

Ignoring this well-established line of authority, Defendant asserts that the government should be held to a higher evidentiary standard where the subject of the offense is not itself inherently economic or commercial.  **(**Motion at 2) ("Because 18 U.S.C. 247(a)(2) addresses *non-economic* activity . . . the Court should require more than the *de minimis* connection to interstate commerce that suffices when Congress is regulating commerce.").  The flawed nature of this premise is highlighted by Defendant's inability to cite any authority that directly supports his argument.  Instead, Defendant attempts to graft principles that apply to Congress's authority to regulate intrastate activities that *affect* interstate commerce onto Congress's legally distinct, and more fulsome, power to prevent the use of channels, instrumentalities and things *in* interstate commerce to commit harm.  *E.g.*, (Motion at 2) (citing *United States v. Malloy*, 568 F3d. 166, 180 (4th Cir. 2009), which addressed only the "affects commerce" prong of Congress's Commerce Clause authority)).  None of the cases cited in Defendant's motion or his pretrial challenge to the

4

Indictment supports the proposition that Congress's authority to prevent channels, instrumentalities and goods in interstate commerce from being used for criminal purposes, or the government's burden of proving an offense's nexus to that exercise of Congress's power, hinge on or are affected by whether the underlying offense is economic or commercial in nature.  To the contrary, the federal courts have long and repeatedly upheld federal statutes and convictions that involve only the intrastate use of the channels and instrumentalities of interstate commerce and things in commerce to commit crimes that are not inherently economic or commercial.  *E.g.*, *United States v. Runyon*, 707 F.3d 475, 489 (4th Cir. 2013) (rejecting argument that the intrastate use of a facility of interstate commerce as part of a murder scheme was too attenuated to fall within Congress's Commerce Clause authority); *Ballinger*, 395 F.3d at 1226, 1229 (citing multiple statutes); *see also* (Order and Opinion, Dkt No. 735 at 21 ("Congress has authority to prohibit use of the mail to attack churches – just as it may prohibit use of the interstate highway system, national telecommunications networks, or the interstate market in firearms and ammunition to attack churches."); (Government's Response to Motion to Dismiss Indictment, Dkt No. 279 at 14-17, 21-22 (discussing more fully and citing cases).

There also is no merit to Defendant's assertion that the connection between his crimes and interstate commerce is too attenuated to satisfy any constitutionally "meaningful limit on federal power" because they involved only "incidental and everyday use" of channels and instrumentalities of interstate commerce and things in commerce "that are inherent in American life in the twenty-first century." (Motion at 4-5.)  This line of reasoning has been squarely rejected by the Fourth Circuit.  *See* (Government's Response to Motion to Dismiss Indictment, Dkt No. 279 at 15-17 (discussing and citing precedents)).  This argument also is belied in fact by the ample evidence demonstrating that Defendant's frequent and repeated use of channels, instrumentalities

and goods of interstate commerce was a fundamental and integral component of his crimes. The repeated use over a period of at least six months of interstate highways in scouting the target of a premeditated crime, and the use of those same highways to travel directly to and from that crime, is not an "incidental" use of that channel of interstate commerce. The repeated use of national telephone and internet networks to research and prepare to carry out premeditated murder is far from an "everyday use" of those instrumentalities of interstate commerce, and there certainly is nothing "incidental" about purchasing and using a foreign-based website to post a manifesto immediately prior to a crime. And, it defies credulity to contend that purchasing a foreign-made firearm, magazines, associated ammunition, and tactical pouch for the purpose of carrying out a race-motivated massacre is either an incidental or everyday use of interstate commerce that is inherent in American life in the twenty-first century.

Each of these connections to interstate commerce is sufficient to establish the sufficiency of Defendant's § 247 convictions. *See, e.g., United States v. Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001) (recognizing that, even post-*Lopez,* proof that a firearm has traveled in interstate commerce provides a sufficient interstate commerce nexus to prohibit even its mere possession by felons); *United States v. Mason*, 993 F. Supp. 2d 1308, 1316-17 (D. Ore. 2014) (rejecting as-applied commerce clause challenge to 18 U.S.C. § 249 because the defendant used a weapon that traveled through interstate commerce); *United States v. Mullet*, 868 F. Supp. 2d 618, 622-23 (N.D. Ohio 2012) (same), *rev'd on other grounds sub nom United States v. Miller*, 767 F.3d 585 (6th Cir. 2014). Moreover, the amount and nature of these connections to interstate commerce refute Defendant's assertion that upholding his convictions would permit virtually any crime to fall within Congress's Commerce Clause power. Defendant's attempt to recast his actions as merely an "incidental and everyday" use of commerce is a self-serving effort to undermine the long-

6

recognized standard that undergirds many important civil rights statutes, while declaring the federal government is powerless to hold him accountable for his premeditated, murderous attack on the peaceful members of a Bible study exercising one of the bedrock freedoms on which this nation was founded. The government urges to the Court to reject that effort once again by denying Defendant's new trial motion.

**II.     Defendant's Violations of Sections 247 and 249 Are Crimes of Violence**

The Defendant was convicted in Counts 25-33 of using a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c), (j). The predicate "crimes of violence" were his convictions on Counts 1-9 (Hate Crime Resulting in Death, 18 U.S.C. § 249(a)(1)) and Counts 13-21 (Obstruction of Exercise of Religion Resulting in Death, 18 U.S.C. § 247(a)(2)). In response to Defendant's pretrial challenge to the Indictment, the Court concluded that §§ 249(a)(1) and 247(a)(2) are "crimes of violence" under the "force" clause of § 924(c)(3). *See* (Order and Opinion, Dkt No. 735 at 26-32) (finding violations of §§ 247 and 249 are crimes of violence under § 924(c)(3)(A)).[4] Defendant's new trial motion argues that the Court's prior decision was incorrect, but presents no new arguments or evidence on this issue. For the reasons fully explained in the Court's prior decision and the government's pre-trial briefing, which the government requests be incorporated here by reference, Defendant's repetition of his prior arguments fails to demonstrate the interest of justice supports his request for a new trial.

---

[4] The Government contends, as explained in its prior briefing, that these violations also qualify as crimes of violence under the "residual" clause of § 924(c)(3). *See* (Government's Response to Motion to Dismiss Indictment, Dkt No. 279 at 65-76). As the Court conclusively determined that Defendant's §§ 247 and 249 charges were crimes of violence under the "force" clause, § 924(c)(3)(A), it properly decided that it need not reach whether they also would qualify under the "residual" clause, § 924(c)(3)(B). *See* (Order, Dkt No. 735, at 29, 32). For this reason and because Defendant's residual clause arguments are reviewable on appeal, there is no reason to withhold a resolution of this motion pending the Supreme Court's decision in *Sessions v. Dimaya*, No. 15-1498 (argued Jan. 17, 2017), which involves a different statute.

7

**CONCLUSION**

The evidence at trial was more than sufficient to satisfy the interstate commerce element of Defendant's 18 U.S.C. § 247 convictions, and his civil rights offenses qualify as crimes of violence under both of the definitions of that term contained in 18 U.S.C. § 924(c). Consequently, Defendant has not demonstrated that the interest of justice requires that this Court disregard the verdict that the jury duly considered and returned in this case.

Respectfully submitted,

BETH DRAKE
UNITED STATES ATTORNEY

T.E. WHEELER, II
Acting Assistant Attorney General
U.S. Department of Justice

By s/Stephen J. Curran

| | |
|---|---|
| Julius N. Richardson | Stephen J. Curran |
| Nathan Williams | Mary J. Hahn |
| Assistant United States Attorneys | Trial Attorneys |
| 1441 Main Street, Suite 500 | U.S. Department of Justice |
| Columbia, SC 29201 | Civil Rights Division |
| (803) 929-3000 | 601 D Street NW, Rm 5200 |
| | Washington, DC 20579 |
| | (202) 514-3204 |

Richard E. Burns
Deputy Chief
Capital Case Section
Criminal Division
U.S. Department of Justice

February 21, 2017