IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**<u>DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
TO HIS MOTION FOR A NEW TRIAL</u>**

The defendant, through counsel, replies to the government's response to his motion for a new trial. Deciding this motion requires the Court to address two questions – which, though minimized by the government – present difficult legal issues, which may ultimately reach the United States Supreme Court:

- First, whether there is *any* line that may be drawn between conduct that involves or affects interstate commerce and conduct that does not – a question other courts have recognized to be challenging in similar cases; and

- Second, whether an offense that does not necessarily involve *violent* force or threat of *violent* force is nonetheless a crime of violence under 18 U.S.C. § 924(c)(3)(A) – a question on which other courts have ruled in favor of the defense since the filing of our motion just weeks ago.

The government is correct that these issues have been extensively briefed, and we agree that the Court should consider all the briefing by both sides over the course of the

1

proceedings. We have, however, raised new points based on the trial evidence and recent case law that also require consideration.

### I. The government's approach to the interstate commerce element in this case is inconsistent with a limited federal commerce power and with the statutory language of § 247(a)(2).

The federal commerce power is a limited one, predicated on a general reservation to the states of authority to regulate criminal activity. *See Taylor v. United States*, -- U.S. --, 136 S. Ct. 2074, 2085 (2016) (recognizing "the limited nature of the powers that the Constitution confers on Congress" and the need to "keep[] Congress from exercising a general police power"). The government offers no meaningful way to distinguish among cases that should be prosecuted in federal court and those that should be prosecuted in state court. Its proposed test – that *any case* involving interstate commerce *in any way* should be prosecuted in federal court – is contrary to constitutional principles and to precedent. The law requires the Court to decide whether the offense was in or affecting interstate commerce. 18 U.S.C. § 247(a)(2).

Whatever Congress may or may not regulate in theory under the Commerce Clause, *see* Dkt. 929 at 3-4 (arguing that Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce"), Congress chose in § 247(a)(2) to regulate the obstruction of religion by force in or affecting interstate commerce. The plain meaning of that language controls in determining the statute's reach. *See* Norman Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 46.1 (7th ed. 2016). *In United States v. Ballinger*, 395 F.3d 1218 (11th Cir.2005) (en banc), discussed in our pretrial pleadings, the Eleventh

2

Circuit recognized the difficulty of capturing cases like this one in statutes like § 247(a)(2). There, a divided court found that a multi-state arson spree met an interstate commerce element identical to the one here. But Mr. Roof's purely intrastate activity surely does not reach that threshold, for the reasons explained previously.

The government's attempt to reframe our argument regarding the defendant's shopping and use of the roads as suggesting that the defendant's *crime* was "incidental" and "everyday", Dkt. No. 929 at 6, is obviously a distortion of our point. That point is that in order to buy anything or to go anywhere in the United States these days, one must travel on interstate roads and purchase items that have traveled in interstate commerce. Permitting federal jurisdiction to turn on such facts – *when they are not the charged offense* – renders the commerce power limitless, in violation of the Constitution.[1] That is the import of cases like *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009), which emphasizes economic activity, and of our explanation why simple possession of a gun in the felon-in-possession context is different than in this case. *See* Dkt. 916 at 2, 4.

For these reasons, we maintain that the defendant's obstruction of religious exercise was an intrastate activity punishable under the general police power that the Constitution reserves to the state.

---

[1] For this reason, the government's comment that the defense argument would undermine the foundation of bedrock civil rights statutes, *see* Dkt. No. 929 at 6-7, is misplaced. The statutes to which we assume the government refers address activities that directly implicate interstate commerce, *e.g.*, public accommodations. Other civil rights statutes, like the hate crimes statute in this case, 18 U.S.C. § 249(a)(1), do not rely on interstate commerce to establish jurisdiction.

**II.    The Fifth Circuit recently adopted the defense position regarding *United States v. Castleman*, -- U.S. --, 134 S. Ct. 1405 (2014), strengthening our argument that neither § 247(a)(2) nor § 249(a)(1) is a crime of violence under 18 U.S.C. § 924(c)(1)(A).**

The government's assertion that "the defense … presents no new arguments or evidence" on the validity of the 18 U.S.C. § 924(j) convictions under *Johnson v. United States*, -- U.S. --, 135 S. Ct. 2551 (2015), *see* Dkt. No. 929 at 7, is incorrect. Our motion both argued the flaws in the Court's opinion denying the motion to dismiss and offered new precedent in support of the defense position. The government did not respond. Nor did the government cite to the Court new authority on the central point in this litigation: the definition of "force" under *United States v. Castleman*, 134 S. Ct. 1405 (2014). The Court should decline the government's invitation to sidestep this issue.

On the same day that the defense filed the motion for new trial, the Fifth Circuit decided *United States v. Rico-Mejia*, -- F. App'x --, 2017 WL 568331 (Feb. 10, 2017). In *Rico-Mejia*, as it did here, the government argued that *Castleman* – which held that a defendant's guilty plea to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child constituted "the use of physical force" required for a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33)(A) – controlled the definition of "force" in another context (here, § 924(c)(3)(A)), requiring a finding that the offenses in this case were "crimes of violence" for purposes of § 924(j). The Fifth Circuit rejected that argument:

> By its express terms, *Castleman's* analysis is applicable only to crimes categorized as domestic violence, which import the broader common law meaning of physical force. *Castleman* is not applicable to the physical force requirement for a crime of violence, which "suggests a category of violent,

4

> active crimes" that have as an element a heightened form of physical force that is narrower in scope than that applicable in the domestic violence context. 134 S. Ct. 1411 n.4.

*Rico-Mejia*, 2017 WL 568331, at *3. In doing so, the Fifth Circuit joined the Fourth Circuit, which also limits *Castleman* to its context. *See United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016).

*Rico-Mejia* also addresses the point made in *United States v. Torres-Miguel*, 701 F.3d 165, 168 (4th Cir. 2012), that "of course, a crime may result in death or serious injury without involving use of physical force". *See* 2017 WL 568331, at *2 (collecting cases). This is an argument we developed in both our motion to dismiss, *see* Dkt. No. 233 at 26-28, and – citing more recent authority – in the motion for new trial, *see* Dkt. No. 916 at 6-7. Neither the government nor the Court has addressed our *Johnson* argument without reliance on *Castleman*, which it is now clear is inapposite.

In light of the rapidly developing law on crimes of violence, it would be especially prudent for the Court to await the Supreme Court's decision in *Sessions v. Dimaya*, No. 15-1498 (argued Jan. 17, 2017), before ruling on this issue.

5

## CONCLUSION

For these reasons, we maintain that the Court should vacate the § 247(a)(2) and § 924(j) convictions, leaving the defendant to serve his sentences of life without the possibility of release under § 249(a)(1).

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof