IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 2:15-cr-00472-RMG |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY** |
| DYLANN STORM ROOF, | |

The United States hereby responds to Defendant's Motion for Discovery (Dkt. No. 1044). Defendant's motion is premature because he has not yet filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, which is alone sufficient grounds on which to deny the motion. Should the Court decide the motion on its merits, the motion should be denied because Defendant has failed to establish good cause for the Court to authorize discovery.

Defendant bases his request for discovery solely on the vague and conclusory assertion that the records might support a claim that his trial defense team (which included two experienced learned counsel) provided ineffective assistance because they "failed to hire the appropriate experts and to understand [his] impairments in order to present them to the Court." (Dkt. No. 1044-1 at 3). The motion fails to explain how counsel was ineffective for not identifying the impairments, how the requested discovery has any bearing on the assessment of these impairments, or whether, despite his consistent and vehement opposition to the presentation of mental health mitigation evidence, Defendant would have changed his decision to represent himself at trial or been willing to present evidence of these impairments at trial. The motion even fails to identify the alleged impairments—which apparently went undetected not only by experienced capital defense counsel

but also by the numerous experts retained by the defense and the neutral evaluator appointed by this Court. Such vague assertions do not establish good cause for the discovery that Defendant seeks. The United States requests that the Court deny the motion in its entirety.

## I.     OVERVIEW OF RELEVANT PROCEDURAL HISTORY

### A. Relevant Procedural History

Defendant was convicted on nine counts of hate crimes resulting in death, three counts of hate crimes involving an attempt to kill, nine counts of obstruction of exercise of religion resulting in death, three counts of obstruction of exercise of religion involving an attempt to kill and use of a dangerous weapon, and nine counts of use of a firearm to commit murder during and in relation to a crime of violence. (Dkt. No. 817 at 1-4). The jury imposed a sentence of death on all capital charges. (Dkt. No. 871 at 18). Defendant's conviction and sentence were affirmed on appeal, *see United States v. Roof*, 10 F.4th 314, 331 (4th Cir. 2021), and the Supreme Court denied his petition for writ of certiorari on October 11, 2022.

Title 28 U.S.C. § 2255(f) imposes a one-year statute of limitations, which would have required Roof to file any § 2255 motion by October 10, 2023. The Government has previously consented to numerous extensions of this deadline, tolling the statute of limitations by more than a year-and-a-half. (Dkt. Nos. 1019, 1029, and 1034). The parties disagree about the applicable filing deadline; the Government's position is that the deadline is April 18, 2025. (*See* Dkt. Nos. 1039, 1040).

On February 25, 2025, Defendant filed the instant motion for discovery (Dkt. No. 1044), requesting discovery of records from the Lexington County Sheriff's Department, audio and video recordings from his federal pretrial and trial proceedings, interview notes and other records that he contends are in the possession of the FBI. (Dkt. No. 1044-1 at 1-2).

2

**B. Overview of Issues Related to Defense Counsel's Investigation of Defendant's Background and Mental Health Conditions.**

Before trial, counsel for Defendant filed several notices under Rule 12.2(b)(2) indicating their intent to introduce expert evidence relating to "mental disease or defect or any other mental condition bearing on the issue of punishment." (Dkt. No. 245). Although the Government is not privy to all of the experts with whom trial defense counsel consulted and all of the background information they obtained, defense counsel's filings made clear that they were actively and exhaustively investigating his background and developmental history and were consulting with a variety of experts to discover any mental health conditions that he might have been experiencing. The record alone shows defense counsel consulted: (1) a forensic psychiatrist, who conducted clinical interviews of Defendant; (2) a neuropsychologist, who conducted a number of neuropsychological tests; (3) a psychologist specializing in neurodevelopmental disorders, who conducted clinical interviews and administered several tests on Defendant; (4) a social worker who would provide a "biopsychosocial history and assessment based on interviews and record review"; (5) a pediatric neurologist and geneticist, who performed genetic studies on Defendant and his parents; and (6) an expert on living with autism spectrum disorder. (Dkt. Nos. 245, 367, 471; *see also* Def. Supp. Rule 12.2 Notice).

As this Court is well aware, in November 2016, Defendant discovered that his trial counsel planned to present evidence of his alleged mental health conditions. Upset by this discovery, he wrote a letter to the prosecution team, accusing his counsel of misconduct. The Court questioned him about the letter, and Defendant affirmed that he understood counsel's intention in presenting certain mental health evidence was to help him but stated that he would rather die than present that evidence because it would "discredit[] why I did the crime." (Dkt. No. 556 at 15).

3

Defense counsel then moved for a competency hearing, which this Court granted. The Court also appointed a renowned psychiatrist, Dr. James Ballenger, as a neutral evaluator to examine Defendant. Dr. Ballenger met with Defendant three times and reviewed the results of various tests administered to Defendant and voluminous records related to Defendant's medical history, schooling, childhood and adolescence, and developmental history. (Dkt. No. 648 at 2-8, 20-43). Dr. Ballenger concluded that "there is almost no evidence . . . that the Defendant has a psychotic process." (Dkt. No. 648 at 48). During the two-day competency hearing, Dr. Ballenger testified about his conclusions and Defendant's counsel presented live testimony from three witnesses—a forensic psychiatrist (Dr. Donna Maddox), who had met with Defendant nine times for a total of about twenty-five hours; a psychologist (Dr. William Joseph Stejskal), who met with Defendant over the course of two days; and an autism expert (Dr. Laura Carpenter). Defendant's trial counsel also submitted declarations from other experts, including a second autism expert (Dr. Rachel Loftin), who had met Defendant on three occasions, and a psychologist (Dr. John F. Edens), who reviewed personality test results that Dr. Ballenger considered as part of his evaluation. (Dkt. No. 656; 707); *see also Roof*, 10 F. 4th at 336-38.

The Court also questioned Defendant and found that "he spoke to the Court with clear and coherent language and thoughts" and that "[h]is presentation and demeanor suggested to the Court no psychosis or severe mental distress." (Dkt. No. 656 at 19). Based on all of the evidence, including the Court's own observations, the Court found Defendant competent to stand trial.

Defendant moved to represent himself at trial. The Court held a *Faretta* hearing and again had the opportunity to assess Defendant, finding him "alert, focused, and confident." (Dkt. No. 691 at 7; *see also id.* at 9 (noting that the Court had observed "Defendant's courtroom interactions

4

over several weeks")).  The Court granted Defendant's motion to represent himself and appointed his defense team as standby counsel.

Defendant represented himself during *voir dire*, and, as this Court found, he consulted with standby counsel and successfully made motions to strike certain jurors.  (Dkt. No. 920 at 105, 106). After jury selection, Defendant requested that counsel be reinstated for the purposes of the guilt phase, and the Court granted his request.  After he was convicted, Defendant reasserted his right of self-representation for the penalty phase.  Standby counsel again moved to challenge Defendant's competency, and the Court ordered a second competency hearing.  The Court reappointed Dr. Ballenger to examine Defendant, and Dr. Ballenger found no material change in Defendant's competency to stand trial or to represent himself.  (Dkt. No. 881 at 8-9).

Standby counsel submitted several written reports, including reports by Dr. Maddox and Dr. Loftin and a new expert, Dr. Paul Moberg.  (Dkt. No. 832-1, 832-2, 832-3).  Dr. Moberg conducted a clinical and diagnostic interview of Defendant and administered a series of neuropsychological tests and found, among other things, "mild frontal system dysfunction" and "craniofacial dysmorphology."  (Dkt. No. 832-2 at 10-11).

Collectively, the reports, declarations, and testimony from the two competency proceedings established that at least four defense-retained experts (Maddox, Loftin, Stejskal, and Moberg) personally met with and examined Defendant; that defense experts administered a wide variety of tests to evaluate Defendant and his possible impairments; that at least two experts (Maddox and Loftin) personally interviewed several of his family members; and that one or more members of the trial defense team conducted additional "social history" interviews of Defendant's family members and acquaintances and created genograms and a "social history chronology" of Defendant.  *See, e.g.*, (Dkt. No. 832-1 at 2, 57-79; Dkt. No. 832-2 at 2-3; Dkt. No. 832-3 at 2-3,

23-42). The expert reports also make clear that Defendant's counsel had conducted extensive research and collected voluminous records about Defendant's life and background—including FBI records, interviews, medical records, school records, jail records, and court records—and provided those records to the defense experts for their review and consideration. *See, e.g.*, (Dkt. No. 832-1 at 2, 57-79; Dkt. No. 832-2 at 2-3; Dkt. No. 832-3 at 2-3, 23-42).

Finally, Defendant's performance during the competency proceeding demonstrated that he had thoroughly reviewed and understood the expert reports and was very capable of cross-examining witnesses; indeed, his cross examination of Dr. Ballenger led Dr. Ballenger to agree that an alternative diagnosis could be a "better" match for Defendant's traits. (Dkt. No. 881 at 10-14). This Court found that Defendant "demonstrated an aptitude for witness cross-examination that is extraordinary for a *pro se* litigant" and concluded: "[I]f this Defendant were incompetent to represent himself, almost no defendant would be competent to represent himself." (*Id.* at 7, 17). The Court found that "Defendant's continued resistance to mental health mitigation evidence continues to arise out of his political ideology, rather than any form of mental disease or defect." (*Id.* at 17).

## II.     ARGUMENT

Defendant's motion for discovery should be denied because it is premature and because he has failed to establish good cause for any of the records he seeks.

### A.     Standard for discovery in § 2255 proceedings

Petitioners seeking relief under § 2255 are not entitled to discovery as a matter of course. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, they must obtain leave of the court to conduct discovery, which may only be granted for "good cause." Rule 6(a) of the Rules Governing Section 2255 Proceedings. The "good cause" standard for discovery in Section 2255

proceedings is based on the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286, 290 (1969), where the Supreme Court held that a district court may authorize discovery in habeas proceedings under Section 2254 where a "petition for habeas corpus . . . establishes a prima facie case for relief . . . ."  The Supreme Court later reaffirmed this standard, noting that Rule 6 of the Rules Governing Section 2254 Proceedings was meant to be consistent with *Harris*.  *See Bracy*, 520 U.S. at 908-09; *see also* Advisory Committee's Note to Rule 6 of the Rules Governing Section 2254 Proceedings.  In *Bracy*, the Supreme Court held that discovery is warranted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 908-09.  The Fourth Circuit has held that the standard for discovery in § 2254 proceedings as articulated in *Harris* and *Bracy* appropriately clarifies the requirements of the "good cause" standard as applied to discovery requests in § 2255 proceedings.  *See United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004) (finding that the district court properly applied the *Harris* and *Bracy* standard to a motion for discovery in a § 2255 proceeding); *see also Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000).  Thus, for "good cause" to be shown, the petitioner must present "specific allegations" that provide the court with a reason "to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."

### B.    Defendant's motion is premature

Defendant is not entitled to discovery before he files his motion under § 2255. *See United States v. Cuya*, 964 F.3d 969, 971-72 (11th Cir. 2020) ("A prisoner is not entitled to file a motion for discovery—of transcripts, indictments, search warrants, or other records—before filing a § 2255 motion."). Defendant fails to cite a single case where any court has authorized the type of prefiling discovery he seeks here. Conversely, numerous courts, including courts within this circuit, have routinely denied as premature discovery motions made before the filing of a petition under § 2255. *See, e.g., United States v. Yang Chia Tien,* 638 F. App'x 19, 25 (2d Cir. 2015) (finding the movant was "not entitled to discovery because the right to discovery for a § 2255 petition arises only after the petition is filed, and [the movant] never filed one"); *Umana v. United States*, No. 3:08CR134-2, 2016 WL 11957588, at *1 (W.D.N.C. Sept. 6, 2016) ("There is no pre-motion discovery in a Section 2255 case[.]") (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)); *United States v. Moss*, No. C/A 8:05-0338-GRA, 2008 WL 4442613, at *1 (D.S.C. Sept. 25, 2008) (request for discovery was improper at the time it was filed "because the movant ha[d] not filed a habeas petition.").[1] This Court should do likewise for several reasons.

First, a criminal defendant who is preparing to file a motion to vacate his sentence under § 2255 is in a "prelitigation" posture because a § 2255 motion initiates an independent proceeding.

---

[1] *See also, e.g.*, *Romero Carranza v. United States*, No. 1:13CR230-2, 2016 WL 7650601, at *2 (M.D.N.C. Aug. 16, 2016) ("Ordinarily, a petitioner cannot conduct discovery until after a habeas corpus petition or motion to vacate a sentence has been filed, so that the Court can consider the claims and relevant factual allegations in determining the propriety of discovery."), *report and recommendation adopted,* No. 1:13CR230-2, 2016 WL 7650602 (M.D.N.C. Sept. 23, 2016) (finding request for discovery filed before a pending motion for relief under § 2255 was premature); *United States v. Lane,* No. 6:06-CR-00992, 2008 WL 11460687, at *1 (D.S.C. Sept. 12, 2008) (denying a motion to obtain trial counsel's files before the filing of the § 2255 motion because the movant was not entitled to go on a "fishing expedition."); *United States v. Faulcon*, No. 1:17-CR-10106-JDB-1, 2021 WL 4888330, at *1 (W.D. Tenn. Oct. 19, 2021) (denying a motion for discovery filed prior to the filing of a § 2255 motion); *United States v. Johnson*, No.

*See Cuya*, 964 F.3d at 972.  Discovery in a § 2255 proceeding is governed by Rule 6 of the Rules Governing Section 2255 Proceedings, which applies only to "a motion *filed* in a United States district court under 28 U.S.C. § 2255."  Rule 1 of the Rules Governing Section 2255 Proceedings (emphasis added).  Thus, until the petition is actually filed, no § 2255 proceeding exists for which discovery can be sought.  Indeed, a district court lacks jurisdiction to even extend the time for the filing of a § 2255 petition under an equitable tolling theory before the petition has actually been filed.  *See United States v. White*, 257 F. App'x 608, 609 (4th Cir. 2007).

Individuals in a prelitigation posture have no avenue for discovery under any other Federal Rule of Procedure.  There is no right to obtain discovery prior to filing a well-pleaded complaint under the Federal Rules of Civil Procedure.  *See Cuya*, 964 F.3d at 973.  Nor is there a right to preindictment discovery in a criminal action.  *See In re Possible Violations of 18 U.S.C. §§ 201, 371*, 491 F. Supp. 211, 214 (D.D.C. 1980) ("[Criminal Procedure] Rule 16(a)(1)(A) applies only to defendants; it governs discovery of evidence after the return of an indictment.").  In the absence of any authority for pre-filing discovery in any context, the Court should deny Defendant's motion.

Second, the determination of good cause necessarily requires this Court to evaluate the entire motion to determine whether specific allegations show reason to believe that Defendant "may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Roane*, 378 F.3d at 403 (quoting *Bracy*, 520 U.S. at 908-909).  As the Eleventh Circuit explained, a court "cannot determine whether there is 'good cause' for a discovery request" or evaluate the "propriety" of the proposed request "until a § 2255 has been filed." *Cuya*, 964 F.3d at 974.  Courts

---

CR 08-374, 2017 WL 3034928, at *2 (W.D. Pa. July 18, 2017) ("Without a pending § 2255 motion, the court cannot determine if good cause exists to allow [the movant] to conduct discovery."); *United States v. Lawrence*, No. 2:05-CR-011, 2015 WL 7570515, at *3 (S.D. Ohio Nov. 25, 2015) ("federal courts do not have authority to order pre-petition discovery.").

can often ascertain that a defendant is not entitled to relief from the face of the petition itself. *See, e.g., United States v. Terry*, 366 F.3d 312, 314 (4th Cir. 2004) (holding that an evidentiary hearing was unnecessary where relief was not warranted even if the petitioners' evidence was believed). Were prefiling discovery available, defendants with facially weak claims would have a significant incentive to preview their claims in vague and general terms (as has been done here) and then try to get as much discovery as possible before filing their petition and exposing their true position to the Government and the Court. Such a practice, however, places the Government and the Court in the unfair position of trying to guess what Defendant's ultimate arguments may be, which is yet another reason why courts appear to have rejected this practice.

The nature of the claims Defendant previews in his motion render discovery inappropriate at this juncture. The only basis for relief proffered by Defendant is ineffective assistance of counsel (Dkt. No. 1044-1 at 4), which requires a showing both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that such deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Davis v. United States*, 2:16cr-381-RMG, 2021 WL 1561553 at *2 (D.S.C. Apr. 21, 2021) (holding that courts "must apply a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance," and that "a failure of counsel to raise every conceivable claim or argument is not a basis to find ineffective assistance") (internal quotation marks omitted). The extent to which Defendant may be able to demonstrate that he is entitled to relief on those claims will therefore turn on the Court's review of Defendant's specific allegations of ineffective assistance against the totality of the evidence of his counsel's performance and the evidence introduced against him at trial and sentencing, an impossible task in the absence of the petition itself. *See Donald v. Spencer*, 656 F.3d 14, 16 (1st Cir. 2011).

10

Discovery is also inappropriate for claims that could be barred by limitations that exist on claims raised on collateral review, which Defendant does not even purport to address in his motion. *See United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (applying a procedural bar to certain claims on collateral review). The only basis for discovery asserted by Defendant is ineffective assistance of counsel. Yet the viability of an ineffective assistance claim is particularly doubtful in this case given that Defendant chose to represent himself during the penalty phase of the trial. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("A defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Indeed, in light of Defendant's steadfast opposition to presenting certain mental health diagnoses, despite the repeated warnings of his counsel and this Court, and his knowing decision to represent himself during the penalty phase, it is entirely unclear how he could satisfy the *Strickland* standard.

These concerns illustrate why a proper evaluation of the good-cause standard for discovery requires that Defendant first file his motion under 28 U.S.C. § 2255. To determine whether good cause exists, the Court must consider the nature and scope of Defendant's claims and their viability as a matter of law and procedure, and it simply cannot do so before the petition has been filed.

Finally, the bar on pre-filing discovery prevents defendants from engaging in fishing expeditions. *See Cuya*, 964 F.3d at 974. This consideration is particularly relevant to Defendant's motion. While Defendant claims that his allegation of ineffective assistance of counsel is not speculative, the only basis noted for asserting ineffective assistance is that Defendant and his attorneys ultimately disagreed about how to mount his legal defense.[2] However, a mere

---

[2] To the extent that Defendant appears to disagree with this Court's conclusion that he was able to adequately represent himself (Dkt. No. 1044-1 at 4) (asserting that Defendant had a "marked inability" to engage in the tasks of self-representation), this Court thoroughly examined his

disagreement over trial strategy—especially where experienced capital counsel determined that it was in Defendant's best interest to present mental health mitigation evidence—does not constitute ineffective assistance of counsel.  *See Davis*, 2021 WL 1561553 at *2; *see also* (Dkt. No. 556 at 26) (trial defense counsel stating to the Court that he believed that it was "in [Defendant's] best interest" to assert a mental health defense); (Dkt. No. 707 at 101) (Court noting that "I think any competent counsel would insist on asserting a mental health defense in this case"); (Dkt. No. 699 at 5-6) (holding that "[a] defendant may not direct his counsel to conduct a capital case in an unprofessional manner by, for instance, failing to present to the jury evidence that, in counsel's professional judgment, may mitigate the defendant's crime and suggest that death is an inappropriate sentence for the defendant").

Defendant's motion fails to explain what trial defense counsel might have missed in their investigation or how they might have better represented him. Defendant argues that he was "forced to represent himself" because his "[t]rial counsel sought to present mental health evidence over [his] objections and without his consent," then claims in the same paragraph that his trial counsel "failed to understand [his] impairments and failed to present them to this Court." (Dkt. No. 1044-1 at 4).  The motion is notably silent about whether Defendant even would have agreed to present evidence of the "impairment" to the Court; absent such agreement, Defendant cannot claim prejudice as required by *Strickland*.[3]  The lack of specificity suggests that Defendant is casting

---

capacity for self-representation on two separate occasions and concluded that he was competent to represent himself, and this Court's findings were affirmed on appeal.  Proceedings brought under § 2255 are not a vehicle for Defendant to seek to relitigate those findings.

[3]  Indeed, even after he was sentenced to death on eighteen capital counts, Defendant attempted to fire his appellate counsel because he remained steadfast in his opposition against the presentation of mental health claims on his behalf.  *See, e.g., United States v. Roof*, No. 17-0003, Doc. No. 109, at 1 (4th Cir. Mar. 3, 2020).

about in search of facts to substantiate a claim of ineffective assistance of counsel. Defendant is not entitled to engage in this type of fishing expedition, and the Court should not allow him to do so.

Against the weight of substantial authority rejecting pre-filing discovery and the compelling legal and practical considerations these decisions raise; Defendant simply maintains that the decisions are not binding on this Court. (Dkt. No. 1044-1 at 4). And in place of contrary authority, Defendant argues that pre-filing discovery is not explicitly prohibited by Rule 6 of the Rules Governing Section 2255 Proceedings and that the nature of § 2255 proceedings necessitate such discovery. (Dkt. No. 1044-1 at 6-10). These arguments are unpersuasive.

First, the assertion that Rule 6 does not explicitly forbid pre-filing discovery ignores Rule 1 of the Rules Governing Section 2255 Proceedings, which states that "these rules" (which would naturally include Rule 6) govern "a motion *filed* in a United States district court under 28 U.S.C. § 2255." (emphasis added). Under the plain text of Rule 1, all the rules governing § 2255 proceedings, including Rule 6, apply only to a motion that has been filed. This approach makes sense because, as noted above, no § 2255 proceeding exists until the motion is filed.

Defendant also claims that Rule 6 only requires courts to review the proposed discovery requests, not the motion. (Dkt. No. 1044-1 at 8-9). That argument is clearly belied by the case law. As discussed above, to determine "good cause," a court must necessarily evaluate the § 2255 claims and their viability, and whether the requested discovery could lead to the development of facts that would support viable claims. The lack of an explicit command to review the motion before ordering discovery in no way allows pre-filing discovery.[4]

---

[4] Defendant's citation of Rules 7 and 8 is inapposite. Both of these rules require the court to first determine whether the motion can be summarily dismissed based on the record at the time of filing; only after that determination can the court expand the scope of the record by ordering

Defendant further argues that the distinction between proceedings under § 2254 and § 2255—specifically the fact that a § 2255 proceeding is the last opportunity for a federal prisoner to develop facts to support a post-conviction claim—somehow expands the timing and scope of permissible discovery. This argument is misplaced and obfuscates the purpose of habeas review and the unique features of § 2255 proceedings. As the Supreme Court has observed, "[t]he trial 'is the main event at which a defendant's rights are to be determined' . . . and not simply a tryout on the road to appellate review.'" *Davila v. Davis*, 582 U.S. 521, 531 (2017) (citing *McFarland v. Scott*, 512 U.S. 849, 859 (2005) and *Freytag v. Commissioner*, 501 U.S. 868, 895 (1991)).

The purposes of habeas review are far more limited. Section 2254 proceedings seek to correct state convictions and sentences obtained in violation of the Constitution, laws, or treaties of the United States. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As a result, federal courts are generally restricted to the state court record. *Id*. at 181-82. However, this restriction on § 2254 proceedings in federal court does not mean that prisoners seeking post-conviction review in state courts are given unfettered discovery. Indeed, most states restrict discovery and factual development for state prisoners in much the same manner as Rule 6 does for federal prisoners. *See, e.g.*, S.C. CODE ANN. § 17-27-150 (discovery allowed in South Carolina post-conviction proceedings only by leave of court upon showing of good cause); *see also Russell v. Warden, Lee Corr. Inst.,* No. CV 9:14-4035-JMC-BM, 2015 WL 13734650, at *10 (D.S.C. Oct. 30, 2015),

---

additional materials and an evidentiary hearing. These rules simply have no bearing on whether initial discovery can be obtained before the motion is even filed. Just as civil plaintiffs may engage in discovery after the filing of a complaint and before motions for summary judgment, Rule 6 governs discovery during the period between the filing of the § 2255 motion and the court's final determination of whether to summarily dismiss the motion. However, because the § 2255 discovery must be relevant to specific allegations that, if true, could demonstrate a basis for relief, the court must engage in at least an initial review of the motion to determine if "good cause" exists.

*report and recommendation adopted sub nom. Russell v. Reynolds*, No. 9:14-CV-04035-JMC, 2016 WL 1165408 (D.S.C. Mar. 25, 2016) (noting that a South Carolina state post-conviction petitioner has no right to discovery absent a judge finding good cause exists). Thus, while any factual development in § 2254 proceedings typically take place in state courts, it is inaccurate to suggest, as Defendant does, that state post-conviction proceedings provide the wide latitude for discovery that he seeks here.

Further, § 2255 proceedings are distinct from § 2254 proceedings in that a § 2255 motion is typically resolved by the same judge that conducted the movant's trial in the first instance. *See* Rule 4(a) of the Rules Governing Section 2255 Proceedings. For that reason, the Supreme Court has observed that a "judge's recollection of the events at issue may enable him summarily to dismiss a § 2255." *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977). A district judge's decision not to hold an evidentiary hearing for § 2255 proceedings "is generally respected as a sound exercise of discretion." *United States v. Baxter*, 761 F.3d 17, 25 n.5 (D.C. Cir. 2014). The possibility of summary dismissal counsels strongly in favor of holding discovery in abeyance until the motion is filed so that this Court can determine whether it can resolve Defendant's claims under Rule 4(b) without ordering discovery.

Finally, Defendant's claim that he may forfeit potential claims that would come to light after discovery is unpersuasive. Defendant is not barred from asserting his ineffective assistance of counsel claims with specific allegations, obtaining discovery upon a finding of good cause, and potentially amending his petition based on the facts obtained through discovery, assuming the amendments relate back to his original claims. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (applying the principles of Fed. R. Civ. P. 15(c) to a request to amend a § 2255 motion). Defendant has had well over two years to diligently investigate potential claims, and the

rules do not allow him to engage in the type of fishing expedition that he seeks through this discovery motion. *See Cuya*, 964 F.3d at 974.

Defendant is not entitled to pre-filing discovery under the Rules Governing Section 2255 Proceedings or under relevant case law. Instead, the weight of authority bars pre-filing discovery in § 2255 proceedings. The Court should therefore deny Defendant's motion.

### C.     Defendant has not shown "good cause" for discovery

Even if Defendant could demonstrate that pre-filing discovery was allowed under the rules, the Court should still deny the motion because Defendant has not established "good cause" for authorizing the discovery that he seeks.

The only basis for habeas relief proffered by Defendant is a claim of ineffective assistance of counsel. (Dkt. No. 1044-1 at 4). The crux of Defendant's ineffective assistance claim appears to rest on three conclusory assertions: (1) that experienced capital counsel was somehow unreasonably deficient in their investigation of his background and thus failed to recognize unnamed "impairments"; (2) that the requested records would establish those unnamed impairments or other mitigating evidence about his background that was not already known to defense counsel; and (3) that there was prejudice.

Yet the motion fails to explain the relevance of these documents and ignores the numerous interviews their experts and other members of the defense team conducted; the voluminous records about his background that they obtained; and the fact that neither Dr. Ballenger, who twice evaluated Defendant, nor the defense experts identified these unidentified impairments. Nor does the motion address whether the information sought was already known to defense counsel, nor does it explain how any of these records could establish prejudice where, as here, Defendant vehemently opposed the presentation of mental health mitigation evidence, represented himself

16

during the penalty phase, and chose not to put forward any of the mitigation evidence (including non-mental health evidence) that he had at his disposal. Defendant's motion fails to provide any "specific allegations" that suggest that the requested discovery could provide a basis to find that his counsel was in any way deficient in their performance, or that any alleged deficiency caused him prejudice. *See Strickland*, 466 U.S. at 687.

### 1. *Lexington County Sheriff's Department records*

Defendant seeks "public records" from the Lexington County Sheriff's Department (LCSD) and asserts that he has not been able to obtain them due to a broken microfiche machine. (Dkt. No. 1044-1 at 5). Defendant explains his efforts to obtain the records in depth but offers no specificity as to what type of records he seeks, what those records might reveal, and how that information will support a specific claim of ineffective assistance of counsel. Defendant also fails to allege that the information contained in those records was unknown to him or the defense team at the time of trial.

Moreover, assuming Defendant is seeking those records to buttress an ineffective assistance of counsel claim regarding a failure to investigate and present mitigating evidence about his background, those claims would clearly be precluded because Defendant represented himself during the sentencing phase of his trial and chose not to present any such evidence. To the extent that Defendant is attempting to support a claim related to his mental health status, those claims are likely procedurally barred because they were fully litigated before this Court and the Fourth Circuit. *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (holding that a petitioner cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion") (quoting *United States v. Linder,* 552 F.3d 391, 396 (4th Cir. 2009)). In any event, Defendant fails to explain how trial counsel could be deemed ineffective for failing to obtain these

specific LCSD court records considering the extensive review of his background and mental health conditions by his own experts and the neutral evaluator appointed by this Court. In the absence of more specific allegations as to what types of records Defendant seeks and how they would support a viable ineffective assistance of counsel claim, Defendant has failed to show good cause for authorizing this request.

### 2. Audio recordings of court proceedings

Defendant argues that audio recordings of the proceedings have "critical importance" because they will reveal his "pauses and stutters," and are relevant to his ability to represent himself. (Dkt. No. 1044-1 at 6). Defendant does not explain how the recordings could support any viable claim of ineffective assistance of counsel. As an initial matter, Defendant's trial counsel argued that Defendant would have difficulty speaking in court, so they fully discharged their duties as trial counsel. In fact, trial counsel specifically claimed that Defendant engaged in "[l]ong pauses" and "stuttering" when moving to strike the jury panel after *voir dire*. (Dkt. No. 745 at 2). This Court personally observed Defendant during all of the court proceedings and made specific findings that Defendant was fully capable of communicating in court and was "alert, focused, and confident." (Dkt. No. 691 at 7; DE 881 at 7, 17). Moreover, the issue of Defendant's self-representation was fully litigated before this Court, and the Court's rulings were affirmed by the Fourth Circuit. *See Roof*, 10 F.4th at 362-63. Even if Defendant paused or stuttered during court hearings, Defendant is barred from re-litigating his ability to represent himself. Without any specific allegation explaining how the audio recordings could resuscitate such procedurally barred claims, Defendant has failed to establish good cause for discovery of these records.

### 3. FBI records

Defendant requests access to notes and audio and video recordings of all FBI interviews conducted during the investigation into Defendant's case, copies of text messages between two of Defendant's family members that were allegedly shown to the FBI, and records of interviews of two other individuals. (Dkt. No. 1044-1 at 2-3). Defendant argues that these records could show what individuals who knew Defendant would have said about him during the investigation. (*Id.* at 6.) Defendant provides no explanation why such records would be relevant to showing that counsel provided ineffective assistance other than that it could demonstrate trial counsel's "failures to understand their own client's impairments and to present those to this Court." (Dkt. No. 1044-1 at 6). This vague assertion fails to provide any specific allegation that, even if true, could entitle him to relief.

As noted above, defense-retained experts interviewed Defendant, reviewed voluminous records about his childhood, family, and background, administered a battery of tests on Defendant, conducted their own interviews of his family and acquaintances, and evaluated Defendant's impairments based on all of that information. Defendant's current counsel appears to have also interviewed several of the individuals identified in the pending motion. (Dkt. No. 1044-1 at 2 nn.4-5 & 3 n.6). Yet Defendant has not alleged that those individuals have any information that his counsel was unaware of at the time of trial, or that any such allegedly unknown information would have been material to the discovery of an "impairment" that the defense counsel and numerous defense experts had not already considered.

For example, Defendant seeks production of text messages between two of Defendant's family members about their drug use. The motion itself indicates only that the FBI agents allegedly were *shown* text messages, not that they took possession of them. (Dkt. No. 1044-1 at n.4). In

19

any event, the FBI's summaries of interviews with the relevant family members extensively documented information related to their drug use, and the defense-retained experts indicated in their reports that they reviewed those interview summaries. *See, e.g.*, (Dkt. No. 832-1 at 60 (noting review of US17300-US017311)). Defendant points to nothing in the text messages that could have altered any analyses by the experts or that suggests that counsel was ineffective for not obtaining those text messages.

Similarly, Defendant claims that the FBI's summary of an interview of an acquaintance (C.K.) did not contain certain information that was contained in an audio recording of that interview.[5] (Dkt. No. 1044-1 at 2). Yet the motion not only fails to acknowledge that the FBI documented the existence of the recording in the FD-302, but also fails to explain how any information that was allegedly omitted from the written summary—such as who introduced the witness to Defendant, whether C.K. and his brother may have done drugs, or C.K.'s opinions about one of Defendant's other friends—would be relevant to the diagnoses of any alleged impairments of Defendant.

Finally, even if Defendant's assertion that it is "highly likely" that the FBI interviewed a *neighbor* of Defendant's family who happened to co-own a parcel of land with Defendant's maternal uncle (H.W.)[6] or his claim that the FBI conducted additional interviews of another individual (D.W.S.) were true,[7] he points to no information that those witnesses could have that, if

---

[5] The government produced the audio recording during discovery.

[6] Although the witness indicated to Defendant's current counsel that he was interviewed by "the government," there was a parallel state investigation into this matter. Based on the motion, it does not appear that even this witness knows whether he was interviewed by the FBI or the state.

[7] Based on its review of records, the government does not believe that these claims are accurate.

true, could support a finding of ineffective assistance of counsel.[8]  Although the motion indicates that Defendant's current counsel have interviewed both of these individuals, the motion is entirely silent about what information they might have that would be relevant to a claim of ineffective assistance of counsel.

Nothing in the motion suggests that Defendant's trial counsel was deficient in their investigation into Defendant's background, or that counsel and the team of experts evaluating Defendant lacked sufficient information to identify impairments that he might have had at the time of trial.  Moreover, Defendant chose to represent himself at trial and specifically declined to present any mitigating evidence regarding his background or mental health.  In the absence of specific allegations as to how this requested evidence would have made a difference in Defendant's trial, there is no good cause to grant the request.

Defendant's arguments for good cause amount to little more than generalized assertions that the requested information could provide a basis for his claims.  That is not enough to justify discovery, let alone the prefiling discovery Defendant seeks here.  Because Defendant has not presented specific allegations that show reason to believe that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, the Court should deny the motion.

### CONCLUSION

Discovery is not available to Defendant prior to his filing a motion under § 2255, and even if it were, he has failed to establish good cause for the Court to authorize the discovery he seeks. The Court should therefore deny Defendant's motion for discovery.

---

[8]  In fact, the defense experts' reports indicate that before trial, a member of the defense team interviewed D.S.W. and that they interviewed the maternal uncle with whom H.W. co-owned the property.  *See* (Dkt. No. 1044-1 at 78).  The experts reviewed those interviews as part of their evaluations.  Defense counsel can hardly be deemed ineffective for not interviewing H.W., who was only a neighbor and business partner to Defendant's family.

Respectfully submitted,

BENJAMIN N. GARNER
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

By: *s/Christopher B. Schoen*
    Christopher B. Schoen
    Assistant U.S. Attorney
    D.S.C. Bar No. 11421
    55 Beattie Place, Suite 700
    Greenville, SC 29601
    (864) 282-2100

    Mary J. Hahn
    Trial Attorney
    U.S. Department of Justice
    Civil Rights Division
    150 M Street NE/7.1108
    Washington, DC 20002
    (202) 532-8176

    Aaron J. Stewart
    Trial Attorney
    U.S. Department of Justice
    Capital Case Section
    1331 F Street NW
    Washington, D.C. 20530
    Aaron.j.stewart@usdoj.gov
    (202) 353-4385

March 7, 2025