DECLARATION OF CATHERINE GARREN

I, Catherine Garren, state as follows:

1.  My name is Catherine Garren. I live in West Columbia, South Carolina. I was Dylann Roof's second grade teacher at White Knoll Elementary School. I began teaching at White Knoll Elementary the year that it first opened and have since retired.

2.  Dylann was a little second grader. Dylann had the exact same haircut for most of second grade that he had in his mugshot many years later. When I saw the photograph of Dylann after the crime, he had the same look that he had when he was in my class. It was like he was a little boy that had grown up to look the exact same. Every time I see Dylann on the news, I think of that little boy from my second grade class.

3.  Dylann was not a loud or boisterous child. He was a good kid.

4.  I don't remember meeting Dylann's mother. I'm not sure that I ever met her.

5.  I never would have guessed that Dylann was a child heading for trouble. I didn't have any problems with Dylann. He wasn't mean or a bully. I didn't see prejudice or anger in Dylann. White Knoll Elementary students were predominantly middle class, and students were mostly white when Dylann was in my class. I didn't see much racism in my class, and did not deal with racism from Dylann.

6.  I had another student who was later convicted of murder. This boy showed a lot of warning signs when he was in my class. He often talked about suicide. But with Dylann, I wasn't concerned at all. If there were signs or symptoms with Dylann, I missed them all. I thought that Dylann came from a good family and had what he needed at home. I don't remember him being unstable or a particularly unhappy kid. If he had looked unhappy, I would have referred him to the counselor.

1

IFCD 001131

7. Elizabeth Baerreiss and Susan Carney were the guidance counselors when Dylann was in my class. If I had a problem with students, I got guidance involved. For example, I once had a little boy who didn't come to school, so I went to guidance. I also had a little girl who I suspected was abused at home because of her sexual awareness, so I reported that to guidance and DSS got involved as well.

8. For kids with a learning disability, there was a psychologist who came from the district to do testing. If the kids had needs severe enough, there were resource teachers who helped those students. The resource teachers either pulled students out, or they came with the students into their regular classes, depending on the student. Dylann did not receive those services.

9. There was also a remediation program for students who perhaps didn't qualify for the resource teacher programs but still had a gap in their academic performance.

10. I believe that testing for the gifted and talented students happened in second or third grade. I think that all kids took an IQ test in third grade at White Knoll Elementary. I believe that students were referred to gifted and talented based on a combination of their standardized testing results and their IQ scores.

11. I followed Dylann's trial. It didn't seem like Dylann knew what was happening, like he didn't understand the gravity of what he'd done. He seemed like a child who'd been playing a computer game, like he didn't think what he'd done was serious.

12. I was never interviewed by the FBI or by anyone representing Dylann. If Dylann's trial team had asked me the same kind of questions I was asked by Dylann's post-conviction team, I would have told them everything that is contained in this declaration.

13. I am over 18 years of age and am competent to make this declaration.

IFCD 001132

I, Catherine Garren, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ____Oct 22____, 20 _23_, in ___West Columbia___, _SC_.

_Catherine Garren_

Catherine Garren

3 _____

IFCD 001133