

**Office of the Sheriff**          **County of Charleston**

Sheriff J. Al Cannon, Jr.

Memorandum:

To:          Chief Deputy Willis Beatty

Through:      Lieutenant D. Willoughby, Captain K. Whited, and Assistant Sheriff M. Lucas

From:         Sergeant F. Ferguson

Date:         August 18, 2016

Subject:      Internal Investigation: IA 16D-274

---

On August 4, 2016, the Charleston County Sheriff's Office, Office of Professional Standards began an investigation into "Unsatisfactory Performance" by Sheriff Al Cannon Detention Center personnel after Inmate Dylan Roof was assaulted during recreation by Inmate Dwayne Stafford. All employees were interviewed and provided with Truthfulness and Garrity Advisements which they stated they understood and signed. This investigation has concluded. The following is a summary of the findings.

On August 4, 2016, I was notified of an assault on Inmate Roof in the Special Management Unit (SMU) at the Detention Center. Because of his high profile status, Inmate Roof is housed in the SMU for his own protection. His status requires housing and participation in recreation alone. According to Chief Beatty, Inmate Roof was out of his cell for recreation when he was assaulted in the shower by Inmate Stafford. During Inmate Roof's recreation time, Detention Deputy ~~████████~~ was the only employee in the SMU. Detention Deputy ~~████~~ partner, Detention Deputy ~~████~~ was out of the unit on a break. At the time of Inmate Roof's assault, all inmates in the SMU were supposed to be locked in their cells. While Inmate Roof was in the shower, Inmate Stafford exited his cell and ran to the shower where he assaulted Roof. Detention Deputy ~~████~~ was able to run to the shower where he detained Inmate Stafford until responding units could help secure the scene. Inmate Roof was immediately escorted to the Detention Center Medical Unit by members of the Special Operations Group. He was examined and released back to the SMU under the escort of SOG members. Inmate Stafford was transported to the Behavioral Management Unit for future housing. Upon my arrival, he was staged in the Behavioral Management Unit multipurpose room. ~~████████████████~~ were dispatched to the Detention Center to assist in securing the scene.

Criminal Investigative Division Detectives ████████ and ███████ were dispatched to conduct the criminal investigation. Investigator ████ was dispatched to process the scene of the assault and Inmate Stafford's cell. In addition to Sheriff's Office personnel, ████████ with facilities maintenance stood by to inspect the locking mechanism on Inmate Stafford's cell. After Investigator ████ photographed the scene, ████████ conducted a status check of the locking mechanism for cell 2138. He observed both the cell locking mechanism as well as the computer door panel was operating correctly. ████████████████████████████

I was provided with a copy of the SMU video surveillance footage for August 4th. I was advised the only video in the unit is trained specifically on Inmate Roof and his cell. The following is a list of approximate times for notable events captured on video surveillance:

- 06:02:30 - Detention Deputy ████████ began visually checking all inmates in their cells.
- 07:19:30 - Inmate Roof exits his cell carrying a towel and unknown objects. He immediately walks down the stairs and exits the view of the camera.
- 07:42:29 - Detention Deputy ███ walks up the stairs carrying a roll of toilet paper.
- 07:42:54 - Inmate Stafford runs down the stairs to the first floor and leaves view of the camera.
- 07:43:03 - Detention Deputy ███ follows Inmate Stafford down the stairs
- 07:43:21 - The camera pans to the area of the showers which shows personnel responding to the incident.
- 07:43:55 - Inmate Stafford is shown getting escorted away from the areas of the first floor showers by a SOG member.
- 07:45:18 - Inmate Roof was escorted from the unit by SOG members.
- 07:45:58 - Inmate Stafford was escorted back to his cell by SOG members. On the floor in close proximity to the doorway of the cell, there was a white in color item resembling a sock on the floor.
- 07:47:37 – Sergeant ████████ is observed kicking the white in color item into Inmate Stafford's cell.

I also received a copy of the locking reports for cell numbers 2138 (Inmate Stafford) and 2142 (Inmate Roof). The locking report for cell 2138 showed the dates of August 3rd and August 4th. At approximately 19:17:38 hours on August 3rd, cell door 2138 showed unlocked until approximately 07:47:52 hours on August 4th. A further check of the locking reports for cell 2138 from May 1, 2016 to the incident date showed a similar discrepancy from approximately 04:33:17 to 17:47:26 hours on June 25, 2016.

After he was interviewed by the Criminal Investigative Division, Sergeant ████ and I conducted an interview with Detention Deputy ███. Detention Deputy ███ confirmed he was assigned to SMU on day shift from 0545 hours to 1745 hours with Detention Deputy ████. Detention Deputy ███, after completing his normal daily tasks, started allowing inmate recreation time. As he does most shifts in the SMU, Detention Deputy ███ started with the recreation/house alone inmates which included Inmate Roof.

Office of Professional Standards
Internal Investigation (16D-274)

D13798

Once Inmate Roof confirmed to Detention Deputy ▆▆ he wished to participate in recreation, Detention Deputies ▆▆ and ▆▆▆ reportedly checked the doors to all of the cells in the SMU. Once Inmate Roof began his recreation time, Detention Deputy ▆▆ left the SMU to take a break. While Inmate Roof was in the shower on the first floor, Inmate ▆▆▆ in cell 2135 asked Detention Deputy ▆▆ for toilet paper. Immediately after he asked for toilet paper, Inmate Stafford also alerted Detention Deputy ▆▆ that Inmate ▆▆ needed toilet paper. When Detention Deputy ▆▆ took the toilet paper to him in cell 2135, Inmate Stafford's cell door opened. When the door opened, Inmate Stafford exited and looked at Detention Deputy ▆▆ before running down the stairs to the first floor. Inmate Stafford ran into the shower area where he began punching Inmate Roof for what Detention Deputy ▆▆ estimated was approximately thirty to forty-five seconds. Detention Deputy ▆▆ entered the shower area where he was able to detain Inmate Stafford. Inmate Stafford initially struggled, but gave up when Detention Center back-up arrived. Once the scene was secured, SOG members escorted Inmate Stafford to his cell. Detention Deputy ▆▆ eventually exited the SMU in order to get treatment in the Medical Unit for scratches received while struggling with Inmate Stafford. Detention Deputy ▆▆ confirmed he checked the cell doors on the second floor of the SMU prior to Inmate Roof exiting his cell for recreation. Detention Deputy ▆▆ stated when he pulls on cell doors, they typically give a little but don't open if secured. When he pulled on Inmate Stafford's door, it did not give or open. Detention Deputy ▆▆ attributed the lack of movement to Inmate Stafford standing against the door. When asked if he took further steps to assure the door was secure or ask Inmate Stafford to step away from the door, Detention Deputy ▆▆ stated "no." Detention Deputy ▆▆ further elaborated that when he is told by inmates to "fuck himself" and he does not see anything wrong with the door, he does not give a directive because he feels the inmate would not follow it. He also confirmed this is not the first incident of seeing a door improperly opened in the SMU. On July 23, 2016, Detention Deputy ▆▆ recalled seeing a door "pop open" after an inmate ▆▆▆▆▆▆▆▆▆▆▆▆▆ When asked about Detention Deputy ▆▆ taking her break during Inmate Roof's recreation time, Detention Deputy ▆▆ stated their supervisor was not notified. He further stated he believes breaks were restricted if there are five or more inmates on recreation. Detention Deputy ▆▆ did not recall reading policy related to breaks during inmate recreation, but instead believes he learned it from Detention Deputy ▆▆. He also stated he and Detention Deputy ▆▆ pick certain inmate recreation times to take breaks due to there being less trouble in the unit. Detention Deputy ▆▆ could not recall seeing any doors registered as unsecure on the panel. He was adamant he was not involved with assisting Inmate Stafford with exiting his cell or assaulting Inmate Roof. Following the interview, Detention Deputy ▆▆ underwent a polygraph examination. The test showed Detention Deputy ▆▆ exhibited no deceptive responses.

On August 5, 2016, Sergeant ▆▆ and I conducted an interview with Detention Deputy ▆▆ ▆▆. Detention Deputy ▆▆ recalled working in the SMU on August 4, 2016. After passing out inmate breakfasts, the detention deputies started on the recreation schedule for inmates. When Inmate Roof verified he wanted to participate in recreation, Detention Deputies ▆▆ and ▆▆ ensured all of the doors in the unit were secure. Deputy ▆▆ checked the doors on the second floor while Detention Deputy ▆▆ checked the doors on the first floor. After Inmate Roof began his recreation, Detention Deputy ▆▆ left the unit for her break. Prior to starting recreation periods, Detention Deputy ▆▆ recalled conducting security checks. She recalled seeing Inmate Roof asleep in his cell. Inmate Stafford was also asleep in his cell.

D13799

When viewing Inmate Stafford's cell, she did not visually observe anything wrong with the door. Detention Deputy ████ was then asked if cell doors tend to give when they are pulled on, she stated, "yes." When asked how she would react to a door that doesn't move when pulled on, Detention Deputy ████ advised she would further inspect the door. Detention Deputy ████ then discussed the locking report which showed cell 2138 unlocked from 1917 hours on August 3rd to August 4th. Detention Deputy ████ did not recall the cell door panel showing any anomalies to include cell 2138 being unsecured. I asked her if she has ever seen a cell door show unlocked on the panel when it is actually secured. She advised cell 1116 shows unsecured on the panel, but has been verified secure. She also advised a work request for that door was completed. Detention Deputy ████ was then asked about the break she took during Inmate Roof's recreation time. She told us she does not recall being given explicit permission to take breaks during inmate recreation time. Detention Deputy ████ also confirmed she did not receive permission from her supervisor to take her break during Inmate Roof's recreation time. Detention Deputy ████ stated she did not take part in assisting Inmate Stafford with exiting his cell or assaulting Inmate Roof. Following her interview, Detention Deputy ████ underwent a polygraph examination. The test showed Detention Deputy ████ exhibited no deceptive responses. However, during her polygraph examination pre-test, Detention Deputy ████ advised Lieutenant ████ she learned Inmate ████ attempted to warn Detention Deputy ████ that Inmate Stafford's door was jammed prior to the assault on Inmate Roof.

Sergeant Eubanks and I conducted an interview with Inmate ████. Inmate ████ estimated he saw Inmate Stafford on recreation at around 2230 hours on August 3rd. When Inmate Stafford was concluding his recreation time, Inmate ████ observed him ████████████████ ████████. Approximately thirty minutes later, three black male inmates on recreation went to the area of Inmate Stafford's door. Inmate ████ observed Inmate Stafford kick the door open in what he believed was a test of the door jamming technique. The three inmates then ████ ████████████████ and closed the door. At approximately 0130 hours, Inmate ████ left his cell for recreation. During his recreation time, Inmate ████ went to the desk and attempted to inform personnel of the jammed door. He described the detention deputy and later positively identified Detention Deputy ████. When he spoke to Detention Deputy ████, Inmate ████ stated "the boys are jamming the door up there and nodded his head in the direction of Inmate Stafford's cell. Detention Deputy ████ responded "what" at which time Inmate ████ repeated himself. He says after he repeated himself, Detention Deputy ████ walked away and never checked any doors. The next day at approximately 1030 hours, Inmate ████ had the opportunity to speak to Detention Deputy ████ about trying to warn personnel about the jammed door. During the evening shift on August 4th, Detention Deputy ████ entered Inmate ████ cell and began to speak in a quiet manner. Inmate ████ says he told Detention Deputy ████ "I told you so." Detention Deputy ████ responded "I never heard you." In his opinion, Inmate ████ did not believe Detention Deputy ████ didn't hear him. When asked why he believes Detention Deputy ████ heard him, Inmates ████ stated he did not whisper what he said to Detention Deputy ████ before the assault.

On August 8, 2016, Sergeant Rebeck and I conducted an interview with Detention Deputy ████. He was listed on the personnel roster as being assigned to the SMU during the evening shift of August 8th.

Office of Professional Standards
Internal Investigation (16D-274)

| 4

D13800

Ex. 105 pg.4 of 9

Detention Deputy ▮▮▮ stated, although he was supposed to work in the SMU on the night in question, he was moved to unit A1C for the entire shift. He was moved to this unit because of his experience. Detention Deputy ▮▮▮ was not present in the SMU when Inmate Stafford's door was jammed or when Inmate Roof was assaulted.

Sergeant Rebeck and I then conducted an interview with Detention Deputy ▮▮▮. Detention Deputy ▮▮▮ was able to recall his shift on August 3rd. He stated Inmate Stafford was the first inmate to participate in recreation during the shift. He remembered Inmate Stafford was loud and boisterous which wasn't uncommon. After Inmate Stafford's recreation, Detention Deputy ▮▮▮ recalled an unknown person saying a door was jammed. He later changed his story to state Inmate ▮▮▮ yelled it from his cell. Shortly thereafter, he again changed his story to reflect Inmate ▮▮▮ telling him about a jammed door while standing at the desk. By his own admission, Detention Deputy ▮▮▮ did not check for any jammed doors nor did he pass the intelligence to the oncoming shift. He advised he would have taken appropriate action had he been given specific details. He also admitted he made a mistake in not following-up with the information he received. Detention Deputy ▮▮▮ stated he found Inmate ▮▮▮ door ▮▮▮ during his recreation later in the shift. However, Detention Deputy ▮▮▮ located the jammed door on accident while walking by when Inmate ▮▮▮ was returning from recreation as opposed to investigating the original information received from Inmate ▮▮▮. Detention Deputy ▮▮▮ did not complete a report for Inmate ▮▮▮ jammed door or notify any other personnel. Detention Deputy ▮▮▮ could not recall the follow-up conversation with Inmate ▮▮▮ on August 4th. Detention Deputy ▮▮▮ stated he did not take part in assisting Inmate Stafford with exiting his cell or assaulting Inmate Roof. Following his interview, Detention Deputy ▮▮▮ then underwent a polygraph examination. The test showed Detention Deputy ▮▮▮ exhibited no deceptive responses. However, during his polygraph pre-test examination, Detention Deputy ▮▮▮ disclosed a previous incident in which he looked up a female inmate on the unit computer at the request of a male inmate. The information disclosed was investigated under Office of Professional Standards case 16D-284. Following his polygraph examination, Detention Deputy ▮▮▮ was placed on administrative leave with pay.

On August 9, 2016, Sergeant Rebeck and I conducted an interview with Detention Deputy ▮▮▮. Detention Deputy ▮▮▮ advised she was assigned to the SMU for the first time during the night shift on August 3rd. After starting her shift in the SMU, she began making periodic rounds in the unit. After the third or fourth round, several of the inmates began masturbating when she walked by. Due to the inappropriate conduct of the inmates, Detention Deputy ▮▮▮ took over the responsibility of making periodic rounds. Detention Deputy ▮▮▮ recalled Inmate Stafford taking his recreation time. During this time, Inmate Stafford hung out near the front desk. Near the end of his recreation time, Inmate Stafford was told several times to return to his cell. Once he went to the second floor, Inmate Stafford stood around his door before going in. Once he went in, Inmate Stafford closed his own door. She recalled Inmate Stafford seemed excited all night. After Inmate Stafford ended his recreation period, several other inmates began their recreation periods. Detention Deputy ▮▮▮ remembered at least one inmate standing in the area of Inmate Stafford's door during the recreation period. During this period, she could hear Inmate Stafford talking loudly about football. She did not recall hearing anything said to Detention Deputy ▮▮▮ about doors getting jammed.

Office of Professional Standards
Internal Investigation (16D-274)

D13801

Additionally, she remembered the computer panel showing all doors secured throughout the shift. Detention Deputy ████ was then provided with a copy of the locking report for cell 2138. Though she recognized the report showing a door unlocked for approximately twelve hours, she still did not recall any abnormalities on the door panel. At no time during her shift did Detention Deputy ████ hear about doors being jammed. She is not overly familiar with the issue of locks being jammed due to her normal assignment in the Medical Unit. Detention Deputy ████ confirmed she took her lunch break while inmates were on recreation. She was not aware of the requirements for breaks during recreation nor did she have time to read the SMU policy due to her last minute assignment to this unit. Detention Deputy ████ stated she did not take part in assisting Inmate Stafford with exiting his cell or assaulting Inmate Roof. Following the interview, Detention Deputy ████ underwent a polygraph examination. The test showed Detention Deputy ████ exhibited no deceptive responses.

On August 10, 2016, Sergeant Rebeck and I conducted an interview with Sergeant ████ ████. He confirmed he is the supervisor over the SMU as well as units A1C and A1D. He advised the SMU is used to house inmates with special issues outside of the normal inmate to include but not limited to inmates with enemies, mental health conditions, courtesy holds from outside agencies, problems in other housing units, and high profile inmates. Sergeant ████ was asked if there is any special protocol for the care of Inmate Roof. Outside of receiving escorts from SOG and requiring recreation and housing alone, Sergeant ████ could not provide any special protocol for Inmate Roof. He also did not recall providing any special instructions to his subordinates regarding the care of Inmate Roof. During the assault of Inmate Roof, Sergeant ████ was notified that Detention Deputy ████ was the only deputy in the unit while Detention Deputy ████ was on a break. Sergeant ████ advised he was not aware Detention Deputies took breaks while Inmate Roof was on recreation. However, he stated it is not uncommon for detention deputies in the SMU to take breaks while inmates are out on recreation. Additionally, detention deputies in the SMU are periodically used to provide breaks to deputies working in one man units. While he tries not to use SMU detention deputies for breaks in other units, he occasionally has to. When doing so, Sergeant ████ tries not to remove detention deputies from the SMU during troubled inmate recreation periods. He has never told his assigned personnel they are not to take breaks when inmates are on recreation. He advised this was common practice when he took over as the supervisor for his team. He was not aware of what policy and procedure stated about breaks, but heard you were required to have two detention deputies in the unit during inmate recreation. To the best of his understanding, detention deputies assigned to the SMU are to have over one year's experience. Though Detention Deputy ████ does not have one year's experience with the Detention Center, Sergeant ████ felt his experience in other detention centers was adequate. He felt the assault on Inmate Roof could have happened to anyone. He also felt having two detention deputies in the unit was not a guarantee the assault would not have occurred. He wished to add he feels the detention deputies working in the SMU are good deputies who are being portrayed in a poor light.

On August 9, 2016, Detention Deputy ████ requested to meet with Captain Whited and I. Detention Deputy ████ stated she was unhappy her name was in the news in connection with the Inmate Roof assault.

Office of Professional Standards
Internal Investigation (16D-274)                                              |6

D13802

Ex. 105 pg.6 of 9



The FOIA process was explained. Detention Deputy ⬛⬛⬛⬛advised she took her break when inmates were on recreation because they are directed to do so by supervisors. This was contrary to her previous statements in which she claimed breaks are not taken with the guidance or direction of the supervisor. Detention Deputy ⬛⬛⬛was advised a follow-up interview would be scheduled.

A television interview of Inmate Stafford was released. In the video, Inmate Stafford stated he was given opportunity to speak with Inmate Roof while he was housed in the SMU. We were unable to conduct an interview with Inmate Stafford due to his release from the Detention Center.

On August 10, 2016, I met with ⬛⬛⬛⬛who is the supervisor over facilities maintenance at the Detention Center. I spoke with ⬛⬛⬛⬛about the locking report which showed cell 2138 open for over twelve hours starting on August 3rd. ⬛⬛⬛⬛described the cell locking mechanisms for me. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

On August 11, 2016, Major ⬛⬛⬛ confirmed the Detention Center command staff did not provide any special instruction or directives related to the housing of Inmate Roof. This was verified by Major ⬛⬛⬛through the other members of the command staff and the Security Threat Group.

On August 12, 2016, Sergeant Rebeck and I conducted a follow-up interview with Detention Deputy ⬛⬛⬛During the interview, Detention Deputy ⬛⬛⬛confirmed he is not aware of any specific policy related to the housing of Inmate Roof. He also did not recall receiving specific direction about the housing of Inmate Roof from his supervisor or chain of command. Detention Deputy ⬛⬛⬛ was asked about any observed interaction between Inmate Roof and other inmates in the SMU. Detention Deputy ⬛⬛⬛ recalled Inmate Roof stopping to talk to two inmates in their cells during recreation on his first shift in the SMU. When he observed Inmate Roof speaking to the inmates, Detention Deputy ⬛⬛⬛told him to move away from the cells. On another occasion, Detention Deputy ⬛⬛⬛ remembered an SMU inmate worker going to Inmate Roof's cell to announce feeding time. Detention Deputy ⬛⬛⬛told the inmate worker to get away from the cell. Detention Deputy ⬛⬛⬛believed Inmates Roof and Stafford may have had the occasion to speak through unit vents. Prior to August 3rd, Inmate Stafford was on suicide watch. Because his cell was underneath Inmate Roof's, the two inmates were probably able to speak through the vents.

Following the interview with Detention Deputy ⬛⬛⬛, Sergeants Rebeck and Eubanks conducted a follow-up interview with Detention Deputy⬛⬛⬛⬛. Detention Deputy ⬛⬛⬛stated she did not receive any specialized training to work in the SMU. She also did not receive any official protocol for the care of Inmate Roof outside of instructions to house and participate in recreation alone.

She did recall a former partner, Detention Deputy ███████████ suggesting she pull on doors prior to sending Inmate Roof on recreation. Detention Deputy ██████ stated she permits inmates to speak to each other through their doors as long as the inmates stand at least five to six feet away from the door. She recalls seeing Inmate Roof standing near Inmate ██████ door to talk on occasion. However, when she tells him to move on, he complies. She did not permit inmates to go near Inmate Roof's door. Detention Deputy ██████ again confirmed she did not have permission to take a break during Inmate Roof's recreation. However, she stated it is common practice for detention deputies in the SMU to take breaks during inmate recreation. However, she could not provide the name of a supervisor who gave her this guidance.

After a careful review of the facts and circumstances uncovered during this investigation, the following policy violations were noted:

In failing to further investigate information from Inmate ██████ regarding cell doors being jammed as well as not reporting or documenting Inmate ██████s attempt to jam his cell door open, Detention Deputy ██████ violated Sheriff Al Cannon Detention Center Policy and Procedure 3-55.3 "Rules of Conduct," Section III "General Rules of Conduct," Subsection J "Unsatisfactory Performance" which states in part:

> [...]Employees will perform their duties in a manner to the highest standards of efficiency in carrying out the functions and objectives of the facility. Unsatisfactory performance may be demonstrated by lack of knowledge of the application of laws required to be enforced, an unwillingness or inability to perform assigned tasks, failure to conform to work standards established for the employee's rank, grade or position, failure to take appropriate action on the occasion of crime, disorder[...].

In taking a break and leaving her post during Inmate Roof's recreation period without notifying a supervisor, Detention Deputy ██████ violated Sheriff Al Cannon Detention Center Policy and Procedure 3-55.3 "Rules of Conduct," Section III "General Rules of Conduct," Subsection H "Leaving Duty Post" which states:

"Employees will only leave their assigned post during a tour of duty if properly relieved or with authorization from a supervisor."

In allowing detention deputies assigned to the SMU to take breaks while inmates are participating in recreation time, Sergeant ██████ violated Sheriff Al Cannon Detention Center Charleston "Post Order: Special Management Unit Housing Detention Deputy" Subsection JJ a. which states:

"Two (2) Detention Deputies will be present for recreation."

Office of Professional Standards
Internal Investigation (16D-274)

Page | 8

D13804

Ex. 105 pg.8 of 9

In addition to these findings, during this investigation, the Office of Professional Standards determined Detention Center Policy and Procedure does not address the physical checking of cell doors during mandated rounds in the secure units. Additionally, personnel routinely related to us inmates attempting to jam cell doors open is common. By physically checking the doors, personnel may better ascertain if the door is secure. Checking whether or not the doors are secure during rounds may help avoid similar incidents in the future.

After reviewing the investigation cited above, I concur with the findings.

_____                                    _____
Assistant Sheriff Mitch Lucas                              Date

Office of Professional Standards
Internal Investigation (16D-274)

D13805

Ex. 105 pg.9 of 9