UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:15-CR-00472-RMG |
| | ) | Civil Case No. 2:25-cv-03298-RMG |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DYLANN STORM ROOF | ) | |
| | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |
| _____ | ) | |

**DEFENDANT'S FILING PURSUANT TO COURT'S APRIL 18, 2025 ORDER**

On April 17, 2025, Defendant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. That same day, Defendant sought leave to file a corrected § 2255 motion on or before July 21, 2025, the date on which the Government had agreed the statute of limitations would expire before revoking that agreement and enforcing an April 18, 2025 deadline. Dkt. No. 1056. In that motion, Defendant asserted that the sudden and unpredicted change to a deadline three months earlier than expected prejudiced him.

On April 18, 2025, the Court ordered that the parties provide additional information for the Court to use to consider the Defendant's motion. Dkt. No. 1059. As the Court notes, undersigned counsel asserted that unidentified expert reports and witness declarations could not be obtained due to reliance on the Government's agreement to a July deadline for filing. The Court invited counsel to file sworn statements from any such witnesses about their inability to provide timely or properly prepared reports. Accordingly, counsel provides the following information:

1

### 1. Erin Bigler, Phd

As a supporting document filed with Defendant's § 2255 motion, counsel submitted a letter report from Erin Bigler, PhD. Dkt. No. 1063, Ex. 4. Dr. Bigler is a psychologist who specializes in brain imaging. He was retained by the trial team to analyze the 2016 MRI of Dylann Roof's brain. When undersigned counsel contacted him, Dr. Bigler indicated that if he had known of Dylann's Auditory Processing Disorder, he could have focused his analysis much more closely on affected areas of the brain, as he has now begun to do. His report corroborates Mr. Roof's Auditory Processing Disorder, which defense counsel failed to discover—and thus failed to present to the Court. Dr. Bigler, however, notes in his report that he can perform additional analysis but cannot do so under the current time constraints. *See* Ex. 4 at 7.

Shortly after receiving this Court's order, undersigned counsel reached out to Dr. Bigler to request an additional statement from Dr. Bigler for this Court about his inability to complete the additional analysis by April 18, 2025. However, Dr. Bigler is in trial this week on another case and thus unavailable to make a sworn statement on the Court's timeline. Counsel plans to meet with Dr. Bigler next week after his current trial ends. Dr. Bigler's work on this case is ongoing and not yet complete.

### 2. Sarah Gannett

Sarah Gannett was a member of the trial team who had significant involvement in litigation of matters that are relevant to the issues raised in the 2255 motion. Counsel has been in communication with Ms. Gannett, but she was unable to complete her declaration by April 18. Ms. Gannett wants to review files to ensure her declaration is accurate. In light of her own litigation schedule, medical issues, and other commitments, she has been unable to do so at this time. We anticipate that her declaration will be complete in approximately a week.

### 3.  Document Review Specialist and Cascading Effects

The Government's representations affected the availability of a contract attorney who was hired as a document review specialist. In the experience of the § 2255 Unit, the records in federal capital post-conviction cases are often much more voluminous than in other habeas cases. Designating a specialist to assist with document management, substantive checks against the record, and retrieving documents from files in advance of filing the §2255 motion is often a necessity. This type of assistance is a time-consuming process in aid of preparing for expert and witness interviews, developing and drafting claims, reviewing declarations, and ensuring the accuracy of our claims.

The universe of potentially relevant documents in this case was particularly large, and a thorough understanding of the content of these documents and how they relate to potential claims was a massive undertaking. In light of the difficulty of this undertaking, the team hired a designated document review specialist whose work with these records was vital to the investigation and development of §2255 claims.

Upon being told by the Government on January 10, 2025, that the Government would waive the SOL for an additional 90 days, undersigned counsel communicated this news to the entire Roof team, including the document review specialist. The document review specialist had been working on the case for a significant amount of time and had greater familiarity with the voluminous records and documents in this case than any other member of the team.

Between January 10, 2025, and January 27, 2025, the document review specialist made other work commitments and travel plans impacting her capacity to dedicate time to the Roof case between mid-January and mid-April. Her travel included a week in February, as well as a trip overseas spanning several weeks, during which time she was entirely unavailable to the

team. Her work involved commitments that she could not back out of. She would not have made some of her plans and commitments without the Government's representations concerning the SOL. Thus, our document review specialist was unavailable to the rest of the team during critical weeks leading up to the April 18, 2025, filing deadline, including the vast majority of the week of the deadline.

The unavailability of the document review specialist had a cascading effect on other team members. Other members of the team had to take on the work they anticipated she would do. Without the document review specialist, and because the other team members had less familiarity with many of the records, this work took far longer than planned. It also meant that the team had to prioritize certain efforts over others, leaving many tasks uncompleted. For example, a number of witnesses (including members of the trial team) have not even been contacted or approached about a declaration at this time.[1] These witnesses would have been contacted earlier but for the simple inability of counsel to get to them based on the unavailability of our contracted document review specialist and the impact her absence had on the rest of the team's workload. The team triaged the work that needed to be completed, prioritizing the tasks that seemed most essential. Other important tasks remain.

In her absence, other members of the team also had to monitor responses to records requests as they came, review those records and whether they supported any claims, and determine whether additional or follow-up requests were necessary. There was no way to speed up this process once the Government revoked its waiver. Pending record requests with facts relevant to the claims continue to arrive. Team members included the April 18, 2025, deadline in

---

[1] Counsel is not inclined to identify by name additional witnesses that have not been approached or agreed to sign a declaration, so as not to disclose confidential matters of strategy and investigation plans prematurely.

these requests once known, but multiple agencies responded that they could not return the records by that date. For these reasons, the shift in deadline from July 21, 2025 to April 18, 2025 negatively impacted multiple aspects of the work on Mr. Roof's § 2255.

Mr. Roof wishes to clarify that he is *not requesting* equitable tolling, but specific performance of the Government's commitment made to Mr. Roof. Moreover, 17 days of equitable tolling would in no way place Mr. Roof in a whole position. The Government made a signed commitment and then attempted to rescind that agreement without any justification. Mr. Roof relied on this agreement, to his own detriment. The remedy requested is specific performance of the agreement between the parties.[2] There is significant work to be done, work that would have been done by July but for the Government's bait and switch. Counsel relied on an additional 90 days and made arrangements accordingly in January. It is not the loss of those 17 days that is most significant, but the loss of three months that we planned around during those 17 days. That harm and impact on our case cannot be undone by 17 days of equitable tolling. This is especially true if, as the April 18 Order suggests, the tolling period starts from the date of that order and has continued while this Court considers the motion. Counsel therefore move the Court to enforce the Government's agreement and allow the filing of a corrected 2255 on or before July 21, 2025.

---

[2] While not directly analogous, the closest comparison we have is the enforcement of plea agreements. *See, e.g.*, *United States v. McQueen*, 108 F.3d 64 (4th Cir. 1997).

Respectfully submitted,

/s/ Jill E.M. HaLevi
Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
Phone: 843-819-0557
E-Mail: jill@charlestonmediator.com

/s/ Angela S. Elleman
Angela S. Elleman
Chief, § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

Attorneys for Defendant-Petitioner Dylann Storm Roof