<u>Declaration of Arlene Andrews, PhD</u>

I, Dr. Arlene Andrews, state as follows:

1. I am over 18 years of age and am competent to make this declaration.

2. I am an independent social worker in South Carolina, a Carolina Distinguished Professor Emerita at the University of South Carolina College of Social Work, and a social historian. I graduated with my Ph.D. in Clinical-Community Psychology in 1985.

3. I was contacted by Dylann Roof's legal defense team in December 2015. My role in Dylann's case was more limited than it is in most cases. The team wasn't actually sure it would need a social historian. Initially I was brought on as a consultant with the idea that my role could turn into becoming a testifying expert. My role was to review documents and conduct interviews to put together a comprehensive social history based on mitigation collected. Dylann was facing the death penalty in both state and federal courts. I primarily worked with and reported to Dylann's federal team. However, the information we gathered was relevant for both teams.

4. At the time I was contracted to work on Dylann's case, I had worked on around 20 other capital cases and consulted on an additional 30-50 others as a supervisor for the Georgia Public Defenders Council.

5. After working on the case for a short time, it became apparent there was something outside of typical social factors affecting Dylann. I told this to the attorneys and suggested that Dylann needed additional diagnostic testing to understand some of his impairments.

6. With other defense team members, I participated in a conference call in May 2016 with an expert who knew a lot about autism. She was unable to work on the case, but was happy to share her expertise with us. The expert recommended that the team hire a speech language pathologist. She made this recommendation after watching the interrogation video and seeing Dylann's limitations in communicating with the FBI, as well as hearing team members describe their interactions with Dylann.

7. After that meeting, I noticed that Dylann's pediatric records documented that he had a speech delay at age three. When I spoke to Dylann's uncle, Joe Roof, he told me that

1

Declaration of Dr. Arlene Andrews

IFCD 004314

Dylann was slower developmentally and did not talk until he was three years old. This information made me wonder if Dylann had issues related to his ability to understand and express communications, which would have affected his social functioning. I believed that his comprehension was impaired and further testing was needed. I understand a speech and language pathologist would be able to do such an assessment.

8.  I wanted to understand why a child from such a highly verbal family had developmental and language delays and limited social engagement. Sometimes the delays can be socially induced, but the evidence I had in the social history did not suggest that social factors were contributing to Dylann's communication problems. This was indicative of something else at play.

9.  I did not have the opportunity to meet with Dylann, but I spoke to many people who knew him as part of my social assessment, including his mom and dad, Amy and Benn Roof; and his grandparents, Joe and Lucy Roof, and others.

10. Joe Roof was salt of the earth. He was a pillar in the Columbia community, a respected lawyer, a genuinely nice person, as well as a good Lutheran. He was an effective communicator. If Joe Roof had testified, he would have talked about his love for Dylann, which was apparent to everyone who knew him. Joe's testimony would have made a significant impact on the jury. He was well respected and had a good reputation in his community. His wife Lucy kept scrapbooks for all her grandkids and shared loving memories of trips they took Dylann on when he was a kid. Lucy could have shared her photos and sweet memories of spending time with Dylann. They both loved Dylann immensely.

11. I believe Dylann's case went to trial too quickly on this case. I had not completed my work and was cut off mid-stream. Other work also remained undone, and the team simply was not prepared. At no time was I ready to go to testify at trial on this case.

Pursuant to 28 U.S.C. §1746, I, Dr. Arlene Andrews, declare under penalty of perjury under the laws of the United States that the above is true and correct.

3/26/25        Columbia, SC                              _Arlene Andrews_
Date and Place                                           Dr. Arlene Andrews

2

Declaration of Dr. Arlene Andrews