Personal Identifying Information has been redacted from this exhibit pursuant to Fed. R. Civ. Pro. 5.2.

Berkeley County     # Ninth Circuit Public Defender

Berkeley & Charleston Counties     *Charleston County*

| | | |
|---|---|---|
| 219 N. Hwy. 52, Suite E | | O.T. Wallace Building |
| P.O. Box 1687 | | 101 Meeting Street, 5th Floor |
| Moncks Corner, SC 29461 | | Charleston, SC 29401-2214 |
| (843) 899-2777 | D. Ashley Pennington, Circuit Defender | (843) 958-1850 |
| (843) 899-2701 Fax | (843) 958-1870 | (843) 958-1860 Fax |
| Patricia A. Kennedy | (843) 958-5149 Fax | Lorelle D. Proctor |
| Chief County Public Defender | apennington@charlestoncounty.org | Chief County Public Defender |

**MEMORANDUM OF INVESTIGATION**
**State vs. Dylann S. Roof**

TO:    Roof Team

FROM:   D. Ashley Pennington
      Circuit Defender

DATE:   September 17, 2015

RE:    ███████████████████

Ashley Pennington and Art DeGiovine interviewed Chief Willis Beatty of the Charleston County Detention Center on September 15, 2015. Chief Beatty said that he got a report from <u>his intelligence people</u> that Dylann Roof had written a letter that referred to a book that ended in a suicide. The Chief decided that the appropriate action was to institute a period of 15 minute precautionary checks of the defendant to ensure he was alive and OK every 15 minutes. He ordered these 15 minute watches on August 3, 2015. Chief Beatty reports that the staff misinterpreted his orders and assumed that he meant a suicide watch. A suicide watch requires that the defendant be removed from his cell, placed in a padded uniform and the jail officers box his belongings while looking for any indications of suicidality. This is differentiated from an "active" suicide watch where the defendant is actually moved and observed continuously.

Chief Beatty said that the jail has an intelligence unit that is managed by jail Sgt. Ezzard Luke. He has an intelligence analyst named Lauren Mosher. There are two additional intelligence unit staff members: Shellie Greene and Lisa Bloodworth.

The Chief said that the jail treats <u>high profile</u> cases differently. When there is a court event or other unusual activity, they will "clean out" the detainee's room. He said that they did this in the case of Michael Slager, who was denied bond the day before.

Ex. 53 pg.1 of 8                   WI00412

Chief Beatty mentioned that he did not turn over Roof's legal pad documents until the Feds gave a subpoena. He agreed to meet with me again on September 17th and allow me to interview the personnel that were involved in this search.

-----------------------------------------------------------------------------------------------------------

On September 17, 2015 Ashley Pennington and Art DeGiovine met with Chief Willis Beatty and Lauren Mosher at the Chief's conference room. **Ms. Mosher works as a civilian employee of the Sheriff's Office in the Sheriff's Criminal Intelligence Unit.   Her title is Intelligence Analyst.   Her direct supervisor is Lt. Fletcher King, who works in the Sheriff's Office for the Intelligence Department. She is the law enforcement liason with the jail.** Ms. Mosher is assigned to the jail. Ms. Mosher's previous work history is that she was state probation agent. Later she has worked in the criminal intelligence unit of the Charleston (City) Police where she was a sworn officer.  In April 2014 she moved to this job with the Sheriff's Office.

Ms. Mosher is also "on call" on law enforcement issues for the Sheriff's Office's Intelligence Unit.  She was called in to help consider how to best locate and arrest the suspect, Dylann Roof, on June 17-18, 2015.  She worked actively with the FBI at that time.  She is fully aware of this as a high profile case.  Ms. Mosher maintains contact with the FBI through with Agent Clint Pierce. She is aware that the case agent is Agent Joe Hamski.  Ms. Mosher has discussed this case with the FBI and she considers Dylann Roof to be a high profile detainee.

Ms. Mosher is in charge of the Intelligence Unit at the jail.  The Intelligence Unit at the jail is a new department that she helped to start in April 2014.  Their mission is to uncover all threats and hazards to inmates and jail staff.  They focus on contraband.  They look for activities that would be threatening such as gang activities.  They also monitor phone calls for improper or dangerous conduct.   Ms. Mosher supervises Shelly Green and Lisa Bloodworth.   Ms. Green and Ms. Bloodworth are jail employees.

Jail policy has the lobby staff review all mail that comes in and out for ordinary inmates in the Detention Center.  **However, because of the high profile nature of Dylann Roof, his mail has been screened and copied by the Intelligence Unit.**  Dylann Roof did not send any mail in the first month and a half of his detention.  The letter to his sister which contained copies of the writing from The Sorrows of Young Werther by Goethe was the second letter sent by Dylann. This letter was reviewed by Ms. Mosher, who found the letter to be curious.  She decided to do an open source search for the language and determined that it arose from the book The Sorrows of Young Werther.  She attempted to call the College of Charleston's literature department but never got a call back.   Based on her assessment that the author was German, that he was controversial and that there had been at the time the book was published in the 1700s some

WI00413

copycat suicides that were imitative of the main character's suicide at the end of the novel, called "Werther fever", she decided to report this to her Command Staff.

The Command Staff is a combination of all the captains and higher officers that work for the Sheriff's Office. This is mostly law enforcement but also senior officers from the Detention Center and Chief Beatty. Mosher made a report to the command staff on Aug. 3. Chief Beatty's response was to order the 15 minute watches. Chief Beatty acknowledged that there was no indication that Dylann Roof had tried suicide. This was a directive simply to look at the defendant to make sure he was ok every 15 minutes.

Chief Beatty reiterated that the staff misinterpreted his directive and that the special operating group put the defendant into the padded clothing. Essentially this was treated by staff as a suicide watch. Chief Beatty and Ms. Mosher indicated that whenever there is a suicide watch that the intelligence office is involved. Members of the Intelligence Unit were dispatched to participate (specifically, Lisa Bloodworth). Bloodworth went to the unit where she observed the officers packing up all of Dylann's belongings.

At that point Lisa Bloodworth joined our interview meeting. She said she was present Aug 3 and that she knew of Dylann's association with white supremacist views. In fact, she had been assigned to interview Dylann in the past. She did so without Miranda warnings. She asked him about his connections to white supremacy. In that June 22nd, 2015 interview, Dylann told Bloodworth that he did not belong to any white supremacist group or to any formal gang or hang out with "like minded" people. He stated that his beliefs were his and that he had written them down in his manifesto that they had found online. Bloodworth's interview notes from June 22 are attached.

On Aug 3, Ms. Bloodworth put the defendant's box of property on a counter in the unit and went through everything. The drawings got her attention and so she decided to carry the materials to the intelligence office. There the items were copied and reviewed by Ms. Mosher. A determination was made that the notes on the small pad were not contraband and were returned to Dylann Roof. Ms. Mosher said that Dylann's small notepad was reviewed and was not contraband. However, Ms. Bloodworth kept a copy in the Roof file in her office.

Dylann was not disciplined for the drawings that were seized from him. Dylann has not been a discipline problem at all.

By 2:00 PM on August 3rd, the Jail's Mental Health Department had a psychiatrist see and clear Dylann and he was returned to his cell with his belongings. The jail lifted Beatty's 15 minute watch precaution at that time.

However Ms. Mosher decided to alert <u>her supervisor, Lt. Fletcher King at the Sheriff's Office</u>. She thought that the notes had potential evidentiary value for the prosecution in this case based on the idea that they involved Aryan material. The Sheriff's Office determined that they did not want the materials. However Ms. Mosher alerted the FBI and the FBI was interested.

Chief Beatty indicated that he would not provide this copied non-contraband material to the FBI without a court subpoena or court order. Attached is a subpoena dated August 14, 2015 from the federal court which provides a request from the time period of June 18, 2015 to August 14, 2015 for a variety of items including any seized documents. As a result of the subpoena the items were turned over to the FBI.

Ms. Mosher, Chief Beatty, and Ms. Bloodworth all agreed that the legal pad had no gang related activity and no signs of contraband or indications that the defendant would hurt himself.

Chief Beatty did explain again the existence of the Intelligence Unit. Their job is to determine if there is gang activity going on in the jail. Apparently the officers interview inmates without Miranda on a regular basis to determine their gang affiliations as they did on June 22nd with Dylann Roof.





Ex. 53 pg.5 of 8

WI00416

*ᴬAO89  (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

DISTRICT OF              SOUTH CAROLINA

United States of America

V.

DYLANN STORM ROOF

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:   2:15-00472-RMG

PICTURE ID REQUIRED
TO ENTER COURTHOUSE

TO:    Al Cannon Detention Center
a/k/a Charleston County Detention Center
3831 Leeds Avenue
Charleston, South Carolina  29405
Attn:  Lauren Mosher

☑  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case.  This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| HOLLINGS JUDICIAL CENTER<br>85 BROAD STREET<br>CHARLESTON, SOUTH CAROLINA  29401 | Richard M. Gergel |
| | DATE AND TIME<br>11/3/2015 10:00 am |

☑   YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See attached

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Larry W. Propes   (B) | 8/14/2015 |
| (By) Deputy Clerk<br>s/ Gilbert O'Brien | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
NATHAN S. WILLIAMS, Assistant United States Attorney
151 Meeting Street, Suite 200, Charleston, SC  29401

Al Cannon Detention Center
a/k/a Charleston County Detention Center
3831 Leeds Avenue
Charleston, South Carolina 29405
Attn: Lauren Mosher
Email: lmosher@sled.sc.gov

## ATTACHMENT

For the time period of June 18, 2015 to August 14, 2015, for inmate:

**Dylann Storm Roof**

**date of birth** █████████

**social security account number** █████████

Provide a copy of:

1. Inmate visitor's log
2. A copy of the concessions and/or canteen account fund to include contributor name, address and amount of money contributed
3. A copy of the mail log to include incoming and outgoing mail excluding privileged communications with attorney(s) and/or other identified privileged communications
4. A copy of any documents administratively seized and/or seized from the inmate via adherence with the Detention Center's policy
5. Any reports generated by the Charleston County Sheriff's Office and/or the Detention Center that documents the seizure of material from the listed inmate

Any questions regarding this subpoena can be directed to Special Agent Joseph Hamski of the Federal Bureau of Investigation (FBI), telephone number 843-881-0194 and/or email at joseph.hamski@ic.fbi.gov.

WI00418

**J. Al Cannon, Jr., Esq.**
Sheriff, Charleston County



Sheriff Al Cannon Detention Center
3841 Leeds Avenue
North Charleston, SC 29405-7482

## INTERVIEW FORM

| FBI#834793DH5 | PRIOR S.T.G. FILE:NO |
|---|---|
| SID#SC02190908 | LOCATION OF INTERVIEW: |
| | |

| ROOF | DYLANN | STORM | N/A |
|---|---|---|---|
| **LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **NICKNAME** |
| 1518680 | 06/22/2015 | A1B1 | L. BLOODWORTH | N/A |
| **JMS#** | **DATE OF INTERVIEW** | **ASSIGNE DUNIT** | **BY WHO** | **ASSISTED BY** |

NARRATIVE:  I DFC BLOODWORTH INTERVIEWED INMATE ROOF IN THE STG OFFICE ON 6/23/2015. I TOLD INMATE ROOF THAT WE WOULD NOT BE SPEAKING ABOUT HIS CURRENT CRIMINAL CHARGES AND WOULD NOT BE ASKING ANY QUESTIONS ABOUT THEM AND HE WAS NOT TO ASK ME ANY QUESTIONS ABOUT HIS CURRENT CHARGES. I ASKED HIM IF HE FELT HE WAS A "WHITE SUPREMCIST". HE STATED THAT HE DOES NOT BELONG TO ANY TYPE OF FORMAL  "GANG" OR HANG OUT WITH LIKE MINDED PEOPLE. HE STATED THAT HIS BELIEFS ON ARE HIS AND HE WROTE THEM DOWN ON HIS MANIFESTO. HE SAID THAT ALL HIS FEELING OF HATRED STARTED WITH THE TREYVON MARTIN CASE.

*SACDC 393-03/05/13*

WI00419