## Declaration of Dr. William J. Stejskal

I, Dr. William J. Stejskal, state as follows:

1. I am a clinical and forensic psychologist in independent practice in the Commonwealth of Virginia. I also serve as a psychologist member of the Commission on Mental Health of the Superior Court of the District of Columbia. From 2000-2006, I was the Director of Psychology and Director of the Forensic Psychology Clinic at the Institute of Law, Psychiatry and Public Policy at the University of Virginia. During my tenure at the University of Virginia, I participated in training more than 300 psychiatrists and psychologists in conducting forensic mental health evaluations, including competency, sanity, and other issues. Over the course of my career, which began in 1984, I have evaluated approximately 300 to 400 criminal defendants for competency to stand trial.

2. On November 9, 2016, I was retained by Dylann Roof's defense team to evaluate Dylann for competency to stand trial.

3. On November 10, 2016, I began reviewing records on the case. I travelled to South Carolina on November 12 and met Dylann on November 13, 2016, for approximately 15 minutes. On November 15, 2016, I met with Dylann for approximately 1 ½ hours. I attempted to meet with him again on November 16, 2016, but he refused the visit.

4. On November 22, 2016, I testified at a hearing on Dylann's competency. Based on my meetings with Dylann and my review of documents, I diagnosed Dylann with Unspecified Schizophrenia Disorder or Psychotic Disorder. Based on my limited evaluation, I could not render an opinion, but I had concerns about his competency to stand trial.

5. My ability to adequately evaluate Dylann for competency was greatly hampered. First, my involvement in the case began extremely late relative to the trial and, more specifically, to considerations around Dylann's competency. The team—and case—was in a state of chaos when I was brought on. It's important to bring in a mental health professional who's focused on competency as soon as mental health concerns arise in a case. I'm often brought in very early in the case, and through sustained engagement I'm able to develop a relationship with the defendant, as well as to advise attorneys and other team members as to what they should be

1

Declaration of William J. Stejskal                                    Initials

IFCD 005470

noticing and documenting. I was brought into Dylann's case at the eleventh hour, by which time the team was scrambling.

6. No one on the team had developed a relationship of trust with Dylann such that he was able to buy in and cooperate with his defense team. In other cases, I've observed defense team members develop trusting relationships with extremely challenging defendants—including so-called "sovereign citizens"—resulting in the defendant cooperating and assisting. When I met Dylann, on the eve of his competency hearing, no such relationship or connection had been formed with any member of his defense team. To the contrary, Dylann expressed a feeling of betrayal by his attorneys. He did not trust them and referred to them as his "enemy." Unsurprisingly, by the time I got involved, Dylann didn't want to meet with me or particulate in an evaluation.

7. Dylann's trial team never asked me to address whether he was competent to represent himself under *Indiana v. Edwards*. I knew from my review of the November 7 hearing that Dylann had expressed a desire to represent himself if found competent, but I was not asked to, and thus did not, assess him for skills needed to self-represent. Through my years of forensic experience, I am aware that criminal defendants are sometimes competent to stand trial but not to represent themselves.

8. Dylann's post-conviction team has informed me that he has been diagnosed with an Auditory Processing Disorder and Social Communication Pragmatic Disorder. These diagnoses demonstrate that Dylann has impairments relevant to his ability to self-represent.

9. Auditory Processing Disorders are impairments in taking in, processing, and comprehending information received aurally. Social Communication Pragmatic Disorder is an impairment in the ability to functionally use language in everyday life. Both of these disorders can show up as processing speed delays. Individuals with these diagnoses have big disadvantages in meaningfully conversing verbally in a back-and-forth conversation. They often need extra time to process information they hear in order to adequately comprehend. Where there are competing verbal or auditory stimuli, the impairments can be more acute and disabling.

10. Auditory Processing Disorder and Social Communication Pragmatic Disorder can affect a defendant's ability to follow testimony, consult with his attorney, respond in real time in a proceeding, and possess other skills that are critical to a defendant being able to meaningfully

2

Declaration of William J. Stejskal                              Initials _____

IFCD 005471

participate in his defense at trial. Had I known of Dylann's diagnoses and impairments, I also could have suggested possible accommodations.

11. As is true of people with many disorders, a person with Auditory Processing Disorder or Social Communication Pragmatic Disorder will often attempt to mask the impact of their impairment. They may not understand the reasons that they are struggling and typically make efforts to hide what they cannot do. A person such as Dylann, with a high verbal IQ, would likely be able to significantly mask his lack of comprehension. Masking, however, only hides the impairments. Masking does not diminish the impact the impairments would have on the individual.

12. I am over 18 years of age and am competent to make this declaration.

Pursuant to 28 U.S.C. §1746, I, William J. Stejskal, declare under penalty of perjury under the laws of the United States that the above is true and correct.

William J. Stejskal

Date and locations: July 2, 2025, Prince William County, Virginia

3

Declaration of William J. Stejskal

Initials

IFCD 005472

Ex. 72 pg.3 of 3