DECLARATION OF LAURA YOUNG

I, Laura Young, state as follows:

1. I am currently an Assistant Public Defender for Richland County Public Defender Services. After graduating from law school in 2005, I did capital mitigation work. I have pivoted between working as both a public defender and a mitigation specialist throughout my career.

2. I began working on Dylann Roof's legal case as a private contract mitigation specialist in August 2016. However, I already was somewhat familiar with Dylann's legal situation before joining the case, as my husband, Boyd Young, had been working on Dylann's state case. I was asked to join the team at various stages, including at the beginning of the case, but I declined at that point as I did not have time to be a primary mitigation specialist. I eventually joined the team in July 2016 with a more discrete role. I had a high caseload at the time, and was working on juvenile LWOP cases as well as parole cases. I had a lot on my plate and figured that I wouldn't have the time that it would take to work primarily on Dylann's case. But I still decided to jump in and help however I could during that final stretch.

3. My primary contact with the team was with Justice 360. Emily Paavola and Lindsey Vann were employed there, and my assignments came from them. I was not involved in team strategy decisions. I attended a few meetings via telephone, though I wasn't involved in all of the meetings by any stretch. I had a couple of meetings at Justice 360 with Emily and Lindsey to talk about mitigation.

4. I was tasked with interviewing potential mitigation witnesses. When I joined the team, I was given a lengthy list of witness names, and I tried to interview as many as possible in a short amount of time. I worked hard to be efficient with such little time. My impression was that the trial team brought me on because they were running out of time. Many important witnesses, like some of Dylann's teachers, still had not been spoken to by the time I joined the team, even though the trial was starting in early November. I was tasked with interviewing some of Dylann's classmates, too.

1

Declaration of Laura Young                                    Initials _____

IFCD 005454

5. I met with several members of Dylann's family, as well, including his mom, Amy. She cared for Dylann and felt a lot of guilt about these crimes. I also met with Benn Roof and eventually Morgan Roof, Dylann's younger half-sister.

6. After I completed witness interviews, I would contact Emily and Lindsey and share with them what I had learned from a witness. I forwarded my interview notes and memos to them, but I do not know how those documents or the information contained therein were shared among other team members at large.

7. I did not work with any experts, and I did not review their written reports. Having their reports would have been helpful to review in preparation for mitigation interviews. I was also not told about whether Dylann had any diagnoses, which also would have informed my work on the case. Given my limited role on the team, I did not have a global picture of the larger mitigation story that the team was hoping to put on. I did not know who was on the defense list, and I was not part of larger strategy discussions regarding which witnesses would fill which holes in the story.

8. Many investigators were brought in from other states at the last minute to interview witnesses. The investigation was rushed and unwieldy. It was very hurried. Although I initially had imposter syndrome about working alongside Dylann Roof's defense team, I dismissed that feeling soon after joining the team once I realized how chaotic and behind the team was in their work up of the case.

9. Overall, I felt the team needed more time to prepare Dylann's case. The task of mitigation is to try to understand the client, but it was clear that the chaos and lack of time meant we didn't have time to understand the complexity of Dylann's life and brain. Even after the trial ended, I remember feeling like I still did not understand what had been happening in Dylann's brain.

10. I am over 18 years of age and am competent to make this declaration.

Pursuant to 28 U.S.C. §1746, I, Laura Young, declare under penalty of perjury under the laws of the United States that the above is true and correct.

June 6, 2025  Columbia, SC
Date and Place                                    Laura Young

2

Declaration of Laura Young                        Initials _____

IFCD 005455

Ex. 74 pg.2 of 2